Robert McConnell, Esq.
Mary Schiavo. Esq.
Motley Rice LLC
321 South Main St.
P.O. Box 6067
Providence, RI 01940
(401) 457-7700

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Yisel Dean, Independent Administratrix of the Estate of Steven Dean, deceased, and on behalf of all statutory beneficiaries,<br><br>   Plaintiff,<br><br>vs.<br><br>Raytheon Company, a Delaware Corporation, Raytheon Aircraft Holdings, Inc., a Delaware Corporation, Raytheon Aircraft Company, a Kansas Corporation, Raytheon Aircraft Credit Corporation, a Kansas Corporation, Colgan Air Inc., a Virginia Corporation d/b/a US Air Express,<br><br>   Defendants. | Case No.: 05 CV 10155 PBS<br><br>SECOND AMENDED COMPLAINT<br>(Wrongful Death, Negligence, Breach of Express and Implied Warranty, Gross Negligence, Unfair or Deceptive Acts and Practices)<br><br>Jury Demand |

The Plaintiff, Yisel Dean, individually and as the Independent Administratrix of the Estate of Steven Dean, deceased, and on behalf of all beneficiaries and next of kin, by and through her attorneys, Motley Rice LLC, for cause of action in this complaint alleges on information and belief:

## PARTIES

1. The Plaintiff, Yisel Dean, at all times relevant herein resides in the state of Texas, and has been appointed by the Probate Court of Tarrant County, Texas, as Independent Administratrix of the Estate of Steven Dean who died in the crash of US Airways Express flight 9446, on August 26, 2003.

2. Plaintiff also brings this action on behalf of all beneficiaries including herself, her and the deceased's minor child and other next of kin.

3. Defendant, Raytheon Company, is a Delaware corporation with its principal place of business in Waltham, Massachusetts.

4. Defendant, Raytheon Aircraft Holdings, Inc., is a wholly owned subsidiary of the Raytheon Company, and is a Delaware corporation with its principal place of business in Wichita, Kansas.

5. Defendants, Raytheon Aircraft Company and Raytheon Aircraft Credit Corporation are wholly owned subsidiaries of the Raytheon Aircraft Holdings, Inc. Company, are Kansas corporations with their principal place of business in Wichita, Kansas.

6. Raytheon Company, Raytheon Aircraft Holdings, Inc., Raytheon Aircraft Company, and Raytheon Credit Corporation are collectively referred to herein as "Raytheon".

7. The Defendant, Colgan Air Inc., is a Virginia Corporation with its principal place of business in Manassas, Virginia and it is engaged in business in several other states, including Massachusetts. Colgan Air operated flights for US Airways as Colgan Air doing business as US Airways Express (Colgan d/b/a US Airways Express).

8. Colgan Air and Colgan Air d/b/a US Airways Express are collectively referred to herein as "Colgan".

## JURISDICTION AND VENUE

9. The amount in controversy exceeds $75,000 exclusive of interest and costs.

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

11. A substantial part of the acts and omissions giving rise to the claims set forth in this complaint occurred in this judicial district. All defendants are doing business in this judicial district. Therefore, this court has venue pursuant to 28 U.S.C. §1391(a).

12. The plaintiff claims damages under Massachusetts General Laws chapter 229 §2 and §6, for the wrongful death and conscious suffering of Steven Dean, for herself, their daughter, and other next of kin.

13. The plaintiff claims exemplary damages for the gross negligence of an employer as allowed by Texas Labor Code Annotated § 408.001(b).

14. Plaintiff claims damages pursuant to Massachusetts General Laws Chapter 106 §2-313 through §2-315 and §2-318 for breach of express and implied warranties.

15. Plaintiff claims prejudgment interest pursuant to Massachusetts General Laws Chapter 229 §11 and as otherwise allowed by law.

16. Plaintiff claims damages for unfair and deceptive acts and practices committed in violation of Massachusetts General Laws Chapter 93A § 2, 9.

## GENERAL ALLEGATIONS & FACTUAL BACKGROUND

17. At all times relevant herein, Colgan operated under an agreement with US Airways as a US Airways Express carrier.

18. At all times relevant herein, Colgan also operated as Colgan Air d/b/a US Airways Express.

19. The Defendant, Colgan Air Inc., is a Virginia Corporation with its principal place of business in Manassas, Virginia and it is engaged in business in several other states, including

Massachusetts. Colgan Air operated flights for US Airways as Colgan Air doing business as US Airways Express (Colgan d/b/a US Airways Express).

20. Colgan Air and Colgan Air d/b/a US Airways Express are collectively referred to herein as "Colgan".

21. US Airways Group, Inc. (US Airways) is a Delaware Corporation and US Airways, Inc. and US Airways Express are Delaware Corporations and are US Airways Group's operating subsidiaries. All US Airways corporations and subsidiaries are collectively referred to herein as US Airways.

22. US Airways does business in interstate commerce in hundreds of locations in the United States as well as in other countries.

23. The type of agreement Colgan entered into with US Airways is generally described by as a code-share.

24. A code-share is a contractual arrangement between two carriers in which one carrier operates flights for another carrier.

25. Under a code-share agreement, a smaller regional carrier often utilizes the brand, names, insignia, uniforms, reservations, scheduling, paint schemes and other indicia of the major carrier.

26. The US Airways Express code share arrangements are either in the form of a capacity purchase or a "prorate" agreement. The carriers with a prorate agreement are non-owned turboprop operators and include all or a portion of the turboprop operations of Colgan.

27. The prorate agreements provide for affiliate carriers to pay certain service fees to US Airways as well as a prorated share of revenue for connecting customers. US Airways is responsible for pricing and marketing of connecting services to and from the prorate carrier. The prorate carrier is responsible for pricing and marketing the local, point to point markets.

4

28. US Airways Express carriers, including Colgan, use US Airways' reservation systems, and have logos, service marks, aircraft paint schemes and uniforms of US Airways.

29. On August 26, 2003, Steven Dean was killed while serving as the First Officer of US Airways flight 9446. Scott Knabe, the captain, was also killed. The plane was a Beech 1900D, registration number N240CJ, ("the aircraft") operated by Colgan Air d/b/a US Airways Express. The plane was painted and the crew uniformed as US Airways.

30. The aircraft crashed into the water off the coast of Yarmouth, Massachusetts shortly after takeoff from Barnstable Municipal Airport.

31. The aircraft was manufactured by the Raytheon Aircraft Company, and owned by Raytheon Credit Corporation which leased it to Colgan on a seven (7) year lease beginning in January of 2003.

32. The aircraft had performed 1219.1 flight hours while operated by Colgan d/b/a US Airways Express, before crashing.

33. At the time of the crash the aircraft was owned by and registered to Raytheon Credit.

34. Raytheon Aircraft Corporation designed and manufactured the Beech 1900D. The model was first certificated in 1990. The aircraft at issue herein was manufactured in 1993.

35. The aircraft was in service with another operator (or operators) before it was returned to Raytheon's possession and subsequently leased for operation by Colgan.

36. Colgan experienced problems, including problems with the trim, on the aircraft at issue herein after receiving the aircraft from Raytheon and before August 26, 2003.

37. Raytheon provided advice and guidance on the repair of this aircraft.

38. In addition to designing and manufacturing this aircraft, Raytheon wrote and provided the manufacturer's Airliner Maintenance Manual (AMM) for this aircraft.

39. On August 23-26, 2003, the accident airplane was in Hyannis, Massachusetts for

maintenance, inspection and/or repair.

40. The mechanics consulted the AAM in making repairs and performing maintenance on this aircraft.

41. The mechanics consulted Raytheon on or about August 24 or 25, 2003, about the repair of this aircraft.

42. Immediately prior to the fatal flight, maintenance had been performed on the airplane which included work on the forward elevator pitch trim tab cable, elevator trim activator and trim drum.

43. The AMM was erroneous, defective, misleading and omitted information, to wit:

   a) The trim drum was depicted backward;

   b) Relying on the erroneous drawings, a mechanic could, and did, mis-route the cable around the drum;

   c) Relying on the erroneous drawings, the trim system could be, and was, reversed;

   d) The depiction in the AMM showed the nose-up trim tab cable emanating from the aft end of the drum, rather than the forward end;

   e) The depiction in the AMM showed the nose-down cable emanating from the forward end of the drum, rather than the aft;

   f) There was no procedure for an operational check in the elevator trim tab cable-maintenance practices chapter, Chapter 27-30-04; and

   g) There was no referral in Chapter 27-30-04 to Chapter 27-30-09, "Elevator Trim-Maintenance Practices... Elevator Trim Operational Check," which did contain a procedure for a operational check of the elevator trim system.

44. Steven Dean serving as the First Officer, commonly referred to as co-pilot, and Scott Knabe serving as Captain, commonly referred to as pilot, were assigned to fly US Airways flight 9446 on August 26, 2003, after maintenance.

45. Shortly after takeoff the flight crew reported a problem with the trim.

46. The flight crew selected a nose up trim, but instead the aircraft elevator traveled the full nose-down position, and crashed into the water killing Steven Dean and Scott Knabe.

47. As a result of the foregoing which is a direct and proximate result of the conduct of defendants herein, and each of them, Steven Dean was forced to endure severe mental anguish, fear of impending death, conscious pain and suffering, and ultimately he suffered severe physical injuries which caused his death.

48. As a direct and proximate result of the acts and omissions of each defendant herein, there was a measurable and significant period of time from the first trauma causing injury to decedent and before the decedent's death such that decedent consciously suffered injuries and damages for a measurable period of time before decedent's death.

49. As a direct and proximate result of the acts and omissions of each defendant, decedent's personal property was damaged, destroyed and tortuously interfered with, all to the damage of decedent and/or his estate.

50. As a direct result and proximate result of the act and omissions of each defendant, Steven Dean died and his beneficiaries, heirs and survivors, including but not limited to Yisel Dean, decedent's and Mrs. Dean's minor child, and other immediate next of kin, have been and continue to be deprived of decedent's income, services, support, help and assistance, advice and guidance, and other economic losses.

51. As a direct and proximate result of the acts and/or omissions of defendants, and each of them, Steven Dean died and his beneficiaries, heirs and survivors have suffered and continue to suffer non-economic damages including but not limited to loss of consortium,

companionship, comfort, care, love, affection, assistance, presence, protection, society, confidence and guidance, as well as suffering, grief, anguish, bereavement, pain and suffering and emotional trauma.

52. As a direct and proximate result of the acts and omissions of defendants, and each of them, Steven Dean died and his beneficiaries, heirs and survivors have incurred funeral, burial, travel, and related expenses.

53. The defendants and each of them owed a duty to plaintiff, and it was reasonably foreseeable that in breaching that duty, serious injury and death could result. The defendants, and each of them breached that duty and those breaches caused serious harm to plaintiff.

## COUNT I

### (Negligence Claim Against Raytheon)

54. The Plaintiff incorporates by reference all prior allegations.

55. Raytheon provided Colgan with an aircraft and with an Airliner Maintenance Manual (AMM) prescribing how repairs and maintenance to the Beech 1900D aircraft should be made.

56. The aircraft had a problem with the trim and Raytheon knew or should have known that individuals or entities performing maintenance would rely on the AMM or other Raytheon maintenance advice and illustrations to perform maintenance and repairs on the Beech 1900D aircraft it manufactured.

57. Raytheon had a duty to provide an aircraft that was fully functional, airworthy and without defects, and Raytheon had a duty to provide accurate, reliable information in the AMM and maintenance advice, enabling Colgan and other owners of its Beech 1900D aircraft or other maintenance personnel to make correct and safe repairs to the aircraft.

58. Raytheon was advised there was a problem with the trim on the aircraft and knew or should have known that the information in the AMM, specifically Raytheon Maintenance Manual Rev 9, 27-30-04 for the Beech 1900D aircraft was defective and incorrect and that if the instructions in the manual were followed, a dangerous and fatal accident could result.

59. Raytheon knew or should have known that the accident aircraft was defective upon, or soon after its delivery to, Colgan due to the defective or improperly functioning elevator pitch trim system and Raytheon knew or should have known that such defects could cause a dangerous and fatal accident.

60. Raytheon by and through its agents, servants and employees acting in the course and scope of their employment, breached its duties and were negligent by:

   a. Providing a defective, improperly functioning and/or unairworthy aircraft to Colgan for use in its flight operations;

   b. Providing a defective AMM with erroneous advice and diagrams;

   c. Failing to discover and/or correct the AMM;

   d. Failing to discover and/or correct the defects or problems with the aircraft;

   e. Failing to warn of the hazards presented to persons at risk from the use of the aircraft;

   f. Failing to warn of the hazards presented to persons at risk from the erroneous AMM; and/or

   g. Providing erroneous verbal maintenance advice.

61. Raytheon's negligence was the direct and proximate cause of the crash of flight 9446 and the death of Steven Dean.

62. The Plaintiff seeks an award of compensatory damages under Massachusetts law

for all compensatory damages allowed by law including, but not limited to, damages for: 1) loss of consortium, society, companionship, comfort, guidance, counsel and advice 2) loss of decedent's income; 3) loss of the decedent's services, protection, care and assistance; 4) decedent's conscious pain and suffering before death; 5) decedent's fear and terror before impact, and 6) funeral and burial expenses.

WHEREFORE, the Plaintiff, Yisel Dean, Independent Administratrix of the Estate of Steven Dean, deceased, requests that judgment be entered, in her favor, on behalf of herself, the next of kin and the Estate of Steven Dean and against Raytheon in an amount that a jury determines will fully and fairly compensate herself, the next of kin, and the Estate of Steven Dean for all legally compensable losses.

## COUNT II
### (Punitive Damages Claim Against Raytheon)

63. Plaintiff incorporates by reference all prior allegations.

64. Raytheon, acted willfully, wantonly and recklessly, with gross negligence and with a conscious disregard for the safety of Steven Dean and others.

65. As a direct and proximate result of the reckless, wonton and willful conduct by Raytheon, the aircraft crashed on August 26, 2003, resulting in death and other losses and damages.

66. The Plaintiff seeks an award of punitive damages for the wrongful death of Steven Dean pursuant to Massachusetts General Laws Chapter 229 §2 and §6.

WHEREFORE, the Plaintiff, Yisel Dean, Independent Administratrix of the Estate of Steven Dean, deceased, respectfully prays that judgment be entered on behalf of herself, the next of kin, and the Estate of Steven Dean and against Raytheon for punitive damages to make an example of Raytheon and to deter similar wrongful conduct by others in the future.

## COUNT III

**(Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Purpose Against Raytheon)**

67. Plaintiff incorporates by reference all prior allegations.

68. Raytheon by and through its certification process for the aircraft, its sales and leasing documents, and its advertising, expressly warranted that the aircraft and the aircraft maintenance procedures and manuals including but not limited to the AMM would be safe, accurate, fit for ordinary use, and free of defects.

69. Raytheon, by and through the sale of the aircraft in question, impliedly warranted to the public generally, and to Steven Dean, that the accident aircraft and the aircraft procedures and manuals including but not limited to the AMM were fit for their ordinary purpose and of fair quality. Defendant had a duty to provide adequate warnings of the dangers associated with the design of the aircraft and dangers associated with the foreseeable usage and maintenance of the aircraft, of which they knew or should have known.

70. Raytheon, by and through the sale of the aircraft in question, impliedly warranted to the public generally, and to Steven Dean, that Beech 1900 D aircraft and the accident aircraft in particular and the accompanying maintenance procedures and manuals were fit for the particular purpose for which they were intended.

71. Contrary to these warranties, the accident aircraft and maintenance procedures and manuals were not safe and free of defects and were not fit for their ordinary, intended, particular and foreseeable uses and purposes. Instead, the aircraft and its component parts, systems, manuals, instructions, and/or warnings were defective and unreasonably dangerous by reason of defective design, manufacture, and/or marketing, the failure of defendants to give adequate and proper warnings of the dangers existing therein and the failure of Raytheon to give adequate instructions regarding the avoidance of such dangers. The unreasonably dangerous conditions and/or defects include the defective elevator pitch trim system, maintenance manuals,

11

maintenance procedures, and/or the absence of adequate warnings and instructions regarding such conditions. The defective and unreasonably dangerous conditions exposed Steven Dean, and the public in general, to an unreasonable risk of harm and were the proximate cause of plaintiff's injuries and damages.

72. Raytheon breached the express and implied warranties in the following ways:

   a. By providing a defective, improperly functioning, and unairworthy aircraft to Colgan for use in its flight operations;

   b. By providing a defective AMM with erroneous advice and diagrams;

   c. By failing to provide warnings regarding the dangers associated with the design of the aircraft and dangers associated with the foreseeable usage and maintenance of the aircraft; and/or

   d. By failing to provide proper instructions and procedures for the safe operation, repair and/or maintenance of the aircraft.

73. Raytheon knew or should have known that pilots such as Steven Dean would use the aircraft and be subject to an unreasonable risk of injury or death if such express and implied warranties were breached in such a manner.

74. Steven Dean relied on the express and implied warranties and made use of the aircraft as alleged herein in a reasonable and foreseeable manner and in the manner in which the aircraft was intended.

75. The crash of the aircraft and the wrongful death of Steven Dean and damage to plaintiff were proximately caused by Raytheon's breach of express warranty and implied warranties of merchantability and fitness.

76. By reason of the foregoing, said defendant is liable to plaintiff in breach of warranty for the wrongful death, injuries and damages to decedent and decedent's personal property and for the resulting damages sustained by plaintiff.

WHEREFORE, pursuant to Massachusetts General Laws Chapters 106 § 2-313 through § 2-315, and §2-318, the Plaintiff, Yisel Dean, Independent Administratrix of the Estate of Steven Dean, deceased, respectfully prays that judgment be entered on behalf of herself, the next of kin, and the Estate of Steven Dean and against Raytheon, for breach of express and implied warranty, in an amount that a jury determines will fully and fairly compensate herself, the next of kin, and the Estate of Steven Dean for all legally compensable losses.

## COUNT IV

**(Violation of Mass. Gen. Laws c. 93A, §§2, 9 Unfair or Deceptive Acts and Practices)**

77. Plaintiff incorporates by reference all prior allegations.

78. Defendant Raytheon and each of them, individually and collectively committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A, §§2, 9, and particularly, but without limitation:

   a. Unfairly and deceptively drafting, editing, publishing and selling the AMM, also referred to as the Raytheon Electronic Publications Program Maintenance Library for the Beech 1900 ("REPS Manual"), together with many revisions, which revisions were also defective, which were used in and distributed to Colgan's Hyannis, Massachusetts facility, and used to repair the plane subsequently flown by Scott Knabe and Steven Dean;

   b. Knew or should have known that its AMM or REPS Manual was defective, erroneous and misleading in that it contained many errors;

   c. Knew or should have known that the revisions to the erroneous manual were themselves erroneous, defective, and misleading;

    d. Knew or should have known that erroneous manuals and/or erroneous revisions could lead to aviation accidents, injuries and death;

    e. Unfairly and deceptively advising Colgan to replace aircraft parts with parts which pursuant to the Beech 1900D Airline Illustrated Parts Catalog (IPC) were not to be used in the aircraft at issue herein;

    f. Unfairly and deceptively advising Colgan to use parts, including but not limited to actuator part numbers 19-526033-6, -7, and/or -9, which the IPC warned cannot be used in the aircraft at issue herein;

    g. Unfairly and deceptively advising Colgan to use parts other than those approved for use in this aircraft because the actuator parts approved for use in this aircraft, to wit 129-526033-27,-29, were not yet available and providing such advice even though a Raytheon Aircraft Service bulletin 27-3032, issued in July 2003, called for mandatory modification of -6 actuators before installation in aircraft and recommended modification of actuators -7 and -9 before installation in aircraft, and did not indicate that unmodified actuators could be used in this aircraft; and/or

    h. Unfairly and deceptively advising use of parts requiring modification despite being advised that Colgan's facility at Hyannis, Massachusetts had no authority to modify parts for installation in operational aircraft.

79. Defendant Raytheon's drafting, editing, publishing, selling, placing into stream of commerce, encouraging and/or requiring reliance thereon, and representing that it contained appropriate maintenance and repair instructions for the Beech 1900, when in fact it was misleading and erroneous and had been revised many, many times, with revisions to revisions,

and Raytheon's instruction to Colgan to use parts which Raytheon's IPC advised were not to be used in this aircraft, were unfair and deceptive acts which caused injury and death, and were willful and knowing violations of §§2. Defendant Raytheon had actual knowledge its manual and/or revisions were defective, and Raytheon attempted to get by with a cobbled together, erroneous, patchwork manual, and instructions to use parts not approved for this plane because the approved parts were not available.

80. Defendant Raytheon knew or should have known these practices were in violation of sections 2 & 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

81. Defendant used and employed these acts or practices in willful or knowing violations of sections 2 and 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

82. As a result of the unfair and deceptive conduct of defendant Raytheon, individually and collectively, Steven Dean was a person injured, and killed, by Raytheon's use or employment of the above described deceptive representations, which are methods, acts and/or practices unlawful under §2 of 93 Mass. Gen. Law. Therefore, the representative of Steven Dean's estate is entitled to bring this action under §9 of 93 Mass. Gen. Law.

83. Plaintiff is entitled to compensatory damages from Defendant for the economic and non-economic damages, and multiple or punitive damages including but not limited to two times the amount of actual damages for Raytheon's willful and knowing violations and/or refusal to grant relief upon demand, all other such relief as the court deems necessary and proper, and attorneys fees and costs to the extent allowed by law.

WHEREFORE, pursuant to Massachusetts General Laws Chapter 93A §§2 & 9, the plaintiff Yisel Dean, respectfully prays that judgment be entered on behalf of herself, the next of

kin, and the Estate of Steven Dean, and against Raytheon for damages and such equitable and other relief as the court deems necessary and proper.

## COUNT V

### (Gross Negligence Against Colgan for Exemplary Damages)

84. Plaintiff incorporates by reference all prior allegations.

85. Colgan was the employer of Steven Dean and was entrusted with and did exercise the power of superintendence over Steven Dean.

86. Colgan had a duty to provide safe equipment to Steven Dean and to provide Steven Dean with a safe work environment.

87. Colgan had a duty to properly perform its maintenance and repairs, and to use approved procedures and parts.

88. Colgan breached its duty to Steven Dean by requiring him to fly an aircraft that was defective, unreasonably dangerous, improperly maintained, improperly repaired, unairworthy, and/or used procedures and parts not approved for use in this aircraft.

89. Colgan's acts and/or omissions as described herein, were intentional acts or omissions, or involved an extreme degree of risk considering the probability and magnitude of the potential harm to others including Steven Dean.

90. Colgan had actual and/or subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

91. As a result of Colgan's gross negligence, Steven Dean suffered significant and painful injuries, mental anguish and death when the defective aircraft crashed.

...

WHEREFORE, pursuant to Texas Labor Code Annotated § 408.001(a), Yisel Dean respectfully requests judgment be entered on behalf of the estate of Steven Dean, herself, and next-of-kin, and against Colgan for exemplary damages as allowed by law.

## COUNT VI

### (Prejudgment Interest)

92.  Plaintiff incorporates by reference all prior allegations.

93.  Plaintiff claims as an element of wrongful death and survival damages, prejudgment interest at the maximum legal rate as permitted by Massachusetts General Laws Chapter 229, §11, or any other applicable law or statute, to provide full compensation to plaintiff and prevent the unjust enrichment of defendants and each of them.

## COUNT VII

### (Res Ipsa Loquitur)

94.  Plaintiff incorporates by reference all prior allegations herein.

95.  Defendants, and each of them, had exclusive management and control over the manufacture of this aircraft and, its maintenance and repair manuals, and the maintenance and repair of this aircraft, which aircraft and/or repair failed resulting in the aircraft failing to properly operate and crashing, killing Steven Dean and Scott A. Knabe.

96.  The uncommanded movement of the aircraft elevator to a full nose down position, when the flight crew selected a nose up trim, as set forth herein, is such that in the ordinary course of events would not have occurred if defendants, and each of them, had exercised ordinary care in the manufacture and sale or lease of the aircraft, and its maintenance manuals, instruction and guidance, and maintenance and repair pursuant thereto. Because of the

defendants' exclusive control and management of the aircraft and /or manuals, manufacture, sale, lease, use, maintenance and repair, defendants are possessed of superior, if not exclusive access to information concerning the precise cause of the accident and plaintiff relies on the negligence of defendants, as inferred from the general circumstances alleged herein. The fact that the aircraft was not properly repaired, and the maintenance manuals and advice were incorrect was not due to any action or contribution on the part of the plaintiff's decedent.

### **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, as hereinafter set forth:

1. For compensatory damages as allowed by law for the wrongful death, survival damages, and conscious pain and suffering of Steven Dean, in an amount according to proof at trial;

2. For property damage and loss of use of property according to proof;

3. For punitive damages as allowed by law;

4. For exemplary damages against an employer as allowed by law;

5. For pre-judgment interest as provided by law;

6. For costs of suit incurred herein;

7. For attorneys fees as allowed by law;

8. That all issues of fact in this matter be determined by a jury; and

9. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By: _____
Robert McConnell, Esq.
(BBO No. 550625)
Motley Rice LLC
321 South Main St.
P.O. Box 6067
Providence, RI
Ph: (401) 457-7700

And

Mary Schiavo, Esq.
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
Ph: (843)216-9374