UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Yisel Dean, Administratrix of the Estate of Steven Dean, deceased, et al.,

Plaintiff,

vs.

Raytheon Company, Raytheon Aircraft Holdings, Inc., Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Colgan Air Inc., d/b/a/ US Air Express,

Defendants.

Case No.: 05 CV 10155 PBS

**PLAINTIFFS RESPONSE AND MEMORANDUM OF LAW AND FACT IN OPPOSITION TO DEFENDANT COLGAN'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12 (B)(6)**

Plaintiff Yisel Dean, widow of deceased pilot Steven Dean appears herein by counsel on behalf of herself, and minor child, and respectfully submits this memorandum of law and fact in opposition to Defendant Colgan Air Inc., (herein after Colgan) 12 (B)(6) Motion .

**Statement of Facts**

1. Plaintiff is a resident of Tarrant County, Texas. Nowhere in any pleading is it alleged that plaintiff is a resident of Massachusetts.

2. Defendant Colgan is a Virginia corporation and in separate pending pleading seeks to transfer the case to Virginia. See MDL Docket 1697, In re Air Crash Near Yarmouth,

Massachusetts, on August 26, 2003 and motions and responses therein. As Defendants made a Rule 12 (B)(6) motion, it is sufficient to note there are no allegations in any pleadings that the plaintiff nor the deceased were residents of any state other than Texas. See Second Amended Complaint (hereinafter Complaint). The following paragraphs contain information found in the complaint.

3. Defendant Colgan Air, Inc., is a Virginia Corporation with its principal place of business in Manassas, Virginia.

4. Colgan Air operated flights for US Airways as Colgan Air doing business, as US Airways Express (Colgan d/b/a US Airways Express), including in the state of Massachusetts where the crash at issue herein occurred.

5. On August 26, 2003, Steven Dean was killed while serving as the First Officer of US Airways flight 9446. Scott Knabe, the captain, was also killed. The plane was a Beech 1900D, registration number N24OCJ, ("the aircraft") operated by Colgan Air d/b/a US Airways Express.

6. The aircraft crashed into the water off the coast of Yarmouth, Massachusetts shortly after takeoff from Barnstable Municipal Airport.

7. On August 23-26, 2003, the accident airplane was in for maintenance, inspection and/or repair.

8. Immediately prior to the fatal flight, maintenance had been performed on the airplane which included work on the forward elevator pitch trim tab cable, elevator trim activator and trim drum.

9. Steven Dean serving as the First Officer, commonly referred to as co-pilot, and was assigned to fly US Airways flight 9446 on August 26, 2003, after maintenance.

10. Shortly after takeoff the flight crew reported a problem with the trim.

11. The flight crew selected a nose up trim, but instead the aircraft elevator traveled the full nose-down position, and crashed into the water killing Steven Dean and Scott Knabe.

12. In the above referenced maintenance, Colgan replaced aircraft parts with parts which pursuant to the Beech 1900D airline Illustrated Parts Catalog (IPC) were not to be used in the aircraft at issue herein;

13. Colgan used parts, including by not limited to actuator part numbers 19-526033-6, -7, and/or -9, which the IPC warned cannot be used in the aircraft at issue herein;

14. Colgan used parts other than those approved for use int his aircraft because the actuator parts approved for use in this aircraft, to wit 129-526033-27,-29, were not yet available and providing such advice even though a Raytheon Aircraft Service bulletin 27-3032, issued in July 2003, called for mandatory modification of -6 actuators before installation in aircraft and recommended modification of actuators -7 and -9 before installation in aircraft, and did not indicate that unmodified actuators could be used in this aircraft; and/or

15. Colgan used parts requiring modification despite the fact that Colgan's facility at Hyannis, Massachusetts had no authority to modify parts for installation in operational aircraft.

16. Colgan had a duty to properly perform its maintenance and repairs, and to use approved procedures and parts.

17. Colgan breached its duty to Steven Dean by requiring him to fly an aircraft that was defective, unreasonably dangerous, improperly maintained, improperly repaired, unairworthy, and/or used procedures and parts not approved for use in this aircraft.

18. Colgan's acts and/or omissions as described in the complaint, were intentional acts or omissions, or involved an extreme degree of risk considering the probability and magnitude of the potential harm to others including Steven Dean.

19. Colgan had actual and/or subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

**Statement of Law**

20. It is Rule 12 (B)(6), not Rule 56 of the Federal rule of Civil Procedure under which Defendant filed the instant motion. However, defendant attached affidavits including matters outside the pleadings. Plaintiff has filed a Motion to Exclude Matters Outside the Pleadings. When defendant included an affidavit, it went beyond the limits of a Rule 12 (B)(6) Motion to Dismiss for failure to state a claim by making extra-complaint submissions, and may not be relied upon, *Greene v. Rhode Island,* 398 F.3d 45, 49 (1st Cir. 2005); *Rodi v. Southern New England School of Law*, 389 F.3d 5 (1st Dir. 2004). The reason for excluding any annexed material is also somewhat practical; orders granting, but not denying, motions to dismiss under Rule 12 (B)(6) engender de novo review of the record.

21. If materials extraneous to the pleadings are relied upon, plaintiff must be given an opportunity to present all materials pertinent to a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff has requested such notice and discovery in its motion filed herewith

**Entitled to Reasonable Discovery**

22. Plaintiff has responded only to a 12 (B)(6) motion. Plaintiff has in her accompanying Motion to Exclude, or In the Alternative, Motion for Discovery, invoked her right to discovery in the event the extraneous materials are considered in the 12 (B)(6) motion or the motion is to be treated as a Motion for Summary Judgment.

23. In any event Defendant's attached affidavits and alleged material from the deceased personnel file are not of assistance. Workman's compensation payments and adjudication are irrelevant to Yisel Dean's and her minor child's claim against Colgan.

24. Defendant Colgan mistakenly assumes Yisel Dean's claim flows from the place in which Colgan in the affidavit alleges it had someone process the benefits. Furthermore, despite the fact such is irrelevant as discussed herein below, plaintiff notes the affidavit clearly admits the deceased was a Texas resident, and states he lived at "913 S. Main Street in Euless, Texas." The exhibits also clearly admit the deceased paid taxes in Texas and states: "Texas (Lived in)."

25. Defendant's exhibit number 4 shows only that plaintiff died in Massachusetts and the claim was handled by Colgan's Boston claim services offices. Page 2 of that exhibit makes it clear it was assigned for handling in Massachusetts because of the state of accident, not the residence of the plaintiff. Page 3 makes it clear the deceased and his wife and child all resided in Texas. It appears Defendant Colgan made the choice to process the claim through its Massachusetts claims office.

26. In none of the inappropriately tendered documents is there any allegation of evidence of any residences other than Texas, or any waivers of Texas legal protections, or choices of remedies or laws by Yisel Dean.

**A Widow's and Child's Claim Under 408.001(b)**

27. Plaintiff Yisel Dean has a cause of action under 408.001 (b) independent of any workman's compensation payment or adjudication. That independent cause of action is why defendant's affidavits and arguments of law are irrelevant, in addition to being and inappropriate in a 12 (B)(6) motion.

28. Texas Labor Code Chapter 408, (Worker's Compensation Benefits) Subchapter A, § 408.001 (b) states as follows:

> This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence.

31. Neither the statute nor case law interpreting the statute tie the independent rights of a Texas widow and her small child to the defendant's choice in administration of workman's compensation. Many court cases have addressed this distinction, including other commercial pilot plane crash cases. For example, in the case of *Feazell vs. Mesa Airlines,* 917 S.W. 2d 895 (Ct. App. Texas 1996), the Texas parents of a pilot who died in a plane crash in Telluride, Colorado, while serving as a pilot, "acting in the course and scope of [his] employment by Mesa, a regional commuter airline." The deceased was permanent resident of Texas, but worked for Mesa in New Mexico. The surviving family was entitled to seek exemplary damages caused by an employer's gross negligence or intentional act. In *Smith v. Atlantic Richfield*, 927 S.W. 2d 85 (Tex. App. 1996), the employer was covered by workman's comp insurance; the deceased's family could still sue for gross negligence. In *Perez v. Todd Shipyards,* 999 S.W. 2d 31 (Ct. App. Tx. 1999), the deceased employee's claim was barred by his employer's bankruptcy plan, but the children's claim was independent of their deceased father. *Sbrusch v. Dow Chemical*, 124 F. supp. 2d 1090 (S.D. Tex. 2000), a surviving spouse had an independent cause of action against her dead husband's employer. *Calh's v. Union Carbide,* 932 F. Supp. 168 (S.D. Tx. 1996), the surviving spouse and children had and independent cause of action against Union Carbide. *Cowen v. Mobil Oil*, 901 F. Supp. 1204 (E.D. Tx. 1995), a federal court sitting in

diversity, applied *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938) and made its judicial prediction what the Supreme Court of Texas would do, and was strongly convinced the Texas Supreme Court would recognize the cause of action for exemplary damages in the event of an employer's gross negligence. Finally in *Wyble v. E. I. Dupont de Nemours & Co.,* 17 F. Supp. 2d. 641 (E.D. Tx. 1998), the widow of Texas man had an independent action against diverse defendant DuPont and non-diverse plant manager in his individual capacity.

**Courts in Diversity Routinely Apply the Law of Two or More States in Aviation Litigation**

32. Defendant seems to be suggesting that all parties in a federal diversity case are bound to one law. Defendant is mistaken. See *air Crash Disaster at Washington, D.C. on January 13, 1982*, 559 F.Supp. 333 (D.D.C. 1983) (hereinafter referred to as the Air Florida case). In the Air Florida case, the different parties and issues requited the application of various states' laws. Therein, Florida, Illinois, Massachusetts, Texas and Pennsylvania cases were governed by District of Columbia negligence law, products liability, and punitive damages. Florida, Texas and Washington D. C. governed apportionment of liability on contribution, and for cases filed in Virginia, the law of District of Columbia governed everything because while Massachusetts and many other combined under approach states, Virginia looks to the place of the crash. With respect to Georgia cases, the District of Columbia law governed most issue, but not appointment of liability or contribution. The courts comments ring true.

> Choice of law questions in air disaster case often have proven difficult of resolution. In *In Re Paris Air Crash of March 3, 1974*, 399 F.Supp. 732 (C.D. Cal. 1975), Judge Pierson M. Hall, certainly

one of the nation's most experienced judges in aviation cases, stated that:

The law on "choice of law" in the various states and in the federal courts is a veritable jungle, which, if the law can be found out, leads not to a "rule of action" but a reign of chaos dominated in each case by the judge's "informed guess" as to what some other state than the one in which he sits would hold its law to be. There is not doubt that a number of states have an interest in some or all of the issues to be adjudicated at the consolidated liability trial. Since federal subject matter jurisdiction arises from the parties' diversity of citizenship, this Court must follow the choice of law rules of the states where the various actions were originally filed. *Klaxon Co. v. Stentor Electric Manufacturing Co*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *In Re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594 (7th Cir.), *cert. denied, Lin v. American Airlines,*454 U.S. 878,102 S.Ct. 358, 70 L.Ed.2d 187 (1981); *In Re Air Crash Disaster at Boston, Massachusetts on July 31, 1973,* 399 F.Supp. 1106 (D.Mass. 1975). Therefore, the controlling choice of law rules are those fo the District of Columbia, Georgia, Illinois, Maryland, Massachusetts, Pennsylvania, Texas and Virginia. Most

of these jurisdictions (the District of Columbia, Illinois, Massachusetts, Pennsylvania, and Texas) have discarded the *lex loci delicti* or "site of the injury" rule in favor of tests involving an exploration of the interests of the various states having some relationship to the parties or the crash. Illinois, Massachusetts, Pennsylvania, and Texas each have specifically adopted the test of the Restatement, Second, of the Law of Conflict of Laws (1971), 559 F.Supp at 340-341; citing for the Massachusetts interpretation *Engine Specialties, Inc. v. Bombardier Ltd.*, 605 F.2d 1, 19 (1st Cir. 1979).

33. In this case the Texas interest is protecting Yisel Dean is paramount. She is a Texas widow with a minor child. She has in her favor an unequivocal Texas law giving her a claim in her right (and on behalf of a minor child) independent of her dead husband. She and her husband and their child were residents of Texas, paid taxes in Texas, and it is the state of Texas which has the greatest interest in protecting this widow and her child from living in poverty. Under any case analysis, where Yisel Dean and her child are concerned, Texas is the only state of contacts and interest. These facts are uncontroverted by Defendant Colgan. The Restatement, Second, of the Law of conflict of Laws, relied upon by Massachusetts courts specifically in resolving choice of law in air disaster conflicts reinforces the Texas interest on behalf of Yisel.

**<u>Sect. 183 Availability of Remedy for Tort or Wrongful Death</u>**

A. State of the United States is not precluded by the constitution from providing a right of action in tort or wrongful death by the fact that the defendant is declared immune from such liability to

the plaintiff by the workmen's compensation statute of a sister State under which the plaintiff

a. Could obtain an award against the defendant, or

b. Has obtained, or could obtain, an award against another person.

Comment:

a. Scope of section. The rule of this Section is one of constitutional law. It is concerned with the power of a State to provide a right of action in tort or wrongful death even though the defendant is declared immune from such liability to the plaintiff by workmen's compensation statute of a State under which the plaintiff could obtain an award for injury against the defendant or has obtained, or could obtain, an award against a person other than the defendant…

b. State rules of immunity. All States of the United States have workmen's compensation statutes. These statutes provide that, regardless of fault, employers must compensate their employees in accordance with statutorily established scales for injuries suffered by the employees in the course of their employment. In return, employers are relieved from ordinary tort or wrongful death liability. The statutes differ, however, as to what persons remain subject to suit for tort or wrongful death.

Defendant Colgan argues there is no comparable Massachusetts statute for Yisel dean. Therefore, Under the Restatement reasoning it can also be argued that there is no conflict. Texas

chooses to give a widow, in her own right, a cause of action not tied to an award or lack thereof of workman's compensation.

38. The case of *Spencer v. Kantrovitz*, 2005 WL 121793 (D. Mass. January 21, 2005) (No. Civ. A. 03-CV-12074-RGS), cited by defendant exhibits this distinction between a workman's compensation claimant and plaintiff Yisel Dean. In *Spencer,* an injured employee took workman's compensation, and then he attempted to sue his employer for additional sums for which his employer would also be liable. He did not have a statutory grant of an independent cause of action. Furthermore, the case indicates appears he made an election of remedies and decided to accept workman's comp in Massachusetts. There is no evidence of election of remedies evident in the pleadings herein. Discovery is necessary to see if such an election exists or if it was a unilateral decision by an employer without knowledge, advice, waiver or consent by a distraught widow. Those facts remain to be discovered.

**Diverse Case; Diverse State Law Application**

In Calhoun v. Yamaha Motor Corporation USA, 40 F.Supp.2d 288 (E.D.Pa. 1999) after remand from the U.S. Supreme Court, 516 U.S. 199, 116 S Ct. 619 (1996), the parents of a Pennsylvania child killed in Puerto Rico sued for both compensatory and punitive damages. The court ruled Puerto Rico's interest should govern punitive damages and Pennsylvanian law should govern compensatory damages because Pennsylvania must care for the Calhoun family. 40 F.Supp2d at 292. On appeal, the Third Circuit held Pennsylvanian law governed compensatory damages, Puerto Rico governed punitive damages, and federal maritime law governed liability. Calhoun v. Yamaha Motor Corporation, 216 F.3d 338 (3rd Cir. 2000).

In Anderson v. Piedmont Aviation, Inc., 68 F.Supp.2d 682 (M.D.N.C. 1999), the North Carolina court followed Florida case law because it found no North Carolina cases addressing

the issue but many Florida cases. "Accordingly, because there is no square holding in North Carolina recognizing or declining to recognize an action of the type alleged by Plaintiffs in the case, the court will assume a conflict exists and that it is necessary to apply Florida law." 68 F.Supp. at 686. Similarly, in the instant case, there are many, many Texas cases, but no Massachusetts cases addressing a situation like that in Yisel Dean's case. Thus Texas law provides the more extensive guidance. The Massachusetts U.S. District Court in deciding a Massachusetts air crash looked to Florida, residence of the deceased pilot and his widow, to decide a claim in tort made outside workman's compensation. (The issue therein was whether or not he was actually working at the time of the crash.) In re air Crash Disaster at Boston , Massachusetts July 31, 1973, 415 F.Supp. 206 (D.Mass. 1976).

**Massachusetts 93A Claim**

39. While not relevant to this Defendant, Colgan suggests that because a 93A claim is made against another defendant, Massachusetts law must apply to the entire claim. The 93A claim was made against Defendant Raytheon, not Defendant Colgan. The reason for the difference is contained in the pleadings. Yisel Dean brought this action in 3 capacities: for herself, for the next of kin of her dead husband (including their minor child and a partially dependant brother), and for the estate of Steven Dean. When such issue is properly before the court, it will be clear that the 93A claim is not dependent upon or in any way tied to Colgan's workman's compensation issues and is properly claimed in this action.

**Plaintiff Has Sufficiently Pled Cause of Action for Gross Negligence Under Texas Law**

40. Finally defendant argues that even if Texas law does apply and Yisel Dean does herself have an independent claim against Colgan, the allegations in the complaint are insufficient to support a claim for gross negligence under Texas Labor Code (TLC) § 408.001(b).

TLC § 408.001(b) specifically refers to the Texas Civil Practice and Remedies Code, Chapter 41 to define gross negligence under 408.001(b) as follows:

> (c) In this section; "gross negligence" has the meaning assigned by Section 41/001 Civil Practice and Remedies Code.

Act 1993, 73 a Leg. Ch. 269, §1, eff. Sept. 1, 1993. The Civil Practice and Remedies Code states as follows:

> (11) 'Gross negligence' means an act or omission:
>
> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude for the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.
>
> Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, §2.12, eff. Sept. 2, 1987. Amended by Acts 1995, 74th Leg., ch. 19, § 1, eff. Sept. 1, 1995; Acts 2003, 78th Leg., ch. 204, § 13.02, eff. Sept. 1, 2003.

41. As set forth herein above, at paragraphs 10-13, very substantial gross negligence was alleged against Colgan. Not only was it alleged, it was admitted by Colgan in the public record. See NTSB Accident ID # NYC03MA183 Docket No. 45, Colgan's party submission to the NTSB. Therein Colgan admitted it took such actions intentionally and knowingly. Colgan's alleged and admitted actions are so egregious and serious, that the U.S. Dept. of Transportation investigates such unapproved parts substitution and unauthorized repairs as a crime.

42. Repair work not performed in accordance with the repair manual is so egregious others had been criminally indicted and convicted as documented in the public record. See www.dot.gov/item. "Plead guilty…repairs outside scope of manufacturers manual… replacement parts installed which did not meet engine manufacturer's requirements." Again, as contained in the public record, here is just a sampling of Defendant Colgan's knowingly, willful, intentional, egregious… and illegal behavior:

> ..the mechanics were required to remove and replace the elevator trim tab actuators because the actuators' operation did not meet the free play specifications…..Because of the time required to order the mod kits, ship the kits, then modify the actuators and install the modified actuators, Colgan Air requested from RAC Technical Support engineering approval to use the -6 and -7 actuators that were on hand. … While waiting for a response from engineering support, Colgan Air, maintenance personnel elected to install the -6 and -7 actuators…In his interviews with the Airworthiness Group, the lead mechanic acknowledged that they did not remove the elevator….The mechanics failed to follow the manufacturer's AMM Revision 9 instruction and Colgan Air Detail 6 work cards to remove the elevator as part of the scheduled elevator trim actuator removal and reinstallation.

In the first paragraph of page 2 of the Raytheon Submission it is states: "The Beech 1900D Airliner Illustrated Parts Catalog did not allow the combination of actuators (-6 and -7) that had been installed. Colgan Air, Inc. representatives then decided to replace the -6 actuator with a -9, which was called out in the illustrated parts catalog." In fact, the Colgan Air representatives with guidance from RAC Airline Technical Support decided to replace the -6 with a -9. A simple look at the Illustrated Parts Catalog tells the reader that **none of these dash numbers can be used in the aircraft involved in this matter**, including the -9 which was not included in the effectivity group for UE 40, the accident aircraft. …The mechanics at Colgan did have available -6 and -7 actuators; however, neither was listed in the IPC as usable with the accident aircraft. Raytheon Aircraft Service Bulletin 27-3032, issued in July 2003, called for mandatory modification of spare -6 actuators, and recommended modification of spare -7 and -9 actuators, but the IPC did not indicate that unmodified actuators could be utilized in the accident aircraft.

In this same public record Defendant Colgan admitted it did not have authority to alter the parts as they did.

43. It is clear that Defendant Colgan's actions violated myriad federal aviation laws. The following is but one example:

TITLE 14--AERONAUTICS AND SPACE

CHAPTER I--FEDERAL AVIATION ADMINISTRATION, DEPARTMENT OF TRANSPORTATION

PART 43_MAINTENANCE, PREVENTIVE MAINTENANCE, REBUILDING, AND ALTERATION
--Table of Contents

Sec. 43.2 Records of overhaul and rebuilding.

(a) No person may describe in any required maintenance entry or form an aircraft, airframe, aircraft engine, propeller, appliance, or component part as being overhauled unless--

(1) Using methods, techniques, and practices acceptable to the Administrator, it has been disassembled, cleaned, inspected, repaired as necessary, and reassembled; and

(2) It has been tested in accordance with approved standards and technical data, or in accordance with current standards and technical data accepteble to the Administrator, which have been developed and documented by the holder of the type certificate, supplemental type certificate, or a material, part, process, or applicance approval under Sec. 21.305 of this chapter.

(b) No person may describe in any required maintenance entry or form an aircraft, airframe, aircraft engine, propeller, appliance, or component part as being rebuilt unless it has been disassembled, cleaned, inspected, repaired as necessary, reassembled, and tested to the same tolerances and limits as a new item, using either new parts or used parts that either conform to new part tolerances and limits or to approved oversized or undersized dimensions.

[Amdt. 43-23, 47 FR 41084, Sept. 16, 1982]

(2) The performance of the maintenance, preventive maintenance, and alteration of its aircraft, including airframes, aircraft engines, propellers, appliances, emergency equipment, and parts thereof, in accordance with its manual and the regulations of this chapter.

(b) A certificate holder may make arrangements with another person for the performance of any maintenance, preventative maintenance, or alterations. However, this does not relieve the certificate holder of the responsibility specified in paragraph (a) of this section.

14 CFR Ch. I, Subpart L §121.361

(b) The certificate holder's manual must contain the programs required by §121.367 that must be followed in performing maintenance, preventive maintenance, and alterations of that certificate holder's airplanes…

(2) A designation of the items of maintenance and alteration that must be inspected (required inspections), including at least those that could result in a failure, malfunction, or defect endangering the safe operation of the aircraft, if not performed properly or if improper parts or materials are used.

14 CFR Ch. I, Subpart L § 121.369

TITLE 14--AERONAUTICS AND SPACE

CHAPTER I--FEDERAL AVIATION ADMINISTRATION, DEPARTMENT OF TRANSPORTATION

PART 43_MAINTENANCE, PREVENTIVE MAINTENANCE, REBUILDING, AND ALTERATION
--Table of Contents

Sec. 43.13 Performance rules (general).

(a) Each person performing maintenance, alteration, or preventive maintenance on an aircraft,

> engine, propeller, or appliance shall use the methods, techniques, and practices prescribed in the current manufacturer's maintenance manual or Instructions for Continued Airworthiness prepared by its manufacturer, or other methods, techniques, and practices acceptable to the Administrator,
>
> (b) Each person maintaining or altering, or performing preventive maintenance, shall do that work in such a manner and use materials of such a quality, that the condition of the aircraft, airframe, aircraft engine, propeller, or appliance worked on will be at least equal to its original or properly altered condition (with regard to aerodynamic function, structural strength, resistance to vibration and deterioration, and other qualities affecting airworthiness).

As Defendant Raytheon's actions are not at issue in this motion, Plaintiff does not discuss them herein, but notes for the records that Raytheon's actions were also willful, egregious, intentional and wanton, and Raytheon played a very, very significant role in this horrible tragedy.

**Conclusion**

In summary, Colgan is a Virginia defendant who operates scheduled air carrier service in 11 states and operates charters to "the lower 48 states, Alaska and Canada." See information in the public record at www.colganair.com.

Colgan has a motion pending to move this case to Virginia and combine it with its case against Raytheon which Colgan filed under Virginia law. Yet, it asks this court to apply Massachusetts's Worker's Compensation law to ban a claim belonging to a Texas widow granted to her and her child by a Texas law that specifically makes the claim independent of her dead husband's workman's compensation claim, or even lack thereof.

Furthermore, there has been no opportunity for discovery yet Colgan seeks to rely on selected employment information not in the public record, with unattributed alterations to the original permanent records of a Texas citizen. Finally, as amply demonstrated herein, including

by Defendant's attempted submission of affidavits and exhibits, there are many issues of disputed facts. For the reason, in addition to all those cited above discussed reasons, plaintiff respectfully requests defendant's rule 12(b)(6) motion be denied.

July 18, 2005

Respectfully Submitted,

Mary Schiavo for

Robert McConnell, Esq.
(BBO No. 550625)
Mary Schiavo
Motley Rice LLC
321 South Main St.
P.O. Box 6067
Providence, RI
(401) 457-7700