## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| YISEL DEAN, et al., | ) | **CONSOLIDATED UNDER** |
| | ) | **CASE NO. 05-10155 PBS** |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| RAYTHEON COMPANY, et al., | ) | Case No. 05 CV 10155 PBS |
| | ) | |
| Defendants. | ) | |
| | ) | |
| LISA A. WEILER, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05 CV 10364 PBS |
| | ) | |
| RAYTHEON COMPANY, et, al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' REPLY REGARDING
## PLAINTIFFS' FURTHER DISCOVERY REQUESTS

Plaintiffs' post-hearing filing was to have clarified and narrowed the scope of the Fed. R. Civ. P. 30(b)(6) topics on which Raytheon witnesses are sought regarding the 13 specific items listed in the notebook provided to the Court at the hearing. Instead, after representing to the Court and counsel that the requested discovery had been narrowed to the 13 items listed, plaintiffs now throw the doors back wide open and demand depositions on all other alleged maintenance manual errors. The 13 items on the list are thus merely examples of a much broader scope of proposed discovery.

Setting aside what constitutes an "error" or "correction" under these requests, a simple review and explanation of the 13 items listed highlights the impropriety of directing discovery to other unrelated events or aspects of the manual that bear no relationship to the facts of this case. While it is true that the scope of discovery is broader than the scope of admissibility, Rule 26

988997v1

specifically provides that the information sought must be relevant to the claims or defense of any party. Fed. R. Civ. P. 26(b). In other words, fundamental relevance is a threshold requirement for the discovery sought. *Id.*

It is the burden of the party seeking the discovery to show that the information requested is relevant. *United States v. Int'l Business Machines Corp.,* 66 F.R.D. 215 (S.D. N.Y. 1974). *See also, Bemis v. Kelley,* 857 F.2d 14 (1st Cir. 1988). Plaintiffs' demand to discover documents and take depositions on any and all errors or corrections to the manual reaches so far beyond the bounds of appropriate discovery that there should be little or no question about the need to prohibit it. *Cooper v. R.J. Reynolds Tobacco Co.,* 158 F. Supp. 22 (D. Mass. 1957) (Court held that the defendant was not required to disclose all other advertisements because plaintiff's claims were based on representations in specific advertisements).

This case is about Figure 201 of Chapter 27-30-04 of the Beech 1900D Maintenance Manual, and whether there was an appropriate hyperlink to the operational check in that same chapter. It is not about how many times the manual has been revised before or after the accident, or any of the irrelevant items in the list of 13. As in *Cooper*, the defendants should be protected from having to disclose irrelevant and collateral information that has absolutely no bearing on plaintiffs' claims, and that cannot, and does not, lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b). Discovery of how Raytheon's manuals were drafted and designed <u>prior to the date of sale</u>, cannot as a matter of law, reasonably lead to the discovery of admissible evidence. Mass. Gen. L. c. 106 § 2-725(2) (a breach of warranty occurs <u>when tender of delivery is made</u>). <u>See Hickman v. Taylor</u>, 329 U.S. 495, 501 (1947) (discovery shall broadly encompass any matters that bear on or reasonably could lead to other matter that could bear on any issue that is or may be in the case); <u>Cronin v. Strayer</u>, 392 Mass. 525 (1984); <u>See Correia v. Firestone Tire & Rubber Co.</u>, 388 Mass. 342, 352 (1983) ("it is elemental that a plaintiff may recover from a

defendant in negligence only if he proves that the defendant's breach of a duty of care owed to the plaintiff proximately caused the plaintiff's injuries. [Citations omitted] It is equally elemental that the defendant may seek to avoid liability by offering evidence tending to disprove the existence of any duty, breach, cause, or injury"). A "breach of a duty of care owned to the plaintiff" logically cannot accrue until the plaintiff's product is manufactured and sold. No duty can accrue before that, and, therefore, in both cases for breach of implied warranty or negligence, the date of sale initiates any duty that may ever arise, and any discovery regarding the product before the date of sale can never reasonably lead to the discovery of admissible evidence and should be barred. Fed. Civ. P. 26(b)(1); Fed. R. Evid. 401 and 402.

**The Book of 13**. If the notebook of 13 events plaintiffs supplied the Court at the hearing is an example of the types of discovery items they seek, a quick review of each reveals how far outside the net of reasonable discovery such a fishing expedition would be if allowed.[1]

> Items 1 and 2. These items involve an airplane in 1995 that was found to have a cable in the tail section broken after rubbing on a pulley pin that it was routed over rather than under during manufacture. This has nothing whatsoever to do with manuals. Item 2 is the Airworthiness Directive that was issued as a result. It called for operators of like aircraft to check the routing of the cable over the subject pulley. No other aircraft was found to have a similar problem.

> Item 3. This was a gear-up landing that happened in Rochester, New York, and is completely unrelated to the elevator cables, Figure 201 or operational checks of the elevator trim. The only potential linkage to maintenance manual issues was the contention that the chapter on landing gear in the paper manual did not have an operational check. The alleged lack of an operational check in this chapter on landing gear in the paper manual has no relationship to plaintiffs' present claims that the chapter on elevator trim tabs in the electronic REPS manual did not contain a hyperlink to an operational check that *did* exist.

> Item 4. This is an incident that happened in Miami, Florida, involving hydraulic landing gear actuators, not elevator trim systems. Raytheon did not investigate this incident and Raytheon has reviewed its records and finds no material regarding it. It has no relationship to this case.

---

[1] While this "book of 13" was touted by plaintiffs at the hearing as being 13 accidents or incidents implicating manual errors, the Court will quickly see upon review that it is nothing of the sort. Rather, it is a jumbled and confusing mixture of papers under incorrect tabs that are generally not accidents or incidents at all but mostly airworthiness directives or safety communiqués or just lists of publication updates that have nothing whatsoever to do with this case.

Item 5. This was an incident in Albany, New York, where mechanics had removed the elevator trim wheel. They failed to re-index the wheel upon re-installation. While this incident did involve the elevator trim, it had nothing to do with the replacement of the cable, Figure 201 or link to any operational check. This matter was already discussed in the *Colgan* case and was the subject of testimony at Willard Crowe's deposition. Plaintiffs' counsel in this case attended and participated in that deposition, and was free to, and did, cross examine Mr. Crowe.

Item 6. This is not an incident at all but rather an Airworthiness Directive issued in 1987, over 15 years before this incident, not even involving this model of aircraft. This bears no discernable relationship to this case.

Item 7. This refers to an Airworthiness Directive calling for inspections of elevator rigging, not elevator trim systems. This followed the Charlotte accident, which was the subject of extensive discovery in the *Colgan* case, including extensive testimony at depositions already taken by plaintiffs' counsel.

Item 8. This does relate to this case; in fact, it is this case and has been fully discovered. Safety Communique 234 is the notice that went out to the owners of 1900D aircraft informing of the upcoming illustration change to Figure 201 and reminding to double check the elevator trim system following maintenance in accordance with the operational check already existing in the manual.

Second Item 8 and 9. These are just printouts from an RAC website listing recent publications, and referencing Safety Communique 266, which relates to rudder trim, not elevator trim. More importantly, it was issued in November of 2005, more than two years after the accident, and more than a year after the publication of the version of the maintenance manual to which it applies. There is absolutely no place for discovery of such items in this case.

Items 10 and 11. These again are just lists of publications. The referenced document is Model Communique 73, which again has nothing to do with this case. It came out in November of 2005, more than two years after the accident, and is a general communication that covers a variety of topics, none of which have anything to do with this accident or the systems involved in this service.

Item 12. This is just a listing of Beech Service Bulletins referencing Service Bulletin 2335, which was issued in 1990, some 13 years before the accident and three years before the subject aircraft was built. It has no relationship to this case.

Item 13. This is merely an online listing from articles in Commercial Aviation Today dated October 2003. It includes a few paragraphs under a caption "Beech 1900 Manual May Need Correction." It mentions two accidents, presumably this one and Charlotte, but provides no substance. Both this accident and Charlotte have been fully discovered and no additional discovery is warranted.

**Interrogatories and Requests for Production**. In a separate filing, plaintiffs have

restated their interrogatories 2(a) and 2(e), but there was no meaningful attempt to narrow the

scope.   The same remains true with the document requests still under review.   Setting aside relevance, requests for people or documents on all other manual "errors" or "corrections" is too vague to allow a meaningful response.   Plaintiffs characterize any change or revision as necessarily correcting an error or problem.   Most revisions, however, are part of continuing product improvement.   Opening this discovery door on irrelevant manual sections will inevitably lead to further discovery disputes and even more motions in limine than will already exist.

The task of attempting to answer the interrogatories or like document requests as stated would also be unduly burdensome.   Based on a forty hour work week, it would require two people two to three months to compile the information.   If *any* such discovery were allowed, a more manageable, but still improper, limit would be to simply provide the list of 1900D maintenance manual revisions to Chapter 27 (flight controls) for the five years before the date of the accident.   None of the revisions to sections which are unrelated to the replacement of the forward trim cable, however, are truly relevant to this case.

**Don Havnen**.   Havnen remains irrelevant and allowing his deposition will inevitably lead to further discovery disputes, as the proper scope of inquiry will be nearly impossible to manage. Defendants oppose his deposition but if it is allowed, it should be strictly limited in scope to what he knows about this accident and the parts of the manual under debate.[2]   His testimony should not invade, or be considered a waiver of, any privileges or confidences of defendants.

**Mike Scheidt**.   Plaintiffs have already deposed Mr. Scheidt and the demand to do it again is simply harassment.   They request his deposition on other accidents and incidents, and particular manual revisions, none of which would he have direct knowledge, as was explained in

---

[2] Surprised by the plaintiffs' position in their Suggested Scope of Discovery regarding the Havnen deposition, defendants refer the court to pp. 84-89 of the January 25, 2006, hearing transcript on this matter wherein the court ruled that Raytheon was entitled to a discovery deposition followed by a videotaped trial deposition, if necessary. See  specifically pp. 88-89.  Such a deposition is a common procedure when the content of the testimony is unknown but trial testimony is to be preserved.  It will make for more efficient trial evidence and fewer discovery disputes in this extraordinary situation, as discussed with the court.

his last deposition.   While he could speak to general budgeting and resource allocation for the

1900D fleet, he has already been questioned about such matters, and none of that is relevant to

whether the manual was defective because of Figure 201 of Chapter 27-30-04, or because it did

not contain a hyperlink to the operational check.   His deposition should not be taken again.

Respectfully submitted,
MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.

/s/  Michael G. Jones (gwh)

William L. Oliver
Michael G. Jones
100 North Broadway, Suite 500
Wichita, Kansas 67202
Telephone: (316) 265-9311
Facsimile:  (316) 265-2955

and

/s/ Gary W. Harvey

Peter C. Knight, BBO # 276000
Gary W. Harvey, BBO # 547993
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Phone: 617-439-7500
*Attorneys for Raytheon Defendants*

I hereby certify that on February 15, 2006 a true copy of the
above document was served upon each counsel of record
electronically through filing with the ECF system.

/s/ Gary W. Harvey

Gary W. Harvey

988997v1                                                    6