# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CONSOLIDATED UNDER
CASE NO. 05-10155 PBS**

| | | |
|---|---|---|
| YISEL DEAN, et. al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 05 CV 10155 PBS |
| | ) | |
| RAYTHEON COMPANY, a Delaware | ) | |
| Corporation, RAYTHEON AIRCRAFT | ) | |
| HOLDINGS, INC. a Delaware | ) | |
| Corporation, RAYTHEON AIRCRAFT | ) | |
| COMPANY, a Kansas Corporation, | ) | |
| RAYTHEON AIRCRAFT CREDIT | ) | |
| CORPORATION, a Kansas | ) | |
| Corporation, COLGAN AIR, INC., | ) | |
| a Virginia Corporation d/b/a US Air | ) | |
| Express, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| LISA A. WEILER, et. al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 05 CV 10364 PBS |
| | ) | |
| RAYTHEON COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

The plaintiffs respectfully move the Court for leave to amend their complaints

pursuant to Federal Rule of Civil Procedure 15(a).[1]  In support of this Motion, the
plaintiffs state as follows:

1.      Instrumental to the plaintiffs' case-in-chief is the determination of those
entities in the Raytheon corporate family that were responsible for preparing the accident
aircraft's maintenance manuals, and for rendering advice on proper replacement parts and
associated maintenance procedures.  Recognizing the need to discover those entities, this
Court granted leave for the plaintiffs to depose Mr. Michael Scheidt, the defendants'
authority on corporate structure.  [docket # 85, p.4].

2.      The plaintiffs deposed Mr. Scheidt on June 30, 2006.  From the
information obtained at this deposition, the plaintiffs discovered that Raytheon Aircraft
Holdings, Inc. had no operational connection to the accident aircraft and thus should not
be included as a defendant in this matter.  Likewise, Colgan Air Inc. is no longer a proper
defendant pursuant to this Court's order. The parties agree that Colgan Air, Inc. and
Raytheon Aircraft Holdings, Inc. are not proper defendants, and the defendants assent to
their removal from these amended complaints.

3.      The information obtained from Mr. Scheidt's deposition indicates that two

---

[1]  **(a) Amendments.** A party may amend the party's pleading once as a
matter of course at any time before a responsive pleading is served or, if
the pleading is one to which no responsive pleading is permitted and the
action has not been placed upon the trial calendar, the party may so amend
it at any time within 20 days after it is served. Otherwise a party may
amend the party's pleading only by leave of court or by written consent of
the adverse party; **and leave shall be freely given when justice so
requires**. A party shall plead in response to an amended pleading within
the time remaining for response to the original pleading or within 10 days
after service of the amended pleading, whichever period may be the
longer, unless the court otherwise orders.

Fed. R. Civ. P. 15 (emphasis added).

entities, Raytheon Airline Aviation Services LLC, and Raytheon Aircraft Parts and Inventory Distribution LLC, should be added as defendants in this matter. The accident aircraft was repaired using substitute parts because the normal parts were not available. Raytheon Airline Aviation Services LLC controlled employees that provided advice about which parts to use in the accident aircraft's repair; Raytheon Aircraft Parts and Inventory Distribution LLC was the entity charged with maintaining an adequate parts inventory to support the parent fleet of the accident aircraft. The Scheidt deposition clarified that Raytheon Company considers Raytheon Aircraft Parts and Inventory Distribution LLC a separate entity.

4.      The plaintiffs' proposed amended complaints also contain non-substantive clarifications to conform the pleadings to the absence of Colgan Airways as a defendant.

5.      The amendments to the complaints are proposed to insure the pleadings name the proper defendants in light of the deposition testimony on Raytheon corporate structure taken pursuant to this Court's order.[docket # 85], and to conform the pleadings to the evidence of the proper parties as described in depositions of Raytheon personnel.

6.      Because the facts underlying the need to amend the complaint were unearthed in this Court's ordered discovery, leave to amend would be proper in this circumstance. As the First Circuit has noted:

> We are mindful . . . of Rule 15(a)'s admonition that "leave shall be freely given when justice so requires." Thus, unless there appears to be an adequate reason for the denial (e.g., undue delay, bad faith, dilatory motive on the part of the movant, futility of the amendment), we will not affirm the denial. *See Foman v. Davis,* 371 U.S. 178, 182.

*Grant v. News Group Boston, Inc*., 55 F. 3d 1, 5 (1st Cir. 1995).

7.      In sum, both plaintiffs and defendants agree the complaints should be

amended to reflect the proper entities as defendants.  The only disagreement between the parties in this matter is regarding the addition as defendants of two entities within the Raytheon corporate umbrella – Raytheon Aircraft Parts and Inventory Distribution LLC and Raytheon Airline Aviation Services LLC.

**WHEREFORE**, the plaintiffs move for leave to file the attached amended complaints.

Respectfully Submitted,

Attorneys for the Plaintiffs

_____/s/ Jacob T. Elberg_____

David A. Bunis (BBO No. 550570)
Jacob T. Elberg (BBO No. 657469)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 371-1000

and

Mary Schiavo, Esq.
Marlon Kimpson, Esq.
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
(843) 216-9374

Dated:  September 11, 2006

## CERTIFICATE OF SERVICE

I, Jacob T. Elberg, hereby certify that a true and correct copy of this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on September 11, 2006.

4

_____/s/ Jacob T. Elberg_____

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I, Mary Schiavo, hereby certify that on September 11, 2006, I conferred with Defendant's counsel, Michael Jones, pursuant to Local Rule 7.1(A)(2).  Defendant's counsel assents to this motion in so far as it removes Colgan Air, Inc. and Raytheon Aircraft Holdings, Inc. as defendants in this matter, and opposes this motion in so far as it adds Raytheon Airline Aviation Services LLC, and Raytheon Aircraft Parts and Inventory Distribution LLC as defendants in this matter.

_____/s/ Mary Schiavo___

Date: September 11, 2006

5

Mary Schiavo, Esq.
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
Ph:  (843)216-9374

David A. Bunis, Esq. (BBO # 550570)
Jacob T. Elberg, Esq. (BBO # 657469)
Dwyer & Collora, LLP
600 Atlantic Ave.
Boston, MA 02210
(617) 371-1000

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**CONSOLIDATED UNDER
CASE NO. 05-10155 PBS**

| | |
|---|---|
| Yisel Dean, Independent Administratrix of the Estate of Steven Dean, deceased, and on behalf of all statutory beneficiaries, ) ) ) ) | |
| Plaintiff, ) | **Case No.: 05 CV 10155 PBS** |
| vs. ) ) | |
| Raytheon Company, a Delaware Corporation, Raytheon Aircraft Company, a Kansas Corporation, Raytheon Aircraft Credit Corporation, a Kansas Corporation, Raytheon Airline Aviation Services LLC, a Kansas Corporation, and Raytheon Aircraft Parts Inventory and Distribution Company LLC, a Kansas Corporation ) ) ) ) ) ) ) ) ) ) | **PROPOSED THIRD AMENDED COMPLAINT for (Wrongful Death, Negligence, Breach of Express and Implied Warranty, Gross Negligence, Unfair or Deceptive Acts and Practices)** |
| Defendants. ) ) | |

|  |  |
|---|---|
| Lisa A. Weiler, Administratrix of the Estate of Scott A. Knabe, deceased, and on behalf of all statutory beneficiaries, | ) ) ) |
|  | ) |
|                         Plaintiff, | ) |
|          vs. | ) ) |
| Raytheon Company, a Delaware Corporation, Raytheon Aircraft Company, a Kansas Corporation, Raytheon Aircraft Credit Corporation, a Kansas Corporation, Raytheon Airline Aviation Services LLC, a Kansas Corporation, and Raytheon Aircraft Parts Inventory and Distribution Company LLC, a Kansas Corporation | ) ) ) ) ) ) ) ) ) ) |
|                         Defendants. | ) ) |

**Case No.: 05 CV 10155 PBS**

The Plaintiff, Yisel Dean, individually and as the Independent Administratrix of the Estate of Steven Dean, deceased, and on behalf of all beneficiaries and next of kin, by and through her attorneys, Motley Rice LLC and Dwyer & Collora, LLP for cause of action in this complaint alleges on information and belief:

## PARTIES

1.      The Plaintiff, Yisel Dean, at all times relevant herein resides in the state of Texas, and has been appointed by the Probate Court of Tarrant County, Texas, as Independent Administratrix of the Estate of Steven Dean who died in the crash of US Airways Express flight 9446, on August 26, 2003.

2.      Plaintiff also brings this action on behalf of all beneficiaries including herself, her and the deceased's minor child and other next of kin.

3.      Defendants are Raytheon Company, Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services LLC, and Raytheon Aircraft Parts Inventory and Distribution Company LLC.  Raytheon Company is a Delaware corporation;

Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services LLC, and Raytheon Aircraft Parts Inventory and Distribution Company LLC are wholly owned subsidiaries of the Raytheon Aircraft Holdings, Inc., and are Kansas corporations with their principal place of business in Wichita, Kansas.

4.      Raytheon Company, Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services LLC, and Raytheon Aircraft Parts Inventory and Distribution Company LLC, are collectively referred to herein as "Raytheon".

### JURISDICTION AND VENUE

5.      The amount in controversy exceeds $75,000 exclusive of interest and costs.

6.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

7.      A substantial part of the acts and omissions giving rise to the claims set forth in this complaint occurred in this judicial district.  All defendants are doing business in this judicial district.  Therefore, this court has venue pursuant to 28 U.S.C. §1391(a).

8.      The plaintiff claims damages under Massachusetts General Laws chapter 229 §2 and §6, for the wrongful death and conscious suffering of Steven Dean, for herself, their daughter, and other next of kin.

9.      Plaintiff claims damages pursuant to Massachusetts General Laws Chapter 106 §2-313 through §2-315 and §2-318 for breach of express and implied warranties.

10.     Plaintiff claims prejudgment interest pursuant to Massachusetts General Laws Chapter 229 §11 and as otherwise allowed by law.

11.     Plaintiff claims damages for unfair and deceptive acts and practices committed in violation of Massachusetts General Laws Chapter 93A § 2, 9.

### GENERAL ALLEGATIONS & FACTUAL BACKGROUND

12.     On August 26, 2003, Steven Dean was killed while serving as the First Officer of US Airways flight 9446.  Scott Knabe, the captain, was also killed.  The plane was a Beech 1900D, registration number N240CJ, ("the aircraft") operated by Colgan Air d/b/a US Airways Express.

13.     The aircraft crashed into the water off the coast of Yarmouth, Massachusetts shortly after takeoff from Barnstable Municipal Airport.

14.     The aircraft was manufactured by the Raytheon Aircraft Company, and owned by Raytheon Aircraft Credit Corporation, which leased it to the operator of the aircraft on a seven (7) year lease beginning in January of 2003.

15.     At the time of the crash the aircraft was owned by and registered to Raytheon Aircraft Credit Corporation

16.     Raytheon Aircraft Corporation designed and manufactured the Beech 1900D. The model was first certificated in 1991.  The aircraft at issue herein was manufactured in 1993.

17.     Raytheon Airline Aviation Services LLC was incorporated in 2002 and managed Raytheon's commuter aircraft business.

18.     Raytheon Aircraft Parts Inventory and Distribution Company LLC was incorporated in 2003 and provided aircraft parts and maintenance and repair support to operators of Beech 1900D and other Raytheon aircraft.

19.     Raytheon Company, and/or by and through its officers, directors, and employees, generally managed, directed, and had oversight over Raytheon Aircraft Company and Raytheon Aircraft Credit Corporation.

20.     Raytheon Corporation made the decision in or about 2002 to put the Beech 1900D aircraft and support in a separate company called Raytheon Airline Aviation Services LLC, which was set up as a cost center, not a profit center.  Assets, income and/or revenues went to Raytheon Aircraft Credit Corporation, and Raytheon Airline Aviation Services was a cost center

with a goal of getting no deeper into debt.

21.    The aircraft was in service with another operator (or operators) before it was returned to Raytheon's possession and subsequently leased by the operator of the fatal flight.

22.    The operator of the aircraft experienced problems, including problems with the trim, on the aircraft at issue herein after receiving the aircraft from Raytheon and before August 26, 2003.

23.    Raytheon provided advice and guidance on the repair of this aircraft.

24.    In addition to designing and manufacturing this aircraft, Raytheon wrote and provided the manufacturer's Airliner Maintenance Manual (AMM) for this aircraft.

25.    On August 23-26, 2003, the accident airplane was in Hyannis, Massachusetts for maintenance, inspection and/or repair.

26.    The mechanics consulted the AMM in making repairs and performing maintenance on this aircraft.

27.    The mechanics consulted Raytheon on or about August 24 or 25, 2003, about the repair of this aircraft.

28.    Immediately prior to the fatal flight, maintenance had been performed on the airplane which included work on the forward elevator pitch trim tab cable, elevator trim activator and trim drum.

29.    The AMM was erroneous, defective, misleading and omitted information, to wit:

　　a)　The trim drum was depicted backward;

　　b)　Relying on the erroneous drawings, a mechanic could, and did, mis-route the cable around the drum;

　　c)　Relying on the erroneous drawings, the trim system could be, and was, reversed;

    d) The depiction in the AMM showed the nose-up trim tab cable emanating from the aft end of the drum, rather than the forward end;

    e) The depiction in the AMM showed the nose-down cable emanating from the forward end of the drum, rather than the aft;

    f) There was no procedure for an operational check in the elevator trim tab cable-maintenance practices chapter, Chapter 27-30-04; and

    g) There was no referral in Chapter 27-30-04 to Chapter 27-30-09, "Elevator Trim-Maintenance Practices… Elevator Trim Operational Check," which did contain a procedure for an operational check of the elevator trim system.

30.    Steven Dean serving as the First Officer, commonly referred to as co-pilot, and Scott Knabe serving as Captain, commonly referred to as pilot, were assigned to fly US Airways flight 9446 on August 26, 2003, after maintenance.

31.    Shortly after takeoff the flight crew reported a problem with the trim.

32.    The flight crew selected a nose up trim, but instead the aircraft elevator traveled to the full nose-down position, and crashed into the water killing Steven Dean and Scott Knabe.

33.    As a result of the foregoing, which was a direct and proximate result of the conduct of defendants herein, and each of them, Steven Dean was forced to endure severe mental anguish, fear of impending death, conscious pain and suffering, and ultimately he suffered severe physical injuries that caused his death.

34.    As a direct and proximate result of the acts and omissions of each defendant herein, there was a measurable and significant period of time from the first trauma causing injury to decedent and before the decedent's death such that decedent consciously suffered injuries and damages for a measurable period of time before decedent's death.

35.     As a direct and proximate result of the acts and omissions of each defendant, decedent's personal property was damaged, destroyed and tortiously interfered with, all to the damage of decedent and/or his estate.

36.     As a direct result and proximate result of the act and omissions of each defendant, Steven Dean died and his beneficiaries, heirs and survivors, including but not limited to Yisel Dean, decedent's and Mrs. Dean's minor child, and other immediate next of kin, have been and continue to be deprived of decedent's income, services, support, help and assistance, advice and guidance, and other economic losses.

37.     As a direct and proximate result of the acts and/or omissions of defendants, and each of them, Steven Dean died and his beneficiaries, heirs and survivors have suffered and continue to suffer non-economic damages including but not limited to loss of consortium, companionship, comfort, care, love, affection, assistance, presence, protection, society, confidence and guidance, as well as suffering, grief, anguish, bereavement, pain and suffering and emotional trauma.

38.     As a direct and proximate result of the acts and omissions of defendants, and each of them, Steven Dean died and his beneficiaries, heirs and survivors have incurred funeral, burial, travel, and related expenses.

39.     The defendants and each of them owed a duty to plaintiff, and it was reasonably foreseeable that in breaching that duty, serious injury and death could result.  The defendants, and each of them breached that duty and those breaches caused serious harm to plaintiff.

## COUNT I

### (Negligence Claim Against Raytheon)

40.     The Plaintiff incorporates by reference all prior allegations.

41.      Raytheon provided the operator of this fatal flight with an aircraft and with an

Airliner Maintenance Manual (AMM) prescribing how repairs and maintenance to the Beech 1900D aircraft should be performed.

42.    The aircraft had a problem with the trim and Raytheon knew or should have known that individuals or entities performing maintenance would rely on the AMM or other Raytheon maintenance advice and illustrations to perform maintenance and repairs on the Beech 1900D aircraft it manufactured.

43.    Raytheon had a duty to provide an aircraft that was fully functional, airworthy and without defects, and Raytheon had a duty to provide accurate, reliable information in the AMM and maintenance advice, enabling the operators of this flight and other owners of its Beech 1900D aircraft or other maintenance personnel to make correct and safe repairs to the aircraft.

44.    Raytheon was advised there was a problem with the trim on the aircraft and knew or should have known that the information in the AMM, specifically Raytheon Maintenance Manual Rev 9, 27-30-04 for the Beech 1900D aircraft was defective and incorrect and that if the instructions in the manual were followed, a dangerous and fatal accident could result.

45.    Raytheon knew or should have known that the accident aircraft was defective upon, or soon after its delivery to, the operators of this fatal flight, due to the defective or improperly functioning elevator pitch trim system and Raytheon knew or should have known that such defects could cause a dangerous and fatal accident.

46.    Raytheon by and through its agents, servants and employees acting in the course and scope of their employment, breached its duties and were negligent by:

    a.    Providing a defective, improperly functioning and/or unairworthy aircraft to the operator of the fatal flight for use in its flight operations;

    b.    Providing a defective AMM with erroneous advice and diagrams;

c. Failing to discover and/or correct the AMM;

d. Failing to discover and/or correct the defects or problems with the aircraft;

e. Failing to warn of the hazards presented to persons at risk from the use of the aircraft;

f. Failing to warn of the hazards presented to persons at risk from the erroneous AMM; and/or

g. Providing erroneous verbal maintenance advice.

47.    Raytheon's negligence was the direct and proximate cause of the crash of flight 9446 and the death of Steven Dean.

48.    The Plaintiff seeks an award of compensatory damages under Massachusetts law for all compensatory damages allowed by law including, but not limited to, damages for:  1) loss of consortium, society, companionship, comfort, guidance, counsel, advice, instruction and for mental anguish 2) loss of decedent's income, future pecuniary benefits, and inheritance; 3) loss of the decedent's services, protection, care, assistance, and physical, intellectual and moral training; 4) decedent's conscious pain and suffering before death; 5) decedent's mental anguish, fear, and terror before impact; and 6) funeral and burial expenses.

WHEREFORE, the Plaintiff, Yisel Dean, Independent Administratrix of the Estate of Steven Dean, deceased, requests that judgment be entered, in her favor, on behalf of herself, the next of kin and the Estate of Steven Dean and against Raytheon in an amount that a jury determines will fully and fairly compensate herself, the next of kin, and the Estate of Steven Dean for all legally compensable losses.

## COUNT II

### (Punitive Damages Claim Against Raytheon)

49.    Plaintiff incorporates by reference all prior allegations.

50.    Raytheon, acted willfully, wantonly and recklessly, with gross negligence and with a conscious disregard for the safety of Steven Dean and others.

51.    As a direct and proximate result of the reckless, wonton and willful conduct by Raytheon, the aircraft crashed on August 26, 2003, resulting in death and other losses and damages.

52.    The Plaintiff seeks an award of punitive damages for the wrongful death of Steven Dean pursuant to Massachusetts General Laws Chapter 229 §2 and §6.

WHEREFORE, the Plaintiff, Yisel Dean, Independent Administratrix of the Estate of Steven Dean, deceased, respectfully prays that judgment be entered on behalf of herself, the next of kin, and the Estate of Steven Dean and against Raytheon for punitive damages to make an example of Raytheon and to deter similar wrongful conduct by others in the future.

## COUNT III

**(Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Purpose Against Raytheon)**

53.    Plaintiff incorporates by reference all prior allegations.

54.    Raytheon by and through its certification process for the aircraft, its sales and leasing documents, and its advertising, expressly warranted that the aircraft and the aircraft maintenance procedures and  manuals including but not limited to the AMM would be safe, accurate, fit for ordinary use, and free of defects.

55.    Raytheon, by and through the sale of the aircraft in question, impliedly warranted to the public generally, and to Steven Dean, that the accident aircraft and the aircraft procedures and manuals including but not limited to the AMM were fit for their ordinary purpose and of fair quality.  Defendant had a duty to provide adequate warnings of the dangers associated with the design of the aircraft and dangers associated with the foreseeable usage and maintenance of the aircraft, of which they knew or should have known.

56.    Raytheon, by and through the sale of the aircraft in question, impliedly warranted to the public generally, and to Steven Dean, that Beech 1900D aircraft and the accident aircraft in particular and the accompanying maintenance procedures and manuals were fit for the particular purpose for which they were intended.

57.    Contrary to these warranties, the accident aircraft and maintenance procedures and manuals were not safe and free of defects and were not fit for their ordinary, intended, particular and foreseeable uses and purposes.  Instead, the aircraft and its component parts, systems, manuals, instructions, and/or warnings were defective and unreasonably dangerous by reason of defective design, manufacture, and/or marketing, the failure of defendants to give adequate and proper warnings of the dangers existing therein and the failure of Raytheon to give adequate instructions regarding the avoidance of such dangers.  The unreasonably dangerous conditions and/or defects include the defective elevator pitch trim system, maintenance manuals, maintenance procedures, and/or the absence of adequate warnings and instructions regarding such conditions.  The defective and unreasonably dangerous conditions exposed Steven Dean, and the public in general, to an unreasonable risk of harm and were the proximate cause of plaintiff's injuries and damages.

58.    Raytheon breached the express and implied warranties in the following ways:

a.    By providing a defective, improperly functioning, and unairworthy aircraft to the operator of the fatal flight for use in its flight operations;

b.    By providing a defective AMM with erroneous advice and diagrams;

c.    By failing to provide warnings regarding the dangers associated with the design of the aircraft and dangers associated with the foreseeable usage and maintenance of the aircraft; and/or

d.    By failing to provide proper instructions and procedures for the safe operation, repair and/or maintenance of the aircraft.

59.    Raytheon knew or should have known that pilots such as Steven Dean would use the aircraft and be subject to an unreasonable risk of injury or death if such express and implied warranties were breached in such a manner.

60.    Steven Dean relied on the express and implied warranties and made use of the aircraft as alleged herein in a reasonable and foreseeable manner and in the manner in which the aircraft was intended.

61.    The crash of the aircraft and the wrongful death of Steven Dean and damage to plaintiff were proximately caused by Raytheon's breach of express warranty and implied warranties of merchantability and fitness.

62.    By reason of the foregoing, said defendant is liable to plaintiff in breach of warranty for the wrongful death, injuries and damages to decedent and decedent's personal property and for the resulting damages sustained by plaintiff.

WHEREFORE, pursuant to Massachusetts General Laws Chapters 106 § 2-313 through § 2-315, and §2-318, the Plaintiff, Yisel Dean, Independent Administratrix of the Estate of Steven Dean, deceased, respectfully prays that judgment be entered on behalf of herself, the next of kin, and the Estate of Steven Dean and against  Raytheon, for breach of express and implied warranty, in an amount that a jury determines will fully and fairly compensate herself, the next of kin, and the Estate of Steven Dean for all legally compensable losses.

## COUNT IV

**(Violation of Mass. Gen. Laws c. 93A, §§2, 9 Unfair or Deceptive Acts and Practices)**

63.    Plaintiff incorporates by reference all prior allegations.

64.    Defendant Raytheon and each of them, individually and collectively committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A, §§2, 9, and particularly, but without limitation:

a.  Unfairly and deceptively drafting, editing, publishing and selling the AMM, also referred to as the Raytheon Electronic Publications Program Maintenance Library for the Beech 1900 ("REPS Manual"), together with many revisions, which revisions were also defective, which were used in and distributed to the operator of the fatal flight, and used to repair the plane subsequently flown by Scott Knabe and Steven Dean;

b.  Knew or should have known that its AMM or REPS Manual was defective, erroneous and misleading in that it contained many errors;

c.  Knew or should have known that the revisions to the erroneous manual were themselves erroneous, defective, and misleading;

d.  Knew or should have known that erroneous manuals and/or erroneous revisions could lead to aviation accidents, injuries and death;

e.  Unfairly and deceptively advising operators and/or mechanics of the fatal flight use of parts which pursuant to the Beech 1900D Airline Illustrated Parts Catalog (IPC) were not to be used in the aircraft at issue herein;

f.  Unfairly and deceptively advising the operators and/or mechanics of the fatal flight to use parts, including but not limited to actuator part numbers 19-526033-6, -7, and/or -9, which the IPC warned cannot be used in the aircraft at issue herein;

g.  Unfairly and deceptively advising the operators and/or mechanics of the fatal flight to use parts other than those approved for use in this aircraft because the actuator parts approved for use in this aircraft, to wit 129-526033-27,-29, were not yet available and providing such advice even though Raytheon bulletin 27-

3032, issued in July 2003, called for mandatory modification of -6 actuators before installation in aircraft and recommended modification of actuators -7 and -9 before installation in aircraft, and did not indicate that unmodified actuators could be used in this aircraft; and/or

h. Unfairly and deceptively advising use of parts requiring modification despite being advised that the operators and/or mechanics of the fatal flight had no authority to modify parts for installation in operational aircraft.

65. Defendant Raytheon's drafting, editing, publishing, selling, placing into the stream of commerce, encouraging and/or requiring reliance thereon, and representing that it contained appropriate maintenance and repair instructions for the Beech 1900, when in fact it was misleading and erroneous and  had been revised many, many times, with revisions to revisions, and Raytheon's instruction to the operator and/or mechanics of the fatal flight to use parts which Raytheon's IPC advised were not to be used in this aircraft, were unfair and deceptive acts which caused injury and death, and were willful and knowing violations of §§2. Defendant Raytheon had actual knowledge its manual and/or revisions were defective, and Raytheon attempted to get by with a cobbled together, erroneous, patchwork manual, and instructions to use parts not approved for this plane because the approved parts were not available.

66. Defendant Raytheon knew or should have known these practices were in violation of sections 2 & 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

67. Defendant used and employed these acts or practices in willful or knowing violations of sections 2 & 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

68.     As a result of the unfair and deceptive conduct of defendant Raytheon, individually and collectively, Steven Dean was a person injured, and killed, by Raytheon's use or employment of the above described deceptive representations, which are methods, acts and/or practices unlawful under §2 of 93 Mass. Gen. Law.  Therefore, the representative of Steven Dean's estate is entitled to bring this action under §9 of 93 Mass. Gen. Law.

69.     Plaintiff is entitled to compensatory damages from defendant for the economic and non-economic damages, and multiple or punitive damages including but not limited to two times the amount of actual damages for Raytheon's willful and knowing violations and/or refusal to grant relief upon demand, all other such relief as the court deems necessary and proper, and attorneys fees and costs to the extent allowed by law.

WHEREFORE, pursuant to Massachusetts General Laws Chapter 93A §§2 & 9, the plaintiff  Yisel Dean, respectfully prays that judgment be entered on behalf of herself, the next of kin, and the Estate of Steven Dean, and against Raytheon for damages and such equitable and other relief as the court deems necessary and proper.

## COUNT V

### (Prejudgment Interest)

70.     Plaintiff incorporates by reference all prior allegations.

71.     Plaintiff claims as an element of wrongful death and survival damages, prejudgment interest at the maximum legal rate as permitted by Massachusetts General Laws Chapter 229, §11, or any other applicable law or statute, to provide full compensation to plaintiff and prevent the unjust enrichment of defendants and each of them.

## COUNT VI

### (Res Ipsa Loquitur)

72.    Plaintiff incorporates by reference all prior allegations herein.

73.    Defendants, and each of them, had exclusive management and control over the manufacture of this aircraft, including exclusive management and control over the accuracy and efficacy of the Airliner Maintenance Manual (AMM) and the associated manuals that contain maintenance and repair instructions and options for the aircraft.

74.    The AMM of this aircraft contained procedures that, when followed, resulted in the aircraft elevator trim moving in the opposite direction of that commanded by the flight crew.

75.    On August 26, 2003, shortly after takeoff in this aircraft, the flight crew selected nose up elevator trim, but instead the aircraft elevator moved to the full nose down position.

76.    The uncommanded movement of the aircraft elevator to a full nose down position, when the flight crew selected a nose up trim is the type or kind of event that would not happen in the ordinary course of things unless there was negligence by the defendants.

77.    The uncommanded movement of the aircraft elevator to a full nose down position caused the aircraft to operate improperly, and caused it to crash, killing Scott A. Knabe and Steven Dean.

78.    The uncommanded movement of the aircraft elevator to a full nose down position when the flight crew selected a nose up trim would not have occurred if defendants, and each of them, had exercised ordinary care in the manufacture and sale or lease of the aircraft, to include insuring the accuracy and efficacy of its AMM, and associated manuals, repair instructions and guidance.

79.    Because of the defendants' exclusive control and management of the aircraft's Airliner Maintenance Manual (AMM) and associated manuals, repair instructions and guidance,

defendants are possessed of superior, if not exclusive access to information concerning the precise cause of the accident and plaintiff asserts the negligence of defendants, as inferred from the general circumstances alleged herein. The fact that the aircraft was repaired with the guidance and direction of Raytheon, and with maintenance manuals and advice which were incorrect, was not due to any action or contribution on the part of the plaintiff's decedent.

### **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, as hereinafter set forth:

1.    For compensatory damages as allowed by law for the wrongful death, survival damages, and conscious pain and suffering of Steven Dean, in an amount according to proof at trial;

2.    For property damage and loss of use of property according to proof;

3.    For punitive damages as allowed by law;

4.    For pre-judgment interest as provided by law;

5.    For costs of suit incurred herein;

6.    For attorneys fees as allowed by law;

7.    That all issues of fact in this matter be determined by a jury; and

8.    For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By: /s/ Jacob T. Elberg
    David A. Bunis, Esq.
    (BBO # 550570)
    Jacob T. Elberg, Esq.
    (BBO # 657469)
    Dwyer & Collora, LLP
    600 Atlantic Ave.
    Boston, MA 02210
    (617) 371-1000

    and

    Mary Schiavo, Esq.
    28 Bridgeside Blvd.
    P.O. Box 1792
    Mount Pleasant, SC 29465
    Ph: (843)216-9374

Mary Schiavo, Esq.
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
Ph:  (843)216-9374

David A. Bunis, Esq. (BBO # 550570)
Jacob T. Elberg, Esq. (BBO # 657469)
Dwyer & Collora, LLP
600 Atlantic Ave.
Boston, MA 02210
(617) 371-1000

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**CONSOLIDATED UNDER
CASE NO. 05-10155 PBS**

The original case number for Plaintiff Weiler was Case No.: 05 CV 10364 PBS

Lisa A. Weiler, Administratrix of the Estate of )
Scott A. Knabe, deceased, and on behalf of all )
statutory beneficiaries, )
                   )
           Plaintiff, )
    vs. )
                   )
Raytheon Company, a Delaware Corporation, )
Raytheon Aircraft Company, a Kansas )
Corporation, Raytheon Aircraft Credit )
Corporation, a Kansas Corporation, Raytheon )
Airline Aviation Services LLC, a Kansas )
Corporation, and Raytheon Aircraft Parts )
Inventory and Distribution Company LLC, a )
Kansas Corporation )
                   )
           Defendants. )
_____ )

**Case No.: 05 CV 10155 PBS**

**PROPOSED SECOND
AMENDED COMPLAINT for
(Wrongful Death, Negligence,
Breach of Express and Implied
Warranty, Gross Negligence,
Unfair or Deceptive Acts and
Practices)**

Yisel Dean, Independent Administratrix of the )
Estate of Steven Dean, deceased, and on behalf )
of all statutory beneficiaries, )
                               )
              Plaintiff, )
      vs. )
                               )
Raytheon Company, a Delaware Corporation, )
Raytheon Aircraft Company, a Kansas )
Corporation, Raytheon Aircraft Credit )
Corporation, a Kansas Corporation, Raytheon )
Airline Aviation Services LLC, a Kansas )
Corporation, and Raytheon Aircraft Parts )
Inventory and Distribution Company LLC, a )
Kansas Corporation )
                 Defendants. )
                               )

The Plaintiff, Lisa A. Weiler, individually and as the Administratrix of the Estate of Scott A. Knabe, deceased, and on behalf of all beneficiaries and next of kin, by and through her attorneys, Motley Rice LLC and Dwyer & Collora, LLP, for cause of action in this complaint alleges on information and belief:

## PARTIES

1.      The Plaintiff, Lisa A. Weiler, at all times relevant herein resides in the state of Ohio, and has been appointed by the Probate Court of Hamilton County, Ohio as Administratrix of the Estate of Scott A. Knabe who died in the crash of US Airways Express flight 9446, on August 26, 2003.

2.      Plaintiff also brings this action on behalf of all beneficiaries including herself and other next of kin.

3.      Defendants are Raytheon Company, Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services LLC, and Raytheon Aircraft Parts Inventory and Distribution Company LLC.  Raytheon Company is a Delaware corporation; Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services LLC, and Raytheon Aircraft Parts Inventory and Distribution Company LLC are wholly

owned subsidiaries of the Raytheon Aircraft Holdings, Inc., and are Kansas corporations with their principal place of business in Wichita, Kansas.

4.      Raytheon Company, Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services, LLC, and Raytheon Aircraft Parts Inventory and Distribution Company LLC are collectively referred to herein as "Raytheon".

## JURISDICTION AND VENUE

5.      The amount in controversy exceeds $75,000 exclusive of interest and costs.

6.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

7.      A substantial part of the acts and omissions giving rise to the claims set forth in this complaint occurred in this judicial district. All defendants are doing business in this judicial district. Therefore, this court has venue pursuant to 28 U.S.C. §1391(a).

8.      The plaintiff claims damages under Massachusetts General Laws Chapter 229 §2 and §6, for the wrongful death and conscious suffering of Scott A. Knabe, for herself, and other next of kin.

9.      Plaintiff claims damages pursuant to Massachusetts General Laws Chapter 106 §2-313 through §2-315 and §2-318 for breach of express and implied warranties.

10.     Plaintiff claims prejudgment interest pursuant to Massachusetts General Laws Chapter 229 §11 and as otherwise allowed by law.

11.     Plaintiff claims damages for unfair and deceptive acts and practices committed in violation of Massachusetts General Laws Chapter 93A §§ 2, 9.

## GENERAL ALLEGATIONS & FACTUAL BACKGROUND

12.     On August 26, 2003, Scott A. Knabe was killed while serving as the Captain of US Airways flight 9446. Steven Dean, the First Officer, was also killed. The plane was a Beech

1900D, registration number N240CJ, ("the aircraft") operated by Colgan Air d/b/a US Airways Express.

13.     The aircraft crashed into the water off the coast of Yarmouth, Massachusetts shortly after takeoff from Barnstable Municipal Airport.

14.     The aircraft was manufactured by the Raytheon Aircraft Company and owned by Raytheon Aircraft Credit Corporation, which leased it to the operator of the aircraft on a seven (7) year lease beginning in January of 2003.

15.     At the time of the crash, the aircraft was owned by and registered to Raytheon Aircraft Credit Corporation.

16.     Raytheon Aircraft Corporation designed and manufactured the Beech 1900D. The model was first certificated in 1991.  The aircraft at issue herein was manufactured in 1993.

17.     Raytheon Airline Aviation Services LLC was incorporated in 2002 and managed Raytheon's commuter aircraft business.

18.     Raytheon Aircraft Parts Inventory and Distribution Company LLC was incorporated in 2003 and provided aircraft parts and maintenance and repair support to operators of Beech 1900D and other Raytheon aircraft.

19.     Raytheon Company, and/or by and through its officers, directors, and employees, generally managed, directed, and had oversight over Raytheon Aircraft Company and Raytheon Aircraft Credit Corporation.

20.     Raytheon Corporation made the decision in or about 2002 to put the Beech 1900D aircraft and support in a separate company called Raytheon Airline Aviation Services LLC, which was set up as a cost center, not a profit center.  Assets, income and/or revenues went to Raytheon Aircraft Credit Corporation, and Raytheon Airline Aviation Services was a cost center with a goal of getting no deeper into debt.

21.    The aircraft was in service with another operator (or operators) before it was returned to Raytheon's possession and subsequently leased for operation by the operator of the fatal flight.

22.    The operator of the aircraft experienced problems, including problems with the trim, on the aircraft at issue herein after receiving the aircraft from Raytheon and before August 26, 2003.

23.    Raytheon provided advice and guidance on the repair of this aircraft.

24.    In addition to designing and manufacturing this aircraft, Raytheon wrote and provided the manufacturer's Airliner Maintenance Manual (AMM) for this aircraft.

25.    On August 23-26, 2003, the accident airplane was in Hyannis, Massachusetts for maintenance, inspection and/or repair.

26.    The mechanics consulted the AMM in making repairs and performing maintenance on this aircraft.

27.    The mechanics consulted Raytheon on or about August 24 or 25, 2003, about the repair of this aircraft.

28.    Immediately prior to the fatal flight, maintenance had been performed on the airplane, which included work on the forward elevator pitch trim tab cable, elevator trim activator and trim drum.

29.    The Airliner Maintenance Manual (AMM) was erroneous, defective, misleading and omitted information, to wit:

    a)  The trim drum was depicted backward;

    b)  Relying on the erroneous drawings, a mechanic could, and did, mis-route the cable around the drum;

    c)  Relying on the erroneous drawings, the trim system could be, and was, reversed;

    d)   The depiction in the AMM showed the nose-up trim tab cable emanating from the aft end of the drum, rather than the forward end;

    e)   The depiction in the AMM showed the nose-down cable emanating from the forward end of the drum, rather than the aft;

    f)   There was no procedure for an operational check in the elevator trim tab cable-maintenance practices chapter, Chapter 27-30-04; and

    g)   There was no referral in Chapter 27-30-04 to Chapter 27-30-09, "Elevator Trim-Maintenance Practices… Elevator Trim Operational Check," which did contain a procedure for an operational check of the elevator trim system.

30.    Scott A. Knabe serving as the Captain, commonly referred to as the pilot or pilot in command, and Steven Dean as the First Officer, commonly referred to as co-pilot, were assigned to fly US Airways flight 9446 on August 26, 2003, after maintenance.

31.    Shortly after takeoff the flight crew reported a problem with the trim.

32.    The flight crew selected a nose up trim, but instead the aircraft elevator traveled to the full nose-down position, and crashed into the water killing Scott A. Knabe and Steven Dean.

33.    As a result of the foregoing, which was a direct and proximate result of the conduct of defendants herein, and each of them, Scott A. Knabe was forced to endure severe mental anguish, fear of impending death, conscious pain and suffering, and ultimately he suffered severe physical injuries that caused his death.

34.    As a direct and proximate result of the acts and omissions of each defendant herein, there was a measurable and significant period of time from the first trauma causing injury to decedent and before the decedent's death such that decedent consciously suffered injuries and damages for a measurable period of time before decedent's death.

35.     As a direct and proximate result of the acts and omissions of each defendant, decedent's personal property was damaged, destroyed and tortiously interfered with, all to the damage of decedent and/or his estate.

36.     As a direct result and proximate result of the act and omissions of each defendant, Scott A. Knabe died and his estate, beneficiaries, heirs and survivors, including but not limited to Lisa A. Weiler, and other immediate next of kin, have been and continue to be deprived of decedent's income, services, support, help and assistance, advice and guidance, and other economic losses.

37.     As a direct and proximate result of the acts and/or omissions of defendants, and each of them, Scott A. Knabe died and his beneficiaries, heirs and survivors have suffered and continue to suffer non-economic damages including but not limited to loss of companionship, comfort, care, love, affection, assistance, presence, protection, society, confidence and guidance, as well as suffering, grief, anguish, bereavement, pain and suffering and emotional trauma.

38.     As a direct and proximate result of the acts and omissions of defendants, and each of them, Scott A. Knabe died and his estate, beneficiaries, heirs and survivors have incurred funeral, burial, travel, and related expenses.

39.     The defendants and each of them owed a duty to plaintiff, and it was reasonably foreseeable that in breaching that duty, serious injury and death could result.  The defendants, and each of them breached that duty and those breaches caused serious harm to plaintiff.

## COUNT I

### (Negligence Claim Against Raytheon)

40.     The Plaintiff incorporates by reference all prior allegations.

41.      Raytheon provided to the operators of this fatal flight an aircraft with an Airliner Maintenance Manual (AMM) prescribing how repairs and maintenance to the Beech 1900D

aircraft should be performed.

42.     The aircraft had a problem with the trim and Raytheon knew or should have known that individuals or entities performing maintenance would rely on the AMM or other Raytheon maintenance advice and illustrations to perform maintenance and repairs on the Beech 1900D aircraft it manufactured.

43.     Raytheon had a duty to provide an aircraft that was fully functional, airworthy and without defects, and Raytheon had a duty to provide accurate, reliable information in the AMM and maintenance advice, enabling the operators of this flight and other owners of its Beech 1900D aircraft or other maintenance personnel to make correct and safe repairs to the aircraft.

44.     Raytheon was advised there was a problem with the trim on the aircraft and knew or should have known that the information in the AMM, specifically Raytheon Maintenance Manual Rev 9, 27-30-04 for the Beech 1900D aircraft was defective and incorrect and that if the instructions in the manual were followed, a dangerous and fatal accident could result.

45.     Raytheon knew or should have known that the accident aircraft was defective upon, or soon after its delivery to, the operators of this fatal flight, due to the defective or improperly functioning elevator pitch trim system and Raytheon knew or should have known that such defects could cause a dangerous and fatal accident.

46.     Raytheon by and through its agents, servants and employees acting in the course and scope of their employment, breached its duties and were negligent by:

    a.  Providing a defective, improperly functioning and/or unairworthy aircraft to the operator of the fatal flight for use in its flight operations;

    b.  Providing a defective AMM with erroneous advice and diagrams;

    c.  Failing to discover and/or correct the AMM;

    d.  Failing to discover and/or correct the defects or problems with the aircraft;

    e.  Failing to warn of the hazards presented to persons at risk from the use of the

aircraft;

f.  Failing to warn of the hazards presented to persons at risk from the erroneous AMM; and/or

g.  Providing erroneous verbal maintenance guidance.

47.    Raytheon's negligence was the direct and proximate cause of the crash of flight 9446 and the death of Scott A. Knabe.

48. The Plaintiff seeks an award of compensatory damages under Massachusetts law for all compensatory damages allowed by law including, but not limited to, damages for:  1) loss of consortium, society, companionship, comfort, guidance, counsel, advice, instruction and for mental anguish 2) loss of decedent's income, future pecuniary benefits, and inheritance; 3) loss of the decedent's services, protection, care, assistance, and physical, intellectual and moral training; 4) decedent's conscious pain and suffering before death; 5) decedent's mental anguish, fear, and terror before impact; and 6) funeral and burial expenses.

WHEREFORE, the Plaintiff, Lisa A. Weiler, Administratrix of the Estate of Scott A. Knabe, deceased, requests that judgment be entered, in her favor, on behalf of herself, the next of kin and the Estate of Scott A. Knabe and against Raytheon in an amount that a jury determines will fully and fairly compensate herself, the next of kin, and the Estate of Scott A. Knabe for all legally compensable losses.

## COUNT II

### (Punitive Damages Claim Against Raytheon)

49.    Plaintiff incorporates by reference all prior allegations.

50.     Raytheon, acted willfully, wantonly and recklessly, with gross negligence and with a conscious disregard for the safety of Scott A. Knabe and others.

51.     As a direct and proximate result of the reckless, wonton and willful conduct by Raytheon, the aircraft crashed on August 26, 2003, resulting in death and other losses and damages.

52.     The Plaintiff seeks an award of punitive damages for the wrongful death of Scott A. Knabe pursuant to Massachusetts General Laws Chapter 229 §2 and §6.

WHEREFORE, the Plaintiff, Lisa A. Weiler, Administratrix of the Estate of Scott A. Knabe, deceased, respectfully prays that judgment be entered on behalf of herself, the next of kin, and the Estate of Scott A. Knabe and against Raytheon for punitive damages to make an example of Raytheon and to deter similar wrongful conduct by others in the future.


## COUNT III

**(Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Purpose Against Raytheon)**

53.     Plaintiff incorporates by reference all prior allegations.

54.     Raytheon by and through its certification process for the aircraft, its sales and leasing documents, and its advertising, expressly warranted that the aircraft and the aircraft maintenance procedures and manuals including but not limited to the AMM would be safe, accurate, fit for ordinary use, and free of defects.

55.     Raytheon, by and through the sale of the aircraft in question, impliedly warranted to the public generally, and to Scott A. Knabe, that the accident aircraft and the aircraft procedures and manuals including but not limited to the AMM were fit for their ordinary purpose and of fair quality.  Defendant had a duty to provide adequate warnings of the dangers associated

with the design of the aircraft and dangers associated with the foreseeable usage and maintenance of the aircraft, of which they knew or should have known.

56.     Raytheon, by and through the sale of the aircraft in question, impliedly warranted to the public generally, and to Scott A. Knabe, that Beech 1900D aircraft and the accident aircraft in particular and the accompanying maintenance procedures and manuals were fit for the particular purpose for which they were intended.

57.     Contrary to these warranties, the accident aircraft and maintenance procedures and manuals were not safe and free of defects and were not fit for their ordinary, intended, particular and foreseeable uses and purposes.  Instead, the aircraft and its component parts, systems, manuals, instructions, and/or warnings were defective and unreasonably dangerous by reason of defective design, manufacture, and/or marketing, the failure of defendants to give adequate and proper warnings of the dangers existing therein and the failure of Raytheon to give adequate instructions regarding the avoidance of such dangers.  The unreasonably dangerous conditions and/or defects include the defective elevator pitch trim system, maintenance manuals, maintenance procedures, and/or the absence of adequate warnings and instructions regarding such conditions.  The defective and unreasonably dangerous conditions exposed Scott A. Knabe, and the public in general, to an unreasonable risk of harm and were the proximate cause of plaintiff's injuries and damages.

58.     Raytheon breached the express and implied warranties in the following ways:

    a.     By providing a defective, improperly functioning, and unairworthy aircraft to the operator of the fatal flight for use in its flight operations;

    b.     By providing a defective AMM with erroneous advice and diagrams;

    c.     By failing to provide warnings regarding the dangers associated with the design of the aircraft and dangers associated with the foreseeable usage and maintenance of the aircraft; and/or

d.   By failing to provide proper instructions and procedures for the safe operation, repair and/or maintenance of the aircraft.

59.     Raytheon knew or should have known that pilots such as Scott A. Knabe would use the aircraft and be subject to an unreasonable risk of injury or death if such express and implied warranties were breached in such a manner.

60.     Scott A. Knabe relied on the express and implied warranties and made use of the aircraft as alleged herein in a reasonable and foreseeable manner and in the manner in which the aircraft was intended.

61.     The crash of the aircraft and the wrongful death of Scott A. Knabe and damage to plaintiff were proximately caused by Raytheon's breach of express warranty and implied warranties of merchantability and fitness.

62.     By reason of the foregoing, said defendant is liable to plaintiff in breach of warranty for the wrongful death, injuries and damages to decedent and decedent's personal property and for the resulting damages sustained by plaintiff.

WHEREFORE, pursuant to Massachusetts General Laws Chapters 106 § 2-313 through § 2-315, and §2-318, the Plaintiff, Lisa Weiler,  Administratrix of the Estate of Scott A. Knabe, deceased, respectfully prays that judgment be entered on behalf of herself, the next of kin, and the Estate of Scott A. Knabe and against  Raytheon, for breach of express and implied warranty, in an amount that a jury determines will fully and fairly compensate herself, the next of kin, and the Estate of Scott A. Knabe for all legally compensable losses.

## COUNT IV

**(Violation of Mass. Gen. Laws c. 93A, §§2, 9 Unfair or Deceptive Acts and Practices)**

63.     Plaintiff incorporates by reference all prior allegations.

12

64.     Defendant Raytheon and each of them, individually and collectively committed unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A, §§2, 9, and particularly, but without limitation:

a.   Unfairly and deceptively drafting, editing, publishing and selling the AMM, also referred to as the Raytheon Electronic Publications Program Maintenance Library for the Beech 1900 ("REPS Manual"), together with many revisions, which revisions were also defective, which were used in and distributed to the operators and/or mechanics of the fatal flight, and used to repair the plane subsequently flown by Scott Knabe and Steven Dean;

b.   Knew or should have known that its AMM or REPS Manual was defective, erroneous and misleading in that it contained many errors;

c.   Knew or should have known that the revisions to the erroneous manual were themselves erroneous, defective, and misleading;

d.   Knew or should have known that erroneous manuals and/or erroneous revisions could lead to aviation accidents, injuries and death;

e.   Unfairly and deceptively advising operators and/or mechanics of the fatal flight use of parts which pursuant to the Beech 1900D Airline Illustrated Parts Catalogue (IPC) were not to be used in the aircraft at issue herein;

f.   Unfairly and deceptively advising the operators and/or mechanics of the fatal flight to use parts, including but not limited to actuator part numbers 19-526033-6, -7, and/or -9, which the IPC warned cannot be used in the aircraft at issue herein;

g.  Unfairly and deceptively advising the operators and/or mechanics of the fatal flight to use parts other than those approved for use in this aircraft because the actuator parts approved for use in this aircraft, to wit 129-526033-27, -29, were not yet available, and providing such advice, even though Raytheon bulletin 27-3032, issued in July 2003, called for a mandatory modification of -6 actuators before installation in aircraft and recommended modification of actuators -7 and -9 before installation in aircraft, and did not indicate that unmodified actuators could be used in this aircraft; and/or

h.  Unfairly and deceptively advising use of parts requiring modification despite being advised that the operators and/or mechanics of the fatal flight had no authority to modify parts for installation in operational aircraft.

65.  Defendant Raytheon's drafting, editing, publishing, selling, placing into stream of commerce, encouraging and/or requiring reliance thereon, and representing that it contained appropriate maintenance and repair instructions for the Beech 1900, when in fact it was misleading and erroneous and it had been revised many, many times, with revisions to revisions, and Raytheon's instruction to the operators and/or mechanics of the fatal flight to use parts which Raytheon's IPC advised were not to be used in this aircraft, were unfair and deceptive acts which caused injury and death, and were willful and knowing violations of §§2.  Defendant Raytheon had actual knowledge its manual and/or revisions were defective, and Raytheon attempted to get by with a cobbled together, erroneous, patchwork manual, and instructions to use parts not approved for this plane because the approved parts were not available.

66.  Defendant Raytheon knew or should have known these practices were in violation of sections 2 & 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

67.     Defendant used and employed these acts or practices in willful or knowing violations of sections 2 & 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

68.     As a result of the unfair and deceptive conduct of defendant Raytheon, individually and collectively, Scott A. Knabe was a person injured, and killed, by Raytheon's use or employment of the above described deceptive representations, which are methods, acts and/or practices unlawful under §2 of 93 Mass. Gen. Law.  Therefore, the representative of Scott A. Knabe's estate is entitled to bring this action under §9 of 93 Mass. Gen. Law.

69.     Plaintiff is entitled to compensatory damages from defendant for the economic and non-economic damages, and multiple or punitive damages including but not limited to two times the amount of actual damages for Raytheon's willful and knowing violations and/or refusal to grant relief upon demand, all other such relief as the court deems necessary and proper, and attorneys fees and costs to the extent allowed by law.

WHEREFORE, pursuant to Massachusetts General Laws Chapter 93A §§2 & 9, the plaintiff  Lisa A. Weiler, respectfully prays that judgment be entered on behalf of herself, the next of kin, and the Estate of Steven Dean, and against Raytheon for damages and such equitable and other relief as the court deems necessary and proper.

## COUNT V

### (Prejudgment Interest)

70.     Plaintiff incorporates by reference all prior allegations.

71.     Plaintiff claims as an element of wrongful death and survival damages, prejudgment interest at the maximum legal rate as permitted by Massachusetts General Laws

Chapter 229, §11, or any other applicable law or statute, to provide full compensation to plaintiff and prevent the unjust enrichment of defendants and each of them.

## COUNT VI

### (Res Ipsa Loquitur)

72.    Plaintiff incorporates by reference all prior allegations herein.

73.    Defendants, and each of them, had exclusive management and control over the manufacture of this aircraft, including exclusive management and control over the accuracy and efficacy of the Airliner Maintenance Manual (AMM) and the associated manuals that contain maintenance and repair instructions and options for the aircraft.

74.     The AMM of this aircraft contained procedures that, when followed, resulted in the aircraft elevator trim moving in the opposite direction of that commanded by the flight crew.

75.    On August 26, 2003, shortly after takeoff in this aircraft, the flight crew selected nose up elevator trim, but instead the aircraft elevator moved to the full nose down position.

76.    The uncommanded movement of the aircraft elevator to a full nose down position, when the flight crew selected a nose up trim is the type or kind of event that would not happen in the ordinary course of things unless there was negligence by the defendants.

77.    The uncommanded movement of the aircraft elevator to a full nose down position caused the aircraft to operate improperly, and caused it to crash, killing Scott A. Knabe and Steven Dean.

78.    The uncommanded movement of the aircraft elevator to a full nose down position when the flight crew selected a nose up trim would not have occurred if defendants, and each of them, had exercised ordinary care in the manufacture and sale or lease of the aircraft, to include insuring the accuracy and efficacy of its AMM, and associated manuals, repair instructions and guidance.

79.     Because of the defendants' exclusive control and management of the aircraft's Airliner Maintenance Manual (AMM) and associated manuals, repair instructions and guidance, defendants are possessed of superior, if not exclusive access to information concerning the precise cause of the accident and plaintiff asserts the negligence of defendants, as inferred from the general circumstances alleged herein.   The fact that the aircraft was repaired with the guidance and direction of Raytheon, and with maintenance manuals and advice which were incorrect, was not due to any action or contribution on the part of the plaintiff's decedent.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, as hereinafter set forth:

1.     For compensatory damages as allowed by law for the wrongful death, survival damages, and conscious pain and suffering of Scott A. Knabe, in an amount according to proof at trial;

2.     For property damage and loss of use of property according to proof;

3.     For punitive damages as allowed by law;

4.     For pre-judgment interest as provided by law;

5.     For costs of suit incurred herein;

6.     For attorneys fees as allowed by law;

7.     That all issues of fact in this matter be determined by a jury; and

8.      For such other and further relief as the Court may deem just and proper.

Respectfully submitted,


By: /s/ Jacob T. Elberg
     David A. Bunis, Esq.
     (BBO # 550570)
     Jacob T. Elberg, Esq.
     (BBO # 657469)
     Dwyer & Collora, LLP
     600 Atlantic Ave.
     Boston, MA 02210
     (617) 371-1000

     and

     Mary Schiavo, Esq.
     28 Bridgeside Blvd.
     P.O. Box 1792
     Mount Pleasant, SC 29465
     Ph:  (843)216-9374