UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CONSOLIDATED UNDER
CASE NO. 05-10155 PBS

| | |
|---|---|
| YISEL DEAN, Independent Administratrix of the Estate of STEVEN DEAN, deceased, and on behalf of all statutory beneficiaries, <br>       Plaintiff, <br><br> v. <br><br> RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT HOLDINGS, INC. a Delaware Corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, COLGAN AIR, INC., a Virginia Corporation d/b/a US Air Express, <br>       Defendants. | DOCKET NO: 05cv10155 PBS |
| LISA A. WEILER, Administratrix of the Estate of SCOTT A. KNABE, deceased, and on behalf of all statutory beneficiaries, <br>       Plaintiff, <br><br> v. <br><br> RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT HOLDINGS, INC. a Delaware Corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, COLGAN AIR, INC., a Virginia Corporation d/b/a US Air Express, <br>       Defendants. | DOCKET NO: 05cv10364 PBS |

**OPPOSITION OF DEFENDANTS RAYTHEON COMPANY, RAYTHEON AIRCRAFT
HOLDINGS, INC., RAYTHEON AIRCRAFT COMPANY, AND RAYTHEON
AIRCRAFT CREDIT CORPORATION TO PLAINTIFFS'
MOTION TO AMEND COMPLAINTS**

NOW COME the defendants, Raytheon Company, Raytheon Aircraft Holdings, Inc.,

Raytheon Aircraft Company, and Raytheon Aircraft Credit Corporation ("Raytheon" or

"defendants"), and hereby oppose plaintiffs, Yisel Dean and Lisa Weiler, et al.'s Motion for

1

Leave to File Their Third and Second Amended Complaints.  As grounds for this motion, defendants state that plaintiffs' motion to leave must be denied as (i) plaintiffs have no valid justification or the required "good cause" for waiting until the eleventh hour to amend for a second and third time, their complaints to add additional parties and (ii) significant portions of the proposed amended complaints set forth claims that are futile.  Plaintiff's motion to amend must be denied or, in the alternative, appropriate dismissal orders entered as to the futile claims of plaintiffs' proposed claims.

## ARGUMENT

### I.   The Standard

In general, "a party may amend the party's pleading only by leave of court and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15.  Leave to amend is to be denied, however, if the claims in the amended complaint are futile, would reward undue delay or otherwise result in prejudice.  Resolution Trust Corp. v. Gold, 30 F. 3d 251, 253 (1st Cir. 1994); see also Forman v. Davis, 371 U.S. 178, 182, 9 L.Ed. 2d 222, 83 S. Ct. 227 (1962).  A proposed amendment is futile if it fails to state a cognizable claim.  See Correa-Martinez v. Arrillago-Belendez, 903 F. 2d 49, 59 (1st. Cir. 1990)("where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters").

Where, as here, however, a motion to amend is filed after scheduling order deadlines, Rule 16(b) of the Fed. R.Civ.P. applies and requires that any such motion be supported by "good cause."  See O'Connell v. Hyatt Hotels, 357 F.3d 152, 153-54 (1st Cir. 2004) and cases cited; Riofrio Anda v. Ralstan Purina Co., 959 F.2d 1149, 1154-55 (1st Cir. 1992); Berwind Property Group Inc. v. Environmental Management Group, 233 F.R.D. 62, 67 (D. Mass. 2005)(Gorton, J.).  Rule 16(b)'s good cause standard, in turn, centers on the justification for the delay and "the

2

diligence of the party seeking the amendment." O'Connell, 357 F.3d at 152-54; Rosario-Diaz v. Gonzalez, 140 F.3d. 312, 315 (1st Cir. 1998). According to the First Circuit, "[p]rejudice to the opposing party remains relevant but is not the dominant criteria" and "[i]ndifference by the moving party 'seals off this avenue of relief' irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause." Id. at 152-53 citing Rosario-Diaz, 140 F.3d at 315.

## II.    Plaintiffs' Motion To Amend Must Be Denied As There is No Good Cause For The Substantial Delay In Seeking To Add Two Additional Parties

Plaintiffs' belated eleventh hour motion to amend to add Raytheon Aircraft Parts and Inventory Distribution LLC ("RAPID") and Raytheon Airline Aviation Services, LLC ("RAAS") as additional defendants must be denied as plaintiffs have not and cannot proffer any "good cause" for the substantial delay in seeking the amendment. See generally, O'Connell, 357 F.3d at 152-54.

The underlying aircraft incident took place on August 26, 2003. Plaintiffs filed their original complaints on January 27, 2005 and February 24, 2005 respectively. Plaintiff Dean amended its complaint on May 25, 2005 with both plaintiffs further amending their complaints on June 15, 2005 which were answered on July 18 and July 21, 2005, respectively. See Docket Sheet (**Exh. A**).

A Rule 16(b) conference was held in the Weiler action on September 28, 2005. In the joint scheduling statement submitted to the court, the parties agreed to a deadline of January 30, 2006 for all fact discovery and a deadline of **December 2, 2005 for the "Joinder of Additional Parties and/or Amendment of Pleadings**."[1] (**Exh. B**). The Court subsequently set a discovery

---

[1] The parties disagreed over the scheduling of expert disclosures and dispositive motion deadlines and each submitted separate proposals.

deadline of January 30, 2006, an expert disclosure deadline of May 30, 2006, a summary judgment submission deadline of July 15, 2006, and a trial date of September 18, 2006. (**Exh. C**).

Both cases were consolidated in September, 2005.  Subsequent joint motions as to scheduling were filed on March 10, 2006 and July 11, 2006 in which the discovery deadline was extended from January 30, 2006 to May 24, 2006 and then to June 30, 2006 by agreement. (**Exh. D**).  By virtue of the Court's July, 13, 2006 and last issued scheduling order, the summary judgment submission deadline is October 18, 2006 with a hearing date on December 15, 2006 and a trial date of February 26, 2007.  Notably, in neither of plaintiffs' two joint motions to amend the scheduling order did they seek to amend the previously agreed upon date of December 2, 2005 for any amendments to pleadings or to add additional parties set forth in their initial Rule 16(b) motion and joint submission to the court.

Plaintiffs' Motion for Leave to Amend to add RAAS and RAPID as additional defendants comes twenty-one (21) months after the filing of the original complaints and ten (10) months after the December 2, 2005 deadline for joinder of additional parties and amendment of pleadings agreed to and submitted to the court as part of the Rule 16(b) conference.  Indeed, the setting and/or agreeing to a deadline for the amending of pleadings and the adding of parties is standard which purpose is to "assure 'that at some point both the parties and the pleadings will be fixed.'" O'Connell, 357 F. 3d at 153-154 *citing* Advisory Committee Notes to the 1983 Amendment to Fed. R. Civ. P. 16(b).  At no time did plaintiffs request or seek to modify that deadline.  Moreover, the request for leave to amend comes well after the date set for completion of fact discovery, after expert disclosures, and shortly before the date of summary judgment submission.  Indeed, the amendments are being sought only four (4) months before trial.

As set forth above, the reasons for the failure to meet the agreed to deadline and diligence (or lack thereof) are the linch-pin in addressing a request to amend after a scheduling order is in place. See O'Connell, 357 F. 3d at 154-55; Berwind, 233 F.R.D. at 66. Plaintiffs' motion sets forth no valid justification or "good cause" for the delay or for the failure to abide by their own agreed to deadline for amending pleadings and adding parties. Plaintiffs never sought to enlarge this deadline that has long since past.

Plaintiffs were likewise plainly not diligent in seeking the amendments. Not only does the request to add additional parties occur 21 months after the filing of the original complaints but 10 months after the agreed to deadline for adding additional parties and amending pleadings. See Berwind, 233 F.R.D. at 66 citing Grant v. News Group, 55 F. 3d 1, 16 (1st Cir. 1995)(affirming denial of motion to amend submitted 14 months after filing of initial complaint and after close of discovery); Stepanischen v. Merchants Despatch Transp. Corp., 722 F. 2d 922, 933 (1st Cir. 1983)(finding 17 month delay between initiation of action and filing motion to amend served 10 days prior to the close of discovery undue and dilatory). Further, plaintiffs cannot possibly claim they were not aware of either RAAS or RAPID. Discovery, including discovery in the earlier Virginia action in which plaintiffs' counsel participated, clearly revealed the existence of both RAAS and RAPID. See O'Connell, 357 F. 3d at 153-154 citing Sousa v. Airprint Sys. Inc., 133 F. 3d 1417, 1419 (11th Cir. 1998)(amendment denied where information was readily available to claimant). Plaintiffs' own initial disclosures to the court back in October, 2005 citing to witnesses and documents pertaining to both RAAS and RAPID demonstrate the available information and plaintiffs own knowledge. Indeed, depositions dating back to over a year ago fully identified these entities. (**Exh. E**). Neither RAAS nor RAPID were remotely hidden or unknown entities and plaintiffs have no valid justification or good cause for

the substantial and prejudicial delay in now seeking to add these additional entities as parties at this late stage. The motion for leave must be denied.

### III.    Substantial Portions Of Plaintiffs' Proposed Amended Complaints Are Futile

An additional and independent reason requiring the denial of plaintiffs' motion for leave to amend is that a substantial portion of the proposed amended complaints set forth claims that are futile. As more fully set forth below, many aspects of plaintiffs' proposed amended complaints fail to state cognizable claims under Massachusetts law.[2] Importantly, defendants had intended and still do intend to address all of plaintiffs substantive claims and claims for damages in a motion for summary judgment which is currently due to be filed on October 18, 2006. However, given plaintiffs' recent amendment request, some of the arguments as to certain claims are raised here in an effort to have dismissed certain and obvious infirmities in the proposed complaints. This is an effort to limit and narrow the claims and issues for the court at this belated pleading stage. Defendants specifically reserve the right to address all claims at summary judgment on a complete record in the event this court should allow plaintiffs' pending motion to amend and specifically reserves their right to do so.

---

[2] As this is a diversity action, the law of the forum state including its conflict of law rules applies. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Borden v. Paul Revere Life Ins. Co., 935 F. 2d 370, 375 (1st. Cir. 1991). Not only has this Court already found that Massachusetts law applies (see Memorandum and Order of November 16, 2005-Saris, J.) but plaintiffs have specifically alleged claims of negligence, wrongful death, breach of warranty and violation of G.L. c. 93A under Massachusetts law. See Plaintiffs' Proposed Second and Third Amended Complaints. Indeed, the contacts and interests of Massachusetts are substantial including the fact that Massachusetts was the location of plaintiffs' employers, the Colgan mechanics' base of operations, the plaintiffs' base of operations at the time of the incident, the alleged wrongful conduct of maintenance and repair, the use of the allegedly faulty manual, the aircraft crash, and the airport from which the aircraft departed on the day of the incident among others. Massachusetts law applies.

6

(a)   *Plaintiffs' Requested Amendment Seeking to Add RAPID As
      A New Party Must Be Denied As There Is No Cognizable
      Claim*

Plaintiffs' request for leave to add RAPID as a new party must be denied not only because plaintiffs lack good cause for the substantial delay but as there can be no claim against RAPID as a matter law and undisputed fact and as adding RAPID at this late stage is prejudicial.

In their motion, plaintiffs' sole basis for seeking to add RAPID as an additional defendant is the assertion that based on the deposition of Mr. Michael Scheidt, a Raytheon employee, RAPID was "the entity charged with maintaining an adequate parts inventory to support the parent fleet of the accident aircraft." Plaintiffs' Motion for Leave at 3. No other explanation or basis is provided. Having articulated no valid explanation or justification to add RAPID as a defendant, the plaintiffs' motion must be denied.

RAPID is a parts distributor for Raytheon aircraft parts. (**Exh. E**). While a subsidiary of Raytheon Aircraft Company, RAPID is a separate entity which had no role in the drafting, revision, editing or publishing of the Airlines Maintenance Manual ("AMM") which is the centerpiece to plaintiffs' claims.[3] This is undisputed and there is no contrary allegation anywhere in plaintiffs' proposed amended complaints or motion for leave.

The only reference in plaintiffs' proposed amended complaints to any aircraft parts is in their purported G.L. c. 93A count. There, they allege, as to all the Raytheon defendants, that the Colgan mechanics who repaired and replaced the trim to the aircraft prior to the accident were

---

[3] The allegations set forth in plaintiffs' complaints are that Raytheon's Airliner Maintenance Manual (AMM) was "erroneous, defective, misleading and omitted [certain] information." They claim that Colgan mechanics relied on "erroneous drawings" in the AMM causing them to "mis-route" the trim cable during Colgan's repairs of the aircraft and the AMM's chapter on elevator trim tab cable-maintenance practices did not have a procedure for an operational check. See Dean Proposed Complaints at 29 (a)-(g). They also claim that Raytheon "provid[ed] erroneous verbal maintenance advice." Id. at 46(g). They claim theses "actions or omissions" resulted in the death of plaintiffs' decedents. Based on these allegations, plaintiffs' alleged claims for wrongful death under M.G.L. c. 229, §2 based on negligence and gross negligence. They also include claims for breach of warranty under G.L. c. 106, §2-313, §2-315, and §2-318 as well as G.L. c. 93A.

advised to use actuator parts which were not approved for use in the aircraft and purportedly did so because the proper actuator part was not yet available.  See e.g., Dean Proposed Second Amended Complaint.  There is and can be no cognizable claim against RAPID.

First, Plaintiffs do not and cannot allege that any employee of RAPID advised the Colgan mechanics to use actuator parts not approved for the aircraft. Second, there is no allegation – nor can there be based on the undisputed facts – that any purported advice as to the actuator parts caused the accident.  The undisputed facts established from discovery are as follows:

- Colgan mechanics during a check of the aircraft determined that the left and right elevator trim actuators required replacement.

- Colgan installed certain actuators it had on hand.

- During a subsequent operational check the trim cable came off the trim drum and kinked.

- Colgan therefore ordered a new trim cable and Colgan received and installed both the new trim cable and new actuators, replacing the actuators it had installed.

Accordingly, even assuming that there is a fact question over whether Colgan was told by any agent or employee of Raytheon that it could use the actuators it had on hand (which it was not), and that those actuators could not be used on the aircraft, Colgan subsequently replaced these actuators and ordered, received and installed different and proper actuators prior to the accident.  Accordingly, plaintiffs have no viable claim relative to the actuators as the correct and proper actuators were ordered, supplied and installed.  Plaintiffs should not be permitted to seek to add new parties, especially at this late stage, to assert a claim where it has no basis given the undisputed evidence.  Any claims against RAPID are thus futile, necessitating that plaintiffs' motion be denied.

Allowing the plaintiffs to amend their complaint yet again at this late stage and to add RAPID as an additional defendant would result in substantial prejudice.  The gravamen of

8

plaintiffs' action is and always has been as to the AMM and the proper defendants as to this claim are before the court. Even now plaintiffs have not set forth any specific claim against RAPID as to any aircraft parts opting instead to lump their general allegations against all of the defendants together. Plaintiffs have not articulated a viable theory of liability or set forth factual allegations in their proposed amended complaints regarding any liability of RAPID for the accident. Further, RAPID will be severely prejudiced given that discovery is closed, expert disclosures and counter-disclosures made, summary judgment submissions are due on October 18, 2006, and a trial date set for February, 2007. RAPID has no opportunity to investigate or determine the scope and details of any specific allegations that could possibly pertain to RAPID or to seek summary judgment based on a complete record. Plaintiffs' motion for leave must be denied.

> (b)    *Plaintiffs' Claims For Pre-Impact Conscious Pain*
> *Suffering Is Barred Under Established Massachusetts Law.*

In their respective and proposed amended complaints, plaintiffs allege claims for and/or seek damages for the decedent's conscious pain and suffering prior to death. Plaintiffs allege they are entitled to damages for the decedent's "fear of impending death" and/or "decedent's conscious pain and suffering before death." As set forth below, Massachusetts has expressly rejected such claims rendering plaintiffs' Amended Complaints as to these claims futile.

The leading and controlling case in Massachusetts is Gage v. City of Westfield, 26 Mass. App. Ct. 681, *review denied*, 404 Mass. 1103 (1989). Gage involved wrongful death and conscious pain and suffering claims brought on behalf of two teenagers who were struck and killed by a train. The Appeals Court expressly rejected the plaintiffs' contention that the decedents could recover for pre-impact conscious pain and suffering. According to the Appeals Court – which holding is binding upon this Court:

9

It is not at all uncommon for victims of sudden fatal accidents to experience momentary fright prior to impact such as the plaintiffs' decedents experience. **Yet, the relevant period for purposes of measuring compensation for conscious pain and suffering has consistently been defined in our appellate decisions commencing with the impact of fatal injury. Assuming that limitation to have been intentional we hesitate to extend the right to recover for conscious pain and suffering to pre-impact fear.**

26 Mass. App. Ct. at 696 (emphasis added). A request for further appellate review from the

Supreme Judicial Court was denied rendering the holding in <u>Gage</u> controlling Massachusetts

law. <u>Gage</u> has not been overturned and establishes that plaintiffs' claims for pre-impact

conscious pain and suffering are not cognizable rendering such claim futile under plaintiffs

proposed Second and Third Amended Complaints. Accordingly, to the extent plaintiffs'

proposed complaints allege claims for pre-impact conscious pain and suffering, such claims are

futile and their motion for leave must be DENIED as to these claims.[4]

      c.     *Plaintiffs Cannot Recover For "Grief, Anguish, Bereavement And Emotional Trauma" As A Matter Of Law.*

The available damages for the beneficiaries under the Massachusetts wrongful death

statute are well-established. Such damages include "fair monetary value of the decedent … loss

of the reasonably expected net income, services, protection, care, assistance, society,

companionship, comfort, guidance, counsel and advice of the decedent" as well as "funeral and

burial expenses." G.L. c. 229, §2.

In their proposed complaints, plaintiffs seek recovery for "grief", "anguish",

"bereavement" and "emotional trauma." These claims and damages are expressly not

recoverable under Massachusetts law. See <u>MacCuish v. Volkswagenwerk A.G.</u>, 22 Mass. App.

---

[4] Indeed, the Massachusetts Wrongful Death statute specifically provides that "damages may be recovered for conscious pain and suffering <u>resulting from the same injury</u>…" G.L. c. 229, §. 6 (emphasis added). By expressly linking damages for conscious pain and suffering to that "resulting from the same injury," the statute does not allow for pre- impact conscious pain and suffering but only that resulting and existing after the injury or impact.

1186028v1

Ct. 380, 293-98 (1986), *aff'd*, 400 Mass. 1003 (1987); <u>Mitchell v. United States</u>, 141 F.3d 8, 21

(1st Cir. 1998); <u>see</u> <u>also</u> <u>DaSilva v. American Brands, Inc.</u>, 845 F.2d 356, 362 (1st Cir. 1988)

(wrongful death action in Massachusetts does <u>not</u> permit recovery for "grief, anguish, [or]

bereavement of the survivors"); <u>Laaperi v. Sears, Roebuck & Co., Inc.</u>, 787 F.2d 726 (1st Cir.

1986) (jury not permitted to award compensation for grief and mental suffering).  <u>See</u> <u>also</u>

<u>Santuna v. Registrars of Voters</u>, 398 Mass. 862, 867 (1986) ("a person cannot recover for

negligently caused emotional distress absent physical injuries").

Accordingly, to the extent plaintiffs' proposed amended complaints seek such damages,

they are futile mandating the denial of the motion for leave or dismissal of those claims.

                d.       *Plaintiffs' Claim for Res Ipsa Loquitor Fails as a Matter of Law.*

In Counts VI of Plaintiffs' Proposed Amended Complaints, plaintiffs assert a "claim" for

res ipsa loquitor.  The proposed amended complaints as to these "claims" are futile mandating

the denial of the plaintiffs' motion to leave to amend and/or dismissal as to these counts.

Res ipsa loquitor or "the thing speaks for itself" is not a cause of action or claim but a

"rule of circumstantial evidence." Alperin & Shubow. Summary of Basic Law Massachusetts

Practice, § 20.224, p. 166 (West 1996); <u>see</u> <u>also</u> <u>Shaw v. Pimental</u>, 2000 Mass. Super LEXIS 309

(Giles, J.)(motion to amend complaint to add "claim" of res ipsa loquitor denied as "the term res

ipsa loquitor mean[s] circumstantial proof of negligence and is not a cause of action").  It allows,

in certain limited circumstances, for a claimant to obtain a jury instruction informing the jury that

that they "may" infer from the accident or occurrence itself that the alleged injuries were caused

by the defendant's negligence. Id. at 167 citing <u>Roscigno v. Colonial Beacon Oil Co.</u>, 294 Mass.

234 (1936); <u>Garrett v. M. McDonough Co.</u>, 297 Mass. 58 (1937); <u>Ginsberg v. Metropolitan</u>

<u>Bottling Co.</u>, 333 Mass. 514 (1956).  Res ipsa loquitor thus operates where there is no direct

evidence of specific acts of negligence by the defendant. As such, the doctrine, if applicable, "is merely a method of indirect proof of negligence." Alperin & Shubow, *supra*, at 166 citing Prosser & Keeton, Law of Torts, 5th Ed. (West Pub. Co., 1984), s. 40; <u>Wilson v. Colonial Air Transport, Inc.</u>, 278 Mass. 420, 425 (1932)(res ipsa is doctrine of "evidence ...not ... substance"); <u>see also</u> <u>Lamkin v. Braniff Airlines, Inc.</u>, 853 F. Supp. 30, 33 (D. Mass. 1994)(holding that plaintiffs reliance on res ipsa loquitor did not save negligence claim from summary judgment); <u>Enrich v. Windmere Corp.</u>, 416 Mass. 83, (1993)(*res ipsa loquitor* doctrine did not save plaintiffs lack of proof as to negligence of defendant); <u>Makuc v. American Honda Co., Inc.</u>, 835 F. 2d 389, (1st Cir. 1987)(*res ipsa* instruction properly excluded at trial). Accordingly, plaintiffs cannot and do not have a "cause of action," count or claim for "*res ipsa loquitor*" rendering Court IV of the proposed complaints futile. <u>See</u> <u>Shaw</u>, 2000 Mass. Super Lexis 309

Further, plaintiffs' cannot invoke the circumstantial evidence rule of *res ipsa loquitor* because they cannot, by their own evidence and admission, establish the conditions necessary for its application. Specifically, for the doctrine to apply the plaintiff must establish that the act or occurrence which caused the injury must be one which ordinarily does not happen in the absence of someone's negligence; that the injury was caused by an agency or instrumentality within the exclusive control of the defendant; and that the injury was not the result of any cause for which the defendant was not responsible. Shubow & Alperin, *supra*, at 166; <u>see</u> <u>McNamara v. Boston & Maine Railroad</u>, 202 Mass 491 (1909); <u>Wilson v. Honeywell</u>, 409 Mass. 803, 806 (1991); <u>Boston & Maine Railroad v. Jesionowski</u>, 154 F. 2d 703 (1st. Cir. 1946); <u>Enrich v. Windmere Corp.</u>, 416 Mass. 83 (1993).

Here, even assuming that it could be found that the accident could only result due to negligence, it is undisputed that the aircraft was not in the exclusive control of the defendants.

There is and can be no dispute the plaintiff decedents, the two pilots of the aircraft, were in sole control of the aircraft at the time of the accident. To the extent plaintiffs are claiming that Raytheon had exclusive control of the AMM (i.e. manual), there was also no exclusive control as the manual (as well as the aircraft) were in the hands of the mechanics and pilots.

Further, plaintiffs own evidence and allegations preclude any finding that there were no other possible responsible causes except for the defendants. Indeed, plaintiffs' have previously asserted claims against a third party, Colgan Air, Inc. ("Colgan"), claiming Colgan was negligent and responsible for the incident. In fact, plaintiffs alleged that Colgan, through its mechanics, were not just negligent but "grossly negligent" in the maintenance and repair of the aircraft and, in particular, the repair and maintenance of the forward elevator pitch trim tab cable, elevator trim activator and trim drum. According to plaintiffs, "Colgan breached its duty [to plaintiffs] by requiring [them] to fly an aircraft that was defective, unreasonably dangerous, improperly maintained; improperly repaired, unairworthy, and/or used procedure and parts not approved for use in this aircraft." Dean Second Amended Complaint dated June 20, 2005 Count V, p.88.[5] Most recently, plaintiffs' liability expert expressly testified that the mechanic's failures caused the accident. Excerpts of Deposition of John Goglia (**Exh. F**). Plaintiffs expert also noted critical failures of the plaintiff pilots. Id. As there is abundant and material evidence of other possible causes, there can be no reliance or invocation of the res ipsa loquitor doctrine.

Finally, the doctrine of res ipsa loquitor has no application as the doctrine has no applicability where the claimant is asserting specific acts of negligence. Here, plaintiffs have alleged specific acts of negligence (both as to Colgan and to the Raytheon defendants) centering on Raytheon's AMM and Colgan's repair and maintenance rendering res ipsa loquitor

---

[5] Colgan filed a motion to dismiss on grounds that the claim was barred by the Massachusetts Worker's Compensation Act. Notably, in Dean's opposition, it was asserted that Colgan used improper and unapproved parts, performed unauthorized repairs, and "violated myriad federal aviation laws."

1186028v1

inapplicable as a matter of law. Res ipsa loquitor only operates where there is no direct evidence of specific acts of negligence of the defendant. Shubow & Alperin, *supra*, at 166.

Accordingly, the doctrine of res ipsa loquitor has no applicability to the facts of this case providing a further basis for denying the Proposed Amended Complaint as to Count V.

### <u>CONCLUSION</u>

The defendants, Raytheon Company, Raytheon Aircraft Holdings, Inc., Raytheon Aircraft Company, and Raytheon Aircraft Credit Corporation, request that this Honorable Court deny Plaintiffs' Motion for Leave to File their Third and Second Amended Complaints.

> Raytheon Defendants,
> RAYTHEON COMPANY, RAYTHEON
> AIRCRAFT HOLDINGS, INC., RAYTHEON
> AIRCRAFT COMPANY, and RAYTHEON
> AIRCRAFT CREDIT CORPORATION
> By Counsel,
>
> /s/ Tory A. Weigand
>
> _____
> Peter C. Knight, BBO # 276000
> Tory A. Weigand, BBO #548553
> MORRISON MAHONEY LLP
> 250 Summer Street
> Boston, MA 02210
> Phone: 617-439-7500
>
>    -AND-
>
> William L. Oliver, Jr. Esquire
> Michael G. Jones, Esquire
> MARTIN, PRINGLE, OLIVER, WALLACE
>  & BAUER, L.L.P.
> 100 North Broadway, Suite 500
> Wichita, KS 67202
> Phone: (316) 265-9311

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on **September 29, 2006**.

/s/ Tory A. Weigand
_____

1186028v1

# EXHIBIT "A"

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:05-cv-10155-PBS

Dean v. Raytheon Company et al
Assigned to: Judge Patti B. Saris
Referred to: Magistrate Judge Leo T. Sorokin
Cause: 28:1332 Diversity-Airline Crash

Date Filed: 01/27/2005
Jury Demand: Plaintiff
Nature of Suit: 310 Airplane
Jurisdiction: Diversity

**Plaintiff**

**Yisel Dean**
*Independent Administratrix of the Estate of Steven Dean, deceased, and on behalf of all statutory beneficiaries*

represented by **Don Migliori**
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02903
401-457-7700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donald McCune, Jr.**
Motley Rice LLC
321 South Main Street
Providence, RI 02940
US
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J.B. Harris**
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
US
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack McConnell, Jr.**
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02903
401-457-7700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jodi Flowers**
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
843-216-9374

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary Schiavo**
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
843-216-9374
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Haefele**
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
843-216-9374
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert J. McConnell**
Motley Rice LLC
321 South Main Street
Heritage Building, Suite 200
Providence, RI 02940
401-457-7700
Fax: 401-457-7708
Email: bmcconnell@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald L. Motley**
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasan, SC 29465
834-216-9374
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David A. Bunis**
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210-2211
617-371-1000
Fax: 617-371-1037
Email: dbunis@dwyercollora.com
*ATTORNEY TO BE NOTICED*

**Jacob T. Elberg**
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210
617-371-1000
Fax: 617-371-1037

Email: jelberg@dwyercollora.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Raytheon Company**
*a Delaware Corporation*

represented by **Gary W. Harvey**
Morrison, Mahoney, & Miller LLP
250 Summer Street
Boston, MA 02210-1181
617-439-7576
Fax: 617-342-4875
Email: gharvey@mail.mm-m.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael G. Jones**
Martin, Pringle, Oliver, Wallace & Bauer, L.L.P.
100 North Broadway
Suite 500
Wichita, KS
Email: mgjones@martinpringle.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter C. Knight**
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
617-439-7500
Fax: 617-342-4928
Email: pknight@morrisonmahoney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tory A. Weigand**
Morrison, Mahoney, & Miller LLP
250 Summer Street
Boston, MA 02210-1181
617-737-8827
Fax: 617-342-4947
Email: tweigand@morrisonmahoney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Raytheon Aircraft Company**
*a Kansas Corporation*

represented by **Gary W. Harvey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael G. Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter C. Knight**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tory A. Weigand**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Raytheon Credit Corporation**                    represented by  **Gary W. Harvey**
*a Kansas Corporation*                                             (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Michael G. Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter C. Knight**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tory A. Weigand**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Colgan Air Inc.**                                represented by  **Andre M. Gregorian**
*a Delaware Corporation*                                          Dombroff & Gilmore, P.C.
*TERMINATED: 01/25/2006*                                          1676 International Drive
*doing business as*                                               McLean, VA 22102
US Air Express                                                    703-336-8800
*TERMINATED: 01/25/2006*                                          *TERMINATED: 01/25/2006*
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

**Anthony L. DeProspo, Jr.**
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110-2104
617-646-2193
Fax: 617-646-2222
Email: aldeprospo@sherin.com

TERMINATED: 01/25/2006
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Christopher A. Kenney**
Kenney & Sams PC
492 Old Connecticut Path
Framingham Corporate Center
Framingham, MA 01701
508-665-4299
Fax: 508-665-4298
Email: cakenney@kandslegal.com
TERMINATED: 01/25/2006
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Mark A. Dombroff**
Dombroff & Gilmore
1676 International Drive
McLean, VA 22102
703-336-8800
TERMINATED: 01/25/2006
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Thomas B. Almy**
Dombroff & Gilmore, P.C.
1676 International Drive
McLean, VA 22102
703-336-8800
TERMINATED: 01/25/2006
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Defendant**

**Raytheon Aircraft Holdings, Inc.**
*a Delaware Corporation*

represented by **Gary W. Harvey**
(See above for address)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Michael G. Jones**
(See above for address)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Peter C. Knight**
(See above for address)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Tory A. Weigand**
(See above for address)
LEAD ATTORNEY

ATTORNEY TO BE NOTICED

**Mediator**

**Magistrate Judge Judith G. Dein**
*TERMINATED: 08/18/2005*

**Mediator**

**Judith G. Dein**
*TERMINATED: 08/18/2005*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/27/2005 | 1 | COMPLAINT against Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Colgan Air Inc. Filing fee: $ 150, receipt number 61683, filed by Yisel Dean. (Attachments: # 1 Civil Cover Sheet)(Patch, Christine) (Entered: 02/01/2005) |
| 01/27/2005 | | Summons Issued as to Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Colgan Air Inc.. (Patch, Christine) (Entered: 02/01/2005) |
| 01/27/2005 | | If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge New Magistrate Judge. (Patch, Christine) (Entered: 02/01/2005) |
| 05/25/2005 | 2 | MOTION for Waiver of Electronic Filing by Yisel Dean.(Patch, Christine) (Entered: 05/31/2005) |
| 05/25/2005 | 3 | AMENDED COMPLAINT against Raytheon Aircraft Holdings, Inc., Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Colgan Air Inc., filed by Yisel Dean.(Patch, Christine) (Entered: 05/31/2005) |
| 05/31/2005 | 4 | MOTION for Extension of Time to 6/26/05 to Complete Service of Process and Suggestions in Support by Yisel Dean.(Patch, Christine) (Entered: 06/02/2005) |
| 06/02/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 2 Motion for Waiver of Electronic Filing (Patch, Christine) (Entered: 06/06/2005) |
| 06/06/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 4 Motion for Extension of Time to Complete Service of Process (Patch, Christine) (Entered: 06/08/2005) |
| 06/08/2005 | 5 | Letter to Robert McConnell from Douglas K. Bergere requesting a copy of the Complaint. (Patch, Christine) (Entered: 06/14/2005) |
| 06/15/2005 | 6 | MOTION for Waiver of Electronic Filing by Yisel Dean.(Patch, Christine) (Entered: 06/22/2005) |
| 06/15/2005 | 7 | Second AMENDED COMPLAINT against Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Colgan Air Inc., Raytheon Aircraft Holdings, Inc., filed by Yisel Dean.(Patch, Christine) (Entered: 06/22/2005) |
| 06/20/2005 | 8 | NOTICE of Appearance by Anthony L. DeProspo, Jr, Christopher A. Kenney on behalf of Colgan Air Inc. (Patch, Christine) (Entered: 06/22/2005) |

| 06/20/2005 | 9 | CORPORATE DISCLOSURE STATEMENT by Colgan Air Inc.. (Patch, Christine) (Entered: 06/22/2005) |
|---|---|---|
| 06/20/2005 | 10 | MOTION to Dismiss by Colgan Air Inc..(Patch, Christine) (Entered: 06/22/2005) |
| 06/20/2005 | 11 | MEMORANDUM in Support re 10 MOTION to Dismiss filed by Colgan Air Inc.. (Patch, Christine) (Entered: 06/22/2005) |
| 06/20/2005 | 12 | AFFIDAVIT of Andre M. Gregorian in Support re 10 MOTION to Dismiss filed by Colgan Air Inc.. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Errata 4# 5 Exhibit 5)(Patch, Christine) (Entered: 06/22/2005) |
| 06/20/2005 | 13 | MOTION for Leave to Appear Pro Hac Vice by Thomas B. Almy by Colgan Air Inc.. (Attachments: # 1 Affidavit)(Patch, Christine) (Entered: 06/22/2005) |
| 06/20/2005 | 14 | MOTION for Leave to Appear Pro Hac Vice by Andre M. Gregorian by Colgan Air Inc.. (Attachments: # 1 Affidavit)(Patch, Christine) (Entered: 06/22/2005) |
| 06/21/2005 | 15 | Request (non-motion) from Christopher A. Kenney for Hearing on Motion to Dismiss. (Patch, Christine) (Entered: 06/28/2005) |
| 06/22/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 6 Motion for Waiver of Electronic Filing (Patch, Christine) (Entered: 06/23/2005) |
| 06/27/2005 | 16 | SUMMONS Returned Executed Raytheon Aircraft Company served on 5/27/2005, answer due 6/16/2005. (Patch, Christine) (Entered: 06/29/2005) |
| 06/27/2005 | 17 | SUMMONS Returned Executed Raytheon Company served on 5/27/2005, answer due 6/16/2005. (Patch, Christine) (Entered: 06/29/2005) |
| 06/29/2005 | | Judge Patti B. Saris : Electronic ORDER entered denying 13 Motion for Leave to Appear Pro Hac Vice, denying 14 Motion for Leave to Appear Pro Hac Vice. Motions denied for failure to pay filing fee. (Patch, Christine) (Entered: 06/29/2005) |
| 06/29/2005 | | Filing fee: $ 100.00, receipt number 65315 regarding Motion for Leave to Appear Pro Hac Vice by Thomas B. Almy and Andre M. Gregorian (Patch, Christine) (Entered: 07/07/2005) |
| 07/05/2005 | 18 | NOTICE of Hearing on Motion 10 MOTION to Dismiss: Motion Hearing set for 7/27/2005 02:00 PM in Courtroom 19 before Judge Patti B. Saris. (Patch, Christine) (Entered: 07/06/2005) |
| 07/05/2005 | 19 | SUMMONS Returned Executed Colgan Air Inc. served on 6/21/2005, answer due 7/11/2005. (Patch, Christine) (Entered: 07/08/2005) |
| 07/05/2005 | 20 | SUMMONS Returned Executed Raytheon Aircraft Company served on 6/22/2005, answer due 7/12/2005. (Patch, Christine) (Entered: 07/08/2005) |
| 07/05/2005 | 21 | SUMMONS Returned Executed Raytheon Credit Corporation served on 6/21/2005, answer due 7/11/2005. (Patch, Christine) (Entered: 07/08/2005) |
| 07/05/2005 | 22 | SUMMONS Returned Executed Raytheon Company served on 6/22/2005, answer due 7/12/2005. (Patch, Christine) (Entered: 07/08/2005) |
| 07/06/2005 | 23 | MOTION for Extension of Time to 7/8/05 to File Response/Reply as to 10 MOTION to Dismiss by Yisel Dean.(Patch, Christine) (Entered: 07/08/2005) |

| 07/07/2005 | | Reopen Document 13 MOTION for Leave to Appear Pro Hac Vice by Thomas B. Almy, 14 MOTION for Leave to Appear Pro Hac Vice by Andre M. Gregorian (Patch, Christine) (Entered: 07/07/2005) |
| 07/07/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 13 Motion for Leave to Appear Pro Hac Vice Added Thomas B. Almy for Colgan Air Inc., granting 14 Motion for Leave to Appear Pro Hac Vice Added Andre M. Gregorian for Colgan Air Inc. (Patch, Christine) (Entered: 07/07/2005) |
| 07/08/2005 | 24 | MOTION for Leave to Appear Pro Hac Vice by Mark A. Dombroff Filing fee $ 50.00, receipt number 65486. by Colgan Air Inc..(Patch, Christine) (Entered: 07/12/2005) |
| 07/08/2005 | 25 | AFFIDAVIT of Mark A. Dombroff in Support re 24 MOTION for Leave to Appear Pro Hac Vice by Mark A. Dombroff. (Patch, Christine) (Entered: 07/12/2005) |
| 07/11/2005 | 26 | Assented to MOTION for Extension of Time to 7/18/05 to File Response as to 10 MOTION to Dismiss by Yisel Dean.(Patch, Christine) (Entered: 07/12/2005) |
| 07/12/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 24 Motion for Leave to Appear Pro Hac Vice Added Mark A. Dombroff for Colgan Air Inc. (Patch, Christine) (Entered: 07/12/2005) |
| 07/12/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 23 Motion for Extension of Time to File Response re 10 MOTION to Dismiss. Responses due by 7/8/2005 (Patch, Christine) (Entered: 07/19/2005) |
| 07/15/2005 | 27 | NOTICE of Appearance by Tory A. Weigand, Gary W. Harvey, Peter C. Knight on behalf of Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc. (York, Steve) (Entered: 07/18/2005) |
| 07/18/2005 | 28 | MOTION for Leave to Appear Pro Hac Vice by Michael G. Jones by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc..(Harvey, Gary) (Entered: 07/18/2005) |
| 07/18/2005 | 29 | AFFIDAVIT in Support re 28 MOTION for Leave to Appear Pro Hac Vice by Michael G. Jones. (Harvey, Gary) (Entered: 07/18/2005) |
| 07/18/2005 | 30 | Certificate of Good Standing re 29 Affidavit in Support by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc.. (Harvey, Gary) (Entered: 07/18/2005) |
| 07/18/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 26 Motion for Extension of Time to File Response re 10 MOTION to Dismiss. Responses due by 7/18/2005 (Patch, Christine) (Entered: 07/19/2005) |
| 07/21/2005 | 31 | ANSWER to Amended Complaint (Second) by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc..(Weigand, Tory) (Entered: 07/21/2005) |
| 07/21/2005 | 32 | MOTION for Leave to Appear Pro Hac Vice by Mary Schiavo by Yisel Dean. (Attachments: # 1 Affidavit Affidavit of Mary Schiavo)(McConnell, Robert) (Entered: 07/21/2005) |
| 07/21/2005 | | Filing fee: $ 50.00, receipt number 65756 regarding Motion for Leave to Appear |

| | | Pro Hac Vice by Michael G. Jones (Patch, Christine) (Entered: 07/25/2005) |
|---|---|---|
| 07/25/2005 | 33 | MOTION for Leave to File *A Reply Memorandum (Unopposed)* by Colgan Air Inc..(DeProspo, Anthony) (Entered: 07/25/2005) |
| 07/25/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 28 Motion for Leave to Appear Pro Hac Vice Added Michael G. Jones for Raytheon Credit Corporation: Raytheon Aircraft Holdings, Inc.; Raytheon Company and Raytheon Aircraft Company (Patch, Christine) (Entered: 07/25/2005) |
| 07/25/2005 | | Filing fee: $ 50.00, receipt number 65847 regarding Motion for Leave to Appear Pro Hac Vice by Mary Schiavo (Patch, Christine) (Entered: 07/26/2005) |
| 07/25/2005 | 38 | MOTION for Waiver of Electronic Filing by Yisel Dean.(Patch, Christine) (Entered: 07/27/2005) |
| 07/25/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 38 Motion for Waiver of Electronic Filing (Patch, Christine) (Entered: 07/27/2005) |
| 07/25/2005 | 39 | MOTION and Suggestions to Exclude Matters Outside the Pleading or in the Alternative Protective Motion for Discovery for the Purpose of Responding to Defendant Colgan's Motion by Yisel Dean.(Patch, Christine) (Entered: 07/27/2005) |
| 07/25/2005 | 40 | MEMORANDUM in Opposition re 10 MOTION to Dismiss filed by Yisel Dean. (Patch, Christine) (Entered: 07/27/2005) |
| 07/25/2005 | 41 | Opposition re 39 MOTION to Exclude Matters Outside the Pleading and Alternative Protection Motion for Discovery filed by Colgan Air Inc.. (Patch, Christine) (Entered: 07/27/2005) |
| 07/26/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 32 Motion for Leave to Appear Pro Hac Vice Added Mary Schiavo for Yisel Dean (Patch, Christine) (Entered: 07/26/2005) |
| 07/26/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 33 Motion for Leave to File a Reply Memorandum. (Patch, Christine) (Entered: 07/27/2005) |
| 07/26/2005 | 34 | REPLY Memorandum in Support of 10 MOTION to Dismiss filed by Colgan Air Inc.. (Patch, Christine) (Entered: 07/27/2005) |
| 07/27/2005 | 35 | SUMMONS Returned Executed Colgan Air Inc. served on 5/31/2005, answer due 6/20/2005. (McConnell, Robert) (Entered: 07/27/2005) |
| 07/27/2005 | 36 | SUMMONS Returned Executed Raytheon Aircraft Holdings, Inc. served on 6/24/2005, answer due 7/14/2005. (McConnell, Robert) (Entered: 07/27/2005) |
| 07/27/2005 | 37 | SUMMONS Returned Executed Raytheon Credit Corporation served on 5/27/2005, answer due 6/16/2005. (McConnell, Robert) (Entered: 07/27/2005) |
| 07/27/2005 | | Electronic Clerk's Notes for proceedings held before Judge Patti B. Saris: Motion Hearing held on 7/27/2005 re 10 MOTION to Dismiss filed by Colgan Air Inc. Court hears argument of counsel. Court takes motion under advisement. Scheduling Conference held on 7/27/2005. Court sets discovery and motion filing schedule. Court refers parties to mediation in early September, 2005. Hearing on Summary Judgment / Pretrial Conference set for 7/18/2006 at 2:00 PM in Courtroom 19 before Judge Patti B. Saris. (Court Reporter Nancy Eaton.) (Alba, Robert) (Entered: 07/27/2005) |

| | | |
|---|---|---|
| 07/27/2005 | 42 | Judge Patti B. Saris : ORDER entered. REFERRING CASE to Alternative Dispute Resolution for Mediation: First week of September, 2005.(Patch, Christine) (Entered: 08/03/2005) |
| 07/27/2005 | 43 | Judge Patti B. Saris : ORDER entered. SCHEDULING ORDER: Plaintiff to supplement by 9/30/05. Fact Discovery due by 9/30/2005. Plaintiff's expert designation deadline: 2/20/06; defendant's expert designation deadline: 3/30/06. Expert discovery deadline: 4/30/06. Summary Judgment Motion due by 5/30/2006; opposition due by 6/15/06. Hearing on Summary Judgment or Pretrial Conference set for 7/18/2006 02:00 PM in Courtroom 19 before Judge Patti B. Saris. Case to be referred to Mediation program: First week of September, 2005. (Patch, Christine) (Entered: 08/03/2005) |
| 08/17/2005 | | Electronic Notice of assignment to ADR Provider. Magistrate Judge Judith G. Dein appointed. The Court will contact counsel with regard to scheduling.(Tyler, Rebecca) (Entered: 08/17/2005) |
| 08/17/2005 | 44 | MOTION to Continue ADR Mediation by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc..(Knight, Peter) (Entered: 08/17/2005) |
| 08/18/2005 | 45 | MEMORANDUM in Opposition re 44 MOTION to Continue ADR Mediation filed by Colgan Air Inc.. (Kenney, Christopher) Additional attachment(s) added on 8/22/2005 (Patch, Christine). (Entered: 08/18/2005) |
| 08/18/2005 | | Judge Patti B. Saris : Electronic ORDER entered granting 44 Motion to Postpone Referral To Mediation Program (Patch, Christine) (Entered: 08/18/2005) |
| 09/29/2005 | 46 | Judge Patti B. Saris : ORDER entered. PRETRIAL ORDER: Final Pretrial Conference set for 9/6/2006 02:00 PM in Courtroom 19 before Judge Patti B. Saris. Jury Trial set for 9/18/2006 09:00 AM in Courtroom 19 before Judge Patti B. Saris.(Patch, Christine) (Entered: 10/03/2005) |
| 10/06/2005 | 47 | Consent MOTION for Extension of Time to 10/12/2005 to File *Joint Stipulations of Fact* by Yisel Dean.(McConnell, Robert) (Entered: 10/06/2005) |
| 10/07/2005 | | Judge Patti B. Saris: ElectronicORDER entered granting 47 Consent MOTION for Extension of Time to 10/12/2005 to File Joint Stipulations of Fact by Yisel Dean. (Alba, Robert) (Entered: 10/07/2005) |
| 10/12/2005 | 48 | Document disclosure by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc..(Harvey, Gary) (Entered: 10/12/2005) |
| 10/12/2005 | 49 | NOTICE by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc. re 48 Document disclosure *(Notice of Service of Raytheon defendants' Rule 26(a)(1) Initial Disclosures* (Harvey, Gary) (Entered: 10/12/2005) |
| 10/12/2005 | 50 | Supplemental MEMORANDUM in Support re 10 MOTION to Dismiss filed by Colgan Air Inc.. (DeProspo, Anthony) (Entered: 10/12/2005) |
| 10/12/2005 | 51 | STIPULATION *Joint Agreed Stipulations of Fact* by Yisel Dean. (Attachments: # 1 Exhibit 1# 2 Exhibit 2(a)# 3 Exhibit 2(b)# 4 Exhibit 3# 5 Exhibit 4# 6 Exhibit 5# 7 Exhibit 6# 8 Exhibit 7# 9 Exhibit 8# 10 Exhibit 9# 11 Exhibit 10# 12 Exhibit 11# 13 Exhibit 12# 14 Exhibit 13# 15 Exhibit 14# 16 Exhibit 15) (McConnell, Robert) Additional attachment(s) added on 10/13/2005 (Patch, |

| | | Christine). (Entered: 10/12/2005) |
|---|---|---|
| 10/12/2005 | 52 | MOTION for Disclosure *Plaintiffs' Rule 26 Initial Disclosure* by Yisel Dean. (McConnell, Robert) Additional attachment(s) added on 10/13/2005 (Patch, Christine). (Entered: 10/12/2005) |
| 10/12/2005 | 53 | Supplemental MEMORANDUM in Opposition re 10 MOTION to Dismiss filed by Yisel Dean. (Attachments: # 1 Affidavit Betty Everett)(McConnell, Robert) (Entered: 10/12/2005) |
| 10/12/2005 | 54 | Rule 26 Initial disclosures by Yisel Dean. Re-entered by Court staff to correct data entry error. (Patch, Christine) (Entered: 10/13/2005) |
| 10/13/2005 | | Documents terminated: 52 MOTION for Disclosure *Plaintiffs' Rule 26 Initial Disclosure* filed by Yisel Dean,. (Patch, Christine) (Entered: 10/13/2005) |
| 10/13/2005 | | Notice of correction to docket made by Court staff. Correction: Document No. 52 terminated because it was filed using the incorrect event. Please refer to Document No. 54 for corrected filing. (Patch, Christine) (Entered: 10/13/2005) |
| 10/14/2005 | 55 | EXHIBIT re 53 Memorandum in Opposition to Motion *Exhibit 1* by Yisel Dean. (McConnell, Robert) (Entered: 10/14/2005) |
| 10/14/2005 | 56 | EXHIBIT re 53 Memorandum in Opposition to Motion *Exhibit 2* by Yisel Dean. (McConnell, Robert) (Entered: 10/14/2005) |
| 10/18/2005 | | Electronic Notice of assignment to ADR Provider. Magistrate Judge Judith G. Dein appointed. Weiler v. Raytheon Co et al, #05-10364 has been consolidated with this case. In light of Judge Saris' ruling to postpone referral to the ADR program, cousel are instructed to contact Magistrate Judge Dein when mediation is ripe.(Tyler, Rebecca) (Entered: 10/18/2005) |
| 10/21/2005 | 57 | MOTION for Hearing re 10 MOTION to Dismiss by Colgan Air Inc..(DeProspo, Anthony) (Entered: 10/21/2005) |
| 10/26/2005 | 58 | RESPONSE to Motion re 57 MOTION for Hearing re 10 MOTION to Dismiss filed by Yisel Dean. (McConnell, Robert) (Entered: 10/26/2005) |
| 10/27/2005 | | Judge Patti B. Saris : ElectronicORDER entered denying 57 Motion for Hearing (Patch, Christine) (Entered: 11/01/2005) |
| 11/16/2005 | 59 | Judge Patti B. Saris: MEMORANDUM AND ORDER entered granting 10 Motion to Dismiss Count V. (Irwin, Nancy) Additional attachment(s) added on 11/16/2005 (Patch, Christine). (Entered: 11/16/2005) |
| 11/18/2005 | 60 | CERTIFICATE OF SERVICE by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc. *of Discovery Requests to Plaintiff Yisel Dean*. (Jones, Michael) (Entered: 11/18/2005) |
| 11/18/2005 | 61 | CERTIFICATE OF SERVICE by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc. *of Discovery Requests to Plaintiff Lisa A. Weiler*. (Jones, Michael) (Entered: 11/18/2005) |
| 01/13/2006 | 62 | Emergency MOTION for Protective Order by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc.. (Attachments: # 1 Exhibit 1-4# 2 Exhibit 5-9)(Harvey, Gary) (Entered: |

| | | 01/13/2006) |
|---|---|---|
| 01/13/2006 | 63 | CERTIFICATE OF CONSULTATION re 62 Emergency MOTION for Protective Order by Gary W. Harvey on behalf of Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc.. (Harvey, Gary) (Entered: 01/13/2006) |
| 01/17/2006 | 64 | Letter/request (non-motion) from Gary W. Harvey, counsel for Raytheon defendants. (Harvey, Gary) (Entered: 01/17/2006) |
| 01/17/2006 | 65 | Judge Patti B. Saris: ORDER entered REFERRING 62 Emergency MOTION for Protective Order filed by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, and Raytheon Aircraft Holdings, Inc., to Magistrate Judge Leo T. Sorokin.(Alba, Robert) (Entered: 01/17/2006) |
| 01/17/2006 | 66 | RESPONSE to Motion re 62 Emergency MOTION for Protective Order filed by Yisel Dean. (Attachments: # 1 Exhibit 1- Harvey email# 2 Exhibit 2-Correspondence to M. Jones# 3 Affidavit 3-Affidavit of Mary Schiavo# 4 Affidavit 4- Affidavit of Tom Almy# 5 Affidavit 5- Affidavit of Michael Scheidt# 6 Affidavit 6-Affidavit of Michael Jones# 7 Affidavit 7- Declaration of Jeff Spahn# 8 Exhibit 8-Injuction D. Havnen# 9 Exhibit 9-Raytheon Publications# 10 Exhibit 10-Memorandum Opinion# 11 Exhibit 11-Plaintiffs First Set of Interrogatories)(McConnell, Robert) (Entered: 01/17/2006) |
| 01/18/2006 | | ELECTRONIC NOTICE of Hearing on Motion 62 Emergency MOTION for Protective Order: The Motion Hearing has been set for 1/25/2006 11:00 AM in Courtroom 14 before Magistrate Judge Leo T. Sorokin. (Simeone, Maria) (Entered: 01/18/2006) |
| 01/18/2006 | 67 | MOTION for Order to Produce the Cockpit Voice Recorder (CVR) Recording and For A Deposition of the Custodian Thereof by Yisel Dean.(McConnell, Robert) Additional attachment(s) added on 1/19/2006 (Patch, Christine). (Entered: 01/18/2006) |
| 01/18/2006 | 68 | MEMORANDUM in Support re 67 MOTION for Order to Produce the Cockpit Voice Recorder (CVR) Recording and For A Deposition of the Custodian Thereof filed by Yisel Dean. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4)(McConnell, Robert) Additional attachment(s) added on 1/19/2006 (Patch, Christine). (Entered: 01/18/2006) |
| 01/20/2006 | 69 | MOTION to Compel *Raytheon Defendants* by Yisel Dean.(McConnell, Robert) (Entered: 01/20/2006) |
| 01/23/2006 | 70 | Judge Patti B. Saris: ORDER entered REFERRING 69 Emergency MOTION to Compel *Raytheon Defendants* filed by Yisel Dean, to Magistrate Judge Leo T. Sorokin.(Alba, Robert) (Entered: 01/23/2006) |
| 01/24/2006 | 71 | REPLY to Response to Motion re 67 MOTION for Order to Produce the Cockpit Voice Recorder (CVR) Recording and For A Deposition of the Custodian Thereof, 69 MOTION to Compel *Raytheon Defendants*, 62 Emergency MOTION for Protective Order *and Response to Plaintiffs' Motion To Compel and Extend Discovery* filed by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc.. (Attachments: # 1 Exhibit 1# 2 Exhibit 2)(Harvey, Gary) (Entered: 01/24/2006) |
| 01/24/2006 | 72 | MOTION for Leave to File *Reply Brief in Support of Its Motion for a Protective* |

| | | |
|---|---|---|
| | | *Order* by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc..(Harvey, Gary) (Entered: 01/24/2006) |
| 01/24/2006 | 73 | Opposition re 69 MOTION to Compel *Raytheon Defendants* filed by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc.. (Harvey, Gary) (Entered: 01/24/2006) |
| 01/25/2006 | | Magistrate Judge Leo T. Sorokin : Electronic ORDER entered granting 72 Motion for Leave to File.Counsel using the Electronic Case Files system should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. (Simeone, Maria) (Entered: 01/25/2006) |
| 01/25/2006 | 74 | REPLY to Response to Motion re 67 MOTION for Order to Produce the Cockpit Voice Recorder (CVR) Recording and For A Deposition of the Custodian Thereof, 69 MOTION to Compel *Raytheon Defendants*, 62 Emergency MOTION for Protective Order filed by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc.. (Attachments: # 1 Exhibit 1# 2 Exhibit 2)(Harvey, Gary) (Entered: 01/25/2006) |
| 01/25/2006 | | ElectronicClerk's Notes for proceedings held before Magistrate Judge Leo T. Sorokin : Motion Hearing held on 1/25/2006 re 62 Emergency MOTION for Protective Order filed by Raytheon Company, 67 MOTION for Order to Produce the Cockpit Voice Recorder (CVR) Recording and For A Deposition of the Custodian Thereof filed by Yisel Dean,, 69 MOTION to Compel *Raytheon Defendants* filed by Yisel Dean. counsel go over status and claims; court addresses the motions and holds oral argument on the motions; court takes a short recess; court resumes and continues with oral argument; court requests plaintiffs counsel to file a status report regarding the scope by 1/31/06; defendants reply by 2/14/06 limited to 5 pages; surreply by 2/21/06 limited to 2 pages. The matter will be taken under advisement. (Digital Recording #d.) (Simeone, Maria) (Entered: 01/25/2006) |
| 01/31/2006 | 75 | MEMORANDUM in Support re 69 MOTION to Compel *Raytheon Defendants Plaintiff's Suggested Scope of Discovery* filed by Yisel Dean. (McConnell, Robert) (Entered: 01/31/2006) |
| 01/31/2006 | 76 | MEMORANDUM in Support re 69 MOTION to Compel *Raytheon Defendants Memorandum to the Court on Plaintiffs Interrogatories* filed by Yisel Dean. (McConnell, Robert) (Entered: 01/31/2006) |
| 02/03/2006 | 77 | NOTICE of Appearance by David A. Bunis on behalf of all plaintiffs (Bunis, David) (Entered: 02/03/2006) |
| 02/03/2006 | 78 | NOTICE of Appearance by Jacob T. Elberg on behalf of all plaintiffs (Elberg, Jacob) (Entered: 02/03/2006) |
| 02/03/2006 | 79 | MOTION for Leave to Appear Pro Hac Vice by J. B. Harris by Yisel Dean. (Attachments: # 1 Affidavit of J.B. Harris)(Bunis, David) (Entered: 02/03/2006) |
| 02/03/2006 | | Filing fee: $ 50.00, receipt number 70054 regarding Motion for Leave to Appear Pro Hac Vice by J. B. Harris (Patch, Christine) (Entered: 02/09/2006) |
| 02/09/2006 | | Judge Patti B. Saris : Electronic ORDER entered granting 79 Motion for Leave to Appear Pro Hac Vice Added J.B. Harris for Yisel Dean (Patch, Christine) |

| | | (Entered: 02/09/2006) |
|---|---|---|
| 02/14/2006 | 80 | TRANSCRIPT of Motion Hearing held on January 25, 2006 before Judge Sorokin. Digital Recording: Transcribed by Maryann Young. The original transcripts are maintained in the case file in the Clerk's Office. Copies may be obtained by contacting Maryann Young at 508/384-2003 or the Clerk's Office. (Scalfani, Deborah) (Entered: 02/14/2006) |
| 02/14/2006 | 81 | Supplemental REPLY to Response to Motion re 62 Emergency MOTION for Protective Order filed by Raytheon Aircraft Company. (Harvey, Gary) (Entered: 02/14/2006) |
| 02/15/2006 | 82 | Supplemental REPLY to Response to Motion re 62 Emergency MOTION for Protective Order filed by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc.. (Harvey, Gary) (Entered: 02/15/2006) |
| 02/17/2006 | 83 | Assented to MOTION for Extension of Time to three weeks after the fact discovery deadline to designate Plaintiffs' experts by Yisel Dean.(Elberg, Jacob) (Entered: 02/17/2006) |
| 02/21/2006 | 84 | REPLY to Response to Motion re 62 Emergency MOTION for Protective Order filed by Yisel Dean. (McConnell, Robert) (Entered: 02/21/2006) |
| 02/28/2006 | | Judge Patti B. Saris : Electronic ORDER entered granting 83 Motion to Extend Expert Designation Deadlines. (Patch, Christine) (Entered: 03/01/2006) |
| 03/02/2006 | 85 | Magistrate Judge Leo T. Sorokin : ORDER entered: On the terms Ordered above, the Defendants' Motion for a Protective Order (Docket # 62) and the Plaintiffs' Motion to Compel (Docket #69) are ALLOWED IN PART AND DENIED IN PART. (Simeone, Maria) (Entered: 03/02/2006) |
| 03/10/2006 | 86 | Recommendations for Scheduling Order *submitted by the parties pursuant to Magistrate Judge Sorokin's Order on Discovery Motions of March 2, 2006.* (Elberg, Jacob) (Entered: 03/10/2006) |
| 03/13/2006 | | Judge Patti B. Saris : Electronic ORDER entered. ELECTRONIC ENDORSEMENT granting 86 Joint Proposed Revision to the Scheduling Order. "I adopt defendant's schedule." The Hearing on Summary Judgment/Pretrial Conference is rescheduled to November 11, 2006. The Final Pretrial Conference is rescheduled to December 6, 2006 at 3:00 PM. The Jury Trial Trial is rescheduled to December 11, 2006, at 9:00 AM. Counsel are to adjust all dates in the Pretrial Order commensurate with the new Final Pretrial Conference and Trial Dates.(Patch, Christine) (Entered: 03/15/2006) |
| 03/15/2006 | | Set/Reset Hearings: Final Pretrial Conference set for 12/6/2006 03:00 PM in Courtroom 19 before Judge Patti B. Saris. Jury Trial set for 12/11/2006 09:00 AM in Courtroom 19 before Judge Patti B. Saris. (Patch, Christine) (Entered: 03/15/2006) |
| 03/27/2006 | 90 | Judge Patti B. Saris : ORDER entered. PROTECTIVE ORDER for Production of Cockpit Voice Recorder. "Subject to any challenge to the sealing by the public."(Patch, Christine) (Entered: 04/06/2006) |
| 03/28/2006 | 87 | Recommendations for Scheduling Order *, Filed Jointly, to Change Trial Date and Date for Hearing on Summary Judgment.* (Elberg, Jacob) (Entered: 03/28/2006) |

| 03/28/2006 | 88 | Proposed Document(s) submitted by Yisel Dean. Document received: Assented-to Proposed Protective Order for Production of Cockpit Voice Recorder. (Elberg, Jacob) (Entered: 03/28/2006) |
| 03/28/2006 | 89 | Joint MOTION to Continue Trial to 2/26/07 and Summary Judgment Hearing to 11/17/06 by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc., Yisel Dean. Re-entered by court staff to correct data entry error. (Patch, Christine) (Entered: 03/29/2006) |
| 03/29/2006 | | Documents terminated: 87 Recommendations for Scheduling Order. (Patch, Christine) (Entered: 03/29/2006) |
| 03/29/2006 | | Notice of correction to docket made by Court staff. Correction: Document No. 87 terminated because it was filed using the incorrect event. Please refer to Document No. 89 for corrected filing (Patch, Christine) (Entered: 03/29/2006) |
| 03/29/2006 | | Judge Patti B. Saris : Electronic ORDER entered granting 89 Motion to Change Trial Date and Date for Hearing on Summary Judgment. Final Pretrial Conference set for 2/15/2007 02:00 PM in Courtroom 19 before Judge Patti B. Saris. Jury Trial set for 2/26/2007 09:00 AM in Courtroom 19 before Judge Patti B. Saris. Hearing on Summary Judgment/Pretrial Conference set for 11/17/2006 02:00 PM in Courtroom 19 before Judge Patti B. Saris. (Patch, Christine) (Entered: 03/31/2006) |
| 04/07/2006 | 91 | CERTIFICATE OF SERVICE by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc. *of Responses and Objections to Plaintiffs' Request to Permit Inspection of Property*. (Jones, Michael) (Entered: 04/07/2006) |
| 04/11/2006 | 92 | CERTIFICATE OF SERVICE by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc. *of Responses and Objections to Plaintiffs' First Set of Interrogatories and Supplemental Response to Plaintiffs' First Request for Production of Documents*. (Jones, Michael) (Entered: 04/11/2006) |
| 04/27/2006 | 93 | Joint MOTION for Protective Order by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc., Yisel Dean. (Attachments: # 1 Text of Proposed Order Agreed to Protective Order) (Knight, Peter) (Entered: 04/27/2006) |
| 04/28/2006 | 94 | Judge Patti B. Saris: ORDER entered. REFERRING 93 Joint MOTION for Protective Order filed by Raytheon Company, Yisel Dean, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc., to Magistrate Judge Leo T. Sorokin.(Alba, Robert) (Entered: 04/28/2006) |
| 04/28/2006 | | Judge Leo T. Sorokin : Electronic ORDER entered granting 93 Motion for Protective Order. (Simeone, Maria) (Entered: 04/28/2006) |
| 04/28/2006 | 95 | Magistrate Judge Leo T. Sorokin : ORDER entered. AGREED PROTECTIVE ORDER.(Simeone, Maria) (Entered: 04/28/2006) |
| 05/01/2006 | 96 | CERTIFICATE OF SERVICE by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc. *of Defendants' Answers and Objections to Plaintiffs' Second Set of Interrogatories*. (Jones, Michael) (Entered: 05/01/2006) |
| 06/13/2006 | | Motions terminated: 67 MOTION for Order to Produce the Cockpit Voice |

| | | |
|---|---|---|
| | | Recorder (CVR) Recording and For A Deposition of the Custodian Thereof filed by Yisel Dean. (motion decided by prior Court action.) (Alba, Robert) (Entered: 06/13/2006) |
| 07/11/2006 | 97 | Joint MOTION to Extend Discovery Deadlines by all plaintiffs.(Elberg, Jacob) (Entered: 07/11/2006) |
| 07/12/2006 | | Judge Patti B. Saris : Electronic ORDER entered granting 97 Joint Motion to Extend Discovery Deadlines. "The Hearing on Summary Judgment/Pretrial Conference is rescheduled to December 15, 2006 at 2:00 PM." (Patch, Christine) (Entered: 07/13/2006) |
| 07/13/2006 | | Set/Reset Hearings: Hearing on Summary Judgment/Pretrial Conference rescheduled for 12/15/2006 02:00 PM in Courtroom 19 before Judge Patti B. Saris. (Patch, Christine) (Entered: 07/13/2006) |
| 08/25/2006 | 98 | CERTIFICATE OF SERVICE by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc. *of Defendants' Expert Disclosures.* (Jones, Michael) (Entered: 08/25/2006) |
| 09/08/2006 | 99 | MOTION for Leave to Appear Pro Hac Vice by Donald McCune, Jr. by Yisel Dean. (Attachments: # 1 Affidavit of Donald McCune)(McConnell, Robert) (Entered: 09/08/2006) |
| 09/11/2006 | 100 | MOTION for Leave to File *Amended Complaints* by all plaintiffs. (Attachments: # 1 Proposed Third Amended Complaint# 2 Proposed Second Amended Complaint)(Elberg, Jacob) (Entered: 09/11/2006) |
| 09/14/2006 | | Filing fee: $ 50, receipt number 75134 for 99 MOTION for Leave to Appear Pro Hac Vice by Donald McCune, Jr. (Patch, Christine) (Entered: 09/27/2006) |
| 09/25/2006 | 101 | Assented to MOTION for Extension of Time to September 29, 2006 to File an Opposition to Plaintiffs' Motion for Leave to File Amended Complaint by all defendants.(Knight, Peter) (Entered: 09/25/2006) |
| 09/26/2006 | | Judge Patti B. Saris: Electronic ORDER entered granting 101 Assented to MOTION for Extension of Time to September 29, 2006 to File an Opposition to Plaintiffs' Motion for Leave to File Amended Complaint. (Alba, Robert) (Entered: 09/26/2006) |
| 09/27/2006 | | Judge Patti B. Saris : Electronic ORDER entered granting 99 Motion for Leave to Appear Pro Hac Vice Added Donald McCune, Jr for Yisel Dean (Patch, Christine) (Entered: 09/27/2006) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/29/2006 09:41:23 | | |
| **PACER Login:** | mm0267 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-cv-10155-PBS |
| **Billable Pages:** | 11 | **Cost:** | 0.88 |

CLOSED, CONSOLIDATED

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:05-cv-10364-PBS

Weiler v. Raytheon Company et al
Assigned to: Judge Patti B. Saris
Cause: 28:1332 Diversity-Airline Crash

Date Filed: 02/24/2005
Jury Demand: Plaintiff
Nature of Suit: 310 Airplane
Jurisdiction: Diversity

**Plaintiff**

**Lisa A. Weiler**
*Administratrix of the Estate of Scott A.
Knabe, deceased, and on behalf of all
statutory beneficiaries*

represented by **Don Migliori**
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02903
401-457-7700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Smith**
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940
401-457-7700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack McConnell, Jr.**
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02903
401-457-7700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jodi Flowers**
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940
401-457-7700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary Schiavo**
Motley Rice LLC
321 South Main Street

P.O. Box 6067
Providence, RI 02940
401-857-7700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Haefele**
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940
401-457-7700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert J. McConnell**
Motley Rice LLC
321 South Main Street
Heritage Building, Suite 200
Providence, RI 02940
401-457-7700
Fax: 401-457-7708
Email: bmcconnell@motleyrice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ronald L. Motley**
Motley Rice LLC
321 South Main St
P.O. Box 6067
Providence, RI 02940
401-457-7700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Raytheon Company**
*a Delaware Corporation*

represented by **Gary W. Harvey**
Morrison, Mahoney, & Miller LLP
250 Summer Street
Boston, MA 02210-1181
617-439-7576
Fax: 617-342-4875
Email: gharvey@mail.mm-m.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael G. Jones**
Martin, Pringle, Oliver, Wallace & Bauer
LLP
100 N. Broadway

Suite 500
Wichita, KS 67202-2212
316-265-9311
Fax: 316-265-2955
Email: mgjones@martinpringle.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter C. Knight**
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
617-439-7500
Fax: 617-342-4928
Email: pknight@morrisonmahoney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tory A. Weigand**
Morrison, Mahoney, & Miller LLP
250 Summer Street
Boston, MA 02210-1181
617-737-8827
Fax: 617-342-4947
Email: tweigand@morrisonmahoney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Raytheon Aircraft Company**
*a Kansas Corporation*

represented by **Gary W. Harvey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael G. Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter C. Knight**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tory A. Weigand**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Raytheon Credit Corporation**
*a Kansas Corporation*

represented by **Gary W. Harvey**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Michael G. Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter C. Knight**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tory A. Weigand**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Colgan Air Inc.**
*a Delaware Corporation*
*TERMINATED: 08/15/2005*
*doing business as*
US Air Express
*TERMINATED: 08/15/2005*

represented by **Mark A. Dombroff**
Dombroff & Gilmore
1676 International Drive, Penthouse
McLean, VA 22101
703-336-8800
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas B. Almy**
Dombroff & Gilmore, P.C.
1676 International Drive
McLean, VA 22102
703-336-8800
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Raytheon Aircraft Holdings, Inc.**

represented by **Gary W. Harvey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael G. Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter C. Knight**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tory A. Weigand**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Mediator**

**Judith G. Dein**

| Date Filed | # | Docket Text |
|---|---|---|
| 02/24/2005 | 1 | COMPLAINT against Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Colgan Air Inc. Filing fee: $ 250, receipt number 62322, filed by Lisa A. Weiler. (Attachments: # 1 Civil Cover Sheet # 2 Category Sheet)(Patch, Christine) (Entered: 03/01/2005) |
| 02/24/2005 |  | If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to the New Magistrate Judge. (Patch, Christine) (Entered: 03/01/2005) |
| 02/24/2005 |  | Summons Issued as to Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Colgan Air Inc.. (Patch, Christine) (Entered: 03/01/2005) |
| 06/15/2005 | 2 | MOTION for Waiver of Electronic Filing by Lisa A. Weiler.(Patch, Christine) (Entered: 06/22/2005) |
| 06/15/2005 | 3 | AMENDED COMPLAINT against Raytheon Aircraft Holdings, Inc., Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Colgan Air Inc., filed by Lisa A. Weiler.(Patch, Christine) (Entered: 06/22/2005) |
| 06/23/2005 |  | Judge Patti B. Saris : Electronic ORDER entered granting 2 Motion for Waiver of Electronic Filing (Patch, Christine) (Entered: 06/23/2005) |
| 07/05/2005 | 4 | SUMMONS Returned Executed Colgan Air Inc. served on 6/21/2005, answer due 7/11/2005. (Patch, Christine) (Entered: 07/08/2005) |
| 07/05/2005 | 5 | SUMMONS Returned Executed Raytheon Company served on 6/22/2005, answer due 7/12/2005. (Patch, Christine) (Entered: 07/08/2005) |
| 07/05/2005 | 6 | SUMMONS Returned Executed Raytheon Aircraft Company served on 6/22/2005, answer due 7/12/2005. (Patch, Christine) (Entered: 07/08/2005) |
| 07/05/2005 | 7 | SUMMONS Returned Executed Raytheon Credit Corporation served on 6/21/2005, answer due 7/11/2005. (Patch, Christine) (Entered: 07/08/2005) |
| 07/15/2005 | 8 | NOTICE of Appearance by Tory A. Weigand, Gary W. Harvey, Peter C. Knight on behalf of Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc. (York, Steve) (Entered: 07/18/2005) |
| 07/18/2005 | 9 | MOTION for Leave to Appear Pro Hac Vice by Michael G. Jones by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc..(Harvey, Gary) Additional attachment(s) added on 8/31/2005 (Patch, Christine). (Entered: 07/18/2005) |
| 07/18/2005 | 10 | AFFIDAVIT in Support re 9 MOTION for Leave to Appear Pro Hac Vice by Michael G. Jones. (Harvey, Gary) (Entered: 07/18/2005) |
| 07/18/2005 | 11 | Certificate of Good Standing re 10 Affidavit in Support by Raytheon Company, |

|  |  | Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc.. (Harvey, Gary) (Entered: 07/18/2005) |
|---|---|---|
| 07/21/2005 | 12 | ANSWER to Amended Complaint by Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc.. (Weigand, Tory) (Entered: 07/21/2005) |
| 07/21/2005 | 13 | MOTION for Leave to Appear Pro Hac Vice by Mary Schiavo by Lisa A. Weiler. (Attachments: # 1 Affidavit Affidavit of Mary Schiavo)(McConnell, Robert) (Entered: 07/21/2005) |
| 07/21/2005 |  | Filing fee: $ 50.00, receipt number 65757 regarding Motion for Leave to Appear Pro Hac Vice by Michael G. Jones (Patch, Christine) (Entered: 07/25/2005) |
| 07/25/2005 |  | Judge Patti B. Saris : Electronic ORDER entered granting 9 Motion for Leave to Appear Pro Hac Vice Added Michael G. Jones for Raytheon Credit Corporation; Raytheon Aircraft Holdings, Inc.; Raytheon Company and Raytheon Aircraft Company (Patch, Christine) (Entered: 07/25/2005) |
| 07/25/2005 |  | Filing fee: $ 50.00, receipt number 65847 regarding Motion for Leave to Appear Pro Hac Vice by Mary Schiavo (Patch, Christine) (Entered: 07/26/2005) |
| 07/26/2005 | 14 | MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(B)(6)* by Colgan Air Inc.. (DeProspo, Anthony) (Entered: 07/26/2005) |
| 07/26/2005 | 15 | MEMORANDUM in Support re 14 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(B)(6)* filed by Colgan Air Inc.. (DeProspo, Anthony) (Entered: 07/26/2005) |
| 07/26/2005 |  | Judge Patti B. Saris : Electronic ORDER entered granting 13 Motion for Leave to Appear Pro Hac Vice Added Mary Schiavo for Lisa A. Weiler (Patch, Christine) (Entered: 07/26/2005) |
| 07/27/2005 | 16 | SUMMONS Returned Executed Raytheon Aircraft Holdings, Inc. served on 6/24/2005, answer due 7/14/2005. (McConnell, Robert) (Entered: 07/27/2005) |
| 08/01/2005 | 17 | RESPONSE to Motion re 14 MOTION to Dismiss *Pursuant to Fed. R. Civ. P. 12(B)(6)* filed by Lisa A. Weiler. (McConnell, Robert) (Entered: 08/01/2005) |
| 08/08/2005 | 18 | MOTION for Leave to Appear Pro Hac Vice by Thomas B. Almy Filing fee $ 50.00, receipt number 66127. by Colgan Air Inc.. (Attachments: # 1 Affidavit Thomas B. Almy)(Patch, Christine) (Entered: 08/12/2005) |
| 08/08/2005 | 19 | MOTION for Leave to Appear Pro Hac Vice by Mark A. Dombroff Filing fee $ 50.00, receipt number 66127. by Colgan Air Inc.. (Attachments: # 1 Affidavit Mark A. Dombroff)(Patch, Christine) (Entered: 08/12/2005) |
| 08/12/2005 |  | Judge Patti B. Saris : Electronic ORDER entered granting 18 Motion for Leave to Appear Pro Hac Vice Added Thomas B. Almy for Colgan Air Inc. (Patch, Christine) (Entered: 08/12/2005) |
| 08/12/2005 |  | Judge Patti B. Saris : Electronic ORDER entered granting 19 Motion for Leave to Appear Pro Hac Vice Added Mark A. Dombroff for Colgan Air Inc. (Patch, Christine) (Entered: 08/12/2005) |
| 08/15/2005 |  | Judge Patti B. Saris : Electronic ORDER entered granting 14 Motion to Dismiss (Patch, Christine) (Entered: 08/17/2005) |

| 08/18/2005 | 20 | NOTICE of Scheduling Conference Scheduling Conference set for 9/28/2005 03:00 PM in Courtroom 19 before Judge Patti B. Saris. (Patch, Christine) (Entered: 08/22/2005) |
| 09/22/2005 | 21 | JOINT STATEMENT re scheduling conference *(by all parties)*. (Harvey, Gary) (Entered: 09/22/2005) |
| 09/22/2005 | 22 | CERTIFICATE OF CONSULTATION re 21 JOINT STATEMENT re scheduling conference by Gary W. Harvey on behalf of Raytheon Company, Raytheon Aircraft Company, Raytheon Credit Corporation, Raytheon Aircraft Holdings, Inc.. (Harvey, Gary) (Entered: 09/22/2005) |
| 09/23/2005 | 23 | CERTIFICATION pursuant to Local Rule 16.1 *(D)(3)* by Lisa A. Weiler. (McConnell, Robert) (Entered: 09/23/2005) |
| 09/28/2005 |  | ElectronicClerk's Notes for proceedings held before Judge Patti B. Saris: Scheduling Conference held on 9/28/2005. Court sets discovery, motion and trial schedule. (Alba, Robert) (Entered: 09/28/2005) |
| 09/28/2005 | 26 | Judge Patti B. Saris : ORDER entered. SCHEDULING ORDER: Fact Discovery due by 1/30/2006. Plaintiff's expert designation deadline: 2/20/06. Defendant's expert designation deadline: 3/30/06. Expert discovery deadline: 5/30/06. Summary Judgment Motion due by 6/30/06;opposition to Summary Judgment motion due 7/15/06. Hearing on Summary Judgment/ Pretrial Conference set for 8/9/2006 02:00 PM in Courtroom 19 before Judge Patti B. Saris. Final Pretrial Conference set for 9/6/06 02:00 PM in Courtroom 19 before Judge Patti B. Saris. Jury trial sent for 9/15/06 09:00 AM in Courtroom 19 before Judge Patti B. Saris. Case to be referred to Mediation program: early Winter, 2006.(Patch, Christine) (Entered: 10/03/2005) |
| 09/29/2005 | 24 | Judge Patti B. Saris : ORDER entered. ORDER consolidating cases. "This Court hereby orders that the above-entitled action be consolidated with civil action number 05-CV-10155-PBS which has been designated as the lead case. All future pleadings are to be filed in case number 05-CV-10155-PBS."(Patch, Christine) (Entered: 10/03/2005) |
| 09/29/2005 | 25 | Judge Patti B. Saris : ORDER entered. REFERRING CASE to Alternative Dispute Resolution for Mediation: early Winter, 2006. (Patch, Christine) (Entered: 10/03/2005) |
| 09/29/2005 |  | Civil Case Terminated. (Patch, Christine) (Entered: 10/03/2005) |
| 10/03/2005 |  | Set/Reset Hearings: Jury Trial set for 9/18/2006 09:00 AM in Courtroom 19 before Judge Patti B. Saris. (Patch, Christine) (Entered: 10/03/2005) |
| 10/18/2005 |  | Electronic Notice of assignment to ADR Provider. Magistrate Judge Judith G. Dein appointed. To be mediated in conjunction with Dean v. Raytheon, #05-10155. In light of Judge Saris' ruling to postpone referral to the ADR program, counsel are instructed to contact Magistrate Judge Dein when mediation is ripe. (Tyler, Rebecca) (Entered: 10/18/2005) |

| **PACER Service Center** |
| **Transaction Receipt** |

| 09/29/2006 10:02:56 | | | |
|---|---|---|---|
| **PACER Login:** | mm0267 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-cv-10364-PBS |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LISA A. WEILER, Administratrix of the Estate of SCOTT A. KNABE, deceased, and on behalf of all statutory beneficiaries, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | DOCKET NO: 05cv10364 PBS |
| RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT HOLDINGS, INC. a Delaware Corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, COLGAN AIR, INC., a Virginia Corporation d/b/a US Air Express, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PARTIES' JOINT STATEMENT PURSUANT TO
## FED.R.CIV.P.26(f) AND L.R. 16.1(b)

The parties to the above-captioned matter, by and through their attorneys, hereby

state that:

1.    Pursuant to Fed.R.Civ.P. 26(f) and L.R. 16.1(b), they conferred for the

purpose of:

a.    Preparing an agenda of matters to be discussed at the scheduling conference;

b.    Preparing a proposed pre-trial schedule for the case that includes a plan for discovery; and

c.    Considering whether they will consent to trial by a magistrate judge.

2.    After consideration of the topics contemplated by Fed.R.Civ.P. 16(b) and

26(f) the parties propose the following pretrial schedule.

961075v1

| **Pretrial Activity** | **Date** |
|---|---|
| Required Disclosures in accordance with 26(a)(1)(E) (14 days after the scheduling conference) | 10/12/05 |
| Written Discovery Requests | 11/18/05 |
| Joinder of Additional Parties and/or Amendment of Pleadings | 12/2/05 |
| All fact discovery completed including depositions of parties and lay witnesses | 01/30/06 |
| Defendants' Proposed Deadlines[1] | |
| **Expert Disclosures** | |
| Disclosures of name and address of expert witnesses together with experts' written report and supplementation. | |
| Plaintiff | 02/20/06 |
| Defendant | 03/30/06 |
| **Expert Depositions** | |
| Plaintiff | 04/28/06 |
| Defendant | 05/30/06 |
| All dispositive motions filed | 30 days after the close of all discovery (i.e. 6/30/06) |
| Oppositions to Dispositive Motions Filed | 7/31/06 |
| Hearing on Dispositive Motions | 09/08/06 |
| All motions in limine filed | 09/15/06 |
| Hearing on motions in limine | 9/29/06 |
| Final Pre-Trial Conference | 10/15/06 |
| Trial | 11/01/06 |

---

[1] After conferring on an agreed to joint scheduling statement, the parties were unable reach an agreement with respect to the scheduling of Expert Disclosure and Dispositive Motions deadlines and each submit their proposals herein for the court's consideration.

| Plaintiffs' Proposed Deadlines[2] | |
|---|---|
| Plaintiff's expert designation deadline | 02/20/06 |
| Defendant's expert designation deadline | 03/30/06 |
| Expert discovery deadline | 04/30/06 |
| Summary Judgment Motion filing deadline | 05/30/06 |
| Opposition to Summary Judgment Motions | 06/15/06 |
| Hearing on Summary Judgment or Pretrial Conference | 07/18/06 @ 2:00 p.m. |
| Trial | August 7, 2006 |

Trial Estimate – 14-21 days.

3.    Other Matters

    a.    Trial by Magistrate.  The parties do not consent to trial before a U.S. Magistrate Judge.

    b.    Certificate of Consultation.  The parties will submit the Certificate of Consultation under separate cover.

    c.    Settlement Proposal.  Plaintiff has recently presented a settlement demand book to defendants in this case.

    d.    Consolidation.  Raytheon and the plaintiffs are agreeable to the consolidation of the Dean and Weiler cases for the purposes of discovery. Raytheon and the plaintiffs agree that the discovery deadlines of both cases should be the same.

---

[2] Counsel for the plaintiffs seek to adopt the same schedule as that ordered by the Court in the related Dean case. (No. 05-10155-PBS).

3

e.    <u>Agenda</u>

(i)    Approve and/or establish discovery, motion and trial schedule; and

(ii)    Such other matters as the Court may find appropriate and useful to discuss.

| The Plaintiff, | The Defendants, |
|---|---|
| LISA WEILER, ADMINISTRATRIX, | RAYTHEON COMPANY, RAYTHEON |
| By her attorneys, | AIRCRAFT HOLDINGS, INC., |
| | RAYTHEON AIRCRAFT COMPANY AND |
| /s/ Mary Schiavo | RAYTHEON AIRCRAFT CREDIT |
| | CORPORATION |
| | By their attorneys, |
| Mary Schiavo, *Pro Hac Vice* | |
| Motley Rice LLC | /s/ Gary W. Harvey |
| 28 Bridgeside Boulevard | |
| P.O. Box 1792 | |
| Mount Pleasant, SC  29465 | Peter C. Knight, BBO # 276000 |
| (843) 216-9374 | Gary W. Harvey, BBO #547993 |
| | MORRISON MAHONEY LLP |
| and | 250 Summer Street |
| | Boston, MA 02210 |
| Robert S. McConnell, BBO #550625 | (617) 439-7500 |
| MOTLEY RICE LLC | |
| 321 South Main Street | and |
| P.O. Box 6067 | |
| Providence, RI | Michael G. Jones, *Pro Hac Vice* |
| (401) 457-7700 | KS Bar 14511 |
| | Martin, Pringle, Oliver, Wallace |
| |     & Bauer, L.L.P. |
| | 100 North Broadway, Suite 500 |
| | Wichita, KS 67202 |
| | (316) 265-9311 |
| | (316) 265-2955 (facsimile) |

Dated:  September 22, 2005

961075v1

**Other Documents**
1:05-cv-10364-PBS Weiler v. Raytheon Company et al

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Harvey, Gary entered on 9/22/2005 at 3:24 PM EDT and filed on 9/22/2005

**Case Name:**    Weiler v. Raytheon Company et al
**Case Number:**    1:05-cv-10364
**Filer:**
**Document Number:** 21

**Docket Text:**
JOINT STATEMENT re scheduling conference *(by all parties)*. (Harvey, Gary)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=9/22/2005] [FileNumber=1134435-0
] [6cbd00bc2528c5244a23fb80aec399511a54c259d07af9f857e54dbc73ea8780649
56bf85828167eee8a6079f8b842d91b16c077a9fb6f755d4fd2c78272dcfb]]

**1:05-cv-10364 Notice will be electronically mailed to:**

Gary W. Harvey    gharvey@mail.mm-m.com, llombard@mail.mm-m.com

Peter C. Knight    pknight@morrisonmahoney.com, rnesselle@morrisonmahoney.com

Robert J. McConnell    bmcconnell@motleyrice.com, mschiavo@motleyrice.com

Tory A. Weigand    tweigand@mail.mm-m.com, llombard@mail.mm-m.com

**1:05-cv-10364 Notice will not be electronically mailed to:**

Thomas B. Almy
Dombroff & Gilmore, P.C.
1676 International Drive
McLean, VA 22102

Mark A. Dombroff
Dombroff & Gilmore
1676 International Drive, Penthouse
McLean, VA 22101

Jodi Flowers
Motley Rice LLC

321 South Main Street
P.O. Box 6067
Providence, RI 02940

Robert Haefele
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940

Michael G. Jones
Martin, Pringle, Oliver, Wallace & Bauer, L.L.P.
100 North Broadway
Wichita, KS

Jack McConnell , Jr
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02903

Don Migliori
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02903

Ronald L. Motley
Motley Rice LLC
321 South Main St
P.O. Box 6067
Providence, RI 02940

Mary Schiavo
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940

Elizabeth Smith
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940

# EXHIBIT "C"

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

Lisa Weiler
Plaintiff,

        V.

Raytheon Company, et al
Defendant.

Civil Action Number
05-10364-PBS

September 28, 2005

## SCHEDULING ORDER

Saris, D.J.,

Fact Discovery deadline: 1/30/06

Plaintiff's expert designation deadline: 2/20/06

Defendant's expert designation deadline: 3/30/06

Expert discovery deadline: 5/30/06

Summary Judgment Motion filing deadline: 6/30/06

Opposition to Summary Judgment Motions: 7/15/06

Hearing on Summary Judgment or Pretrial Conference: 8/9/06 at 2:00 p.m.

Final Pretrial Conference: 9/6/05 at 2:00 p.m.

Jury Trial: 9/18/05 at 9:00 a.m.

Case to be referred to Mediation program: early Winter, 2005

By the Court,

/s/ Robert C. Alba
Deputy Clerk

# EXHIBIT "D"

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CONSOLIDATED UNDER
CASE NO. 05-10155 PBS**

| | | |
|---|---|---|
| YISEL DEAN, et. al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 05 CV 10155 PBS |
| | ) | |
| RAYTHEON COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| LISA A. WEILER, et. al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 05 CV 10364 PBS |
| | ) | |
| RAYTHEON COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## JOINT PROPOSED REVISION TO THE SCHEDULING ORDER

Pursuant to Magistrate Judge Sorokin's Order on Discovery Motions of March 2,

2006, the parties hereby submit this Joint Proposed Revision to the Scheduling Order.

The parties' proposed schedules are set forth below:

| | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| Deadline for defendants to produce documents pursuant to Magistrate Judge Sorokin's Order: | 4/10/06 | 4/10/06 |
| Fact discovery deadline: | 5/24/06 | 5/24/06 |

| | | |
|---|---|---|
| Plaintiff's expert designation deadline: | 6/9/06 | 6/9/06 |
| Defendant's expert designation deadline: | 7/9/06 | 7/9/06 |
| Expert discovery deadline: | 8/11/06 | 8/11/06 |
| Summary Judgment Motion Filing Deadline: | --- | 9/18/06[1] |
| Opposition to Summary Judgment Motions: | --- | 10/13/06[1] |
| Hearing on Summary Judgment | --- | 11/13/06[1] |
| Final Pretrial Conference: | 9/6/05[2] | TBD |
| Jury Trial: | 9/18/05[2] | TBD |

## **Statement By Plaintiffs In Support Of Their Proposed Schedule**

Plaintiffs do not believe that summary judgment is necessary or appropriate in this case. As this Court noted at the September 2005 status conference, this case involves disputes of fact that will come down to competing opinions of expert witnesses. Given that reality, plaintiffs do not believe there is any need to put off the September 18, 2006 trial date in order to accommodate a briefing schedule for summary judgment. Plaintiffs further believe that the additional discovery ordered by Magistrate Sorokin can be completed without putting off the trial date.

## **Statement By Defendants In Support Of Their Proposed Schedule**

The only difference between plaintiffs' and defendants' proposals is the inclusion of summary judgment in the schedule. Defendants have also consistently indicated their desire to present summary judgment arguments to substantially narrow if not entirely dispose of the case. This court's prior orders have accounted for that by including

---

[1] Consistent with Summary Judgment deadline spacing from this Court's order of July 27, 2005.
[2] Unchanged from this Court's order of September 28, 2005.

2

summary judgment deadlines spaced consistently with those proposed herein. Magistrate Sorokin's discovery order recognized that the additional discovery allowed would push back the case schedule, which naturally includes the summary judgment dates. The trial date plaintiffs seek to hold was set based on the assumption that fact discovery would close in January, not May, as it will now. Defendants' proposal merely shifts the entire case schedule back accordingly, and leaves pretrial and trial dates to be determined since they may depend more on the court's calendar and may be impacted by the summary judgment outcome.

Respectfully Submitted,

Attorneys for the Plaintiffs                    Attorneys for Raytheon Defendants


___/s/ Jacob T. Elberg_____              _____/s/  Gary W. Harvey_____
David A. Bunis (BBO No. 550570)                Peter C. Knight (BBO No. 276000)
Jacob T. Elberg (BBO No. 657469)               Gary W. Harvey (BBO No. 547993
DWYER & COLLORA, LLP                           MORRISON MAHONEY LLP
600 Atlantic Avenue                            250 Summer Street
Boston, MA  02210                              Boston, MA 02210
(617) 371-1000                                 (617) 439-7500

and                                            and

Mary Schiavo, Esq.                             William L. Oliver
J.B. Harris, Esq.                              Michael G. Jones
Marlon Kimpson, Esq.                           MARTIN, PRINGLE, OLIVER,
28 Bridgeside Blvd.                            WALLACE & BAUER, LLP
P.O. Box 1792                                  100 North Broadway, Suite 500
Mount Pleasant, SC 29465                       Wichita, Kansas 67202
(843) 216-9374                                 (316) 265-9311


Dated:  March 10, 2006


3

### CERTIFICATE OF SERVICE

I, Jacob T. Elberg, hereby certify that a true and correct copy of this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on March 10, 2006.

_____ /s/ David A. Bunis _____

4

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CONSOLIDATED UNDER
CASE NO. 05-10155 PBS**

|  |  |
|---|---|
| YISEL DEAN, et. al., | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 05 CV 10155 PBS |
| RAYTHEON COMPANY, et al., | ) |
| Defendants. | ) |

|  |  |
|---|---|
| LISA A. WEILER, et. al., | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 05 CV 10364 PBS |
| RAYTHEON COMPANY, et al., | ) |
| Defendants. | ) |

## <u>JOINT MOTION TO EXTEND DISCOVERY DEADLINES</u>

The parties respectfully move the Court to extend the discovery deadlines previously ordered by the Court.  In support of this Motion, the parties state as follows:

1.    The parties have been working diligently to complete fact discovery as outlined in Magistrate Judge Sorokin's order of March 2, 2006 [docket # 85].

2.    Due to difficulty in scheduling the depositions outlined in Magistrate Judge Sorokin's order, the parties have agreed to extend the discovery deadlines adopted

by this Court on March 15, 2006 [granting the parties' proposed schedule, docket # 86].

      3.      Counsel have conferred and propose the following changes to the schedule:

|  | Current Deadline | Proposed Deadline |
|---|---|---|
| Fact discovery: | 5/24/06 | 6/30/06 |
| Plaintiffs' Expert Designation: | 6/9/06 | 7/21/06 |
| Defendants' Expert Designation: | 7/10/06 | 8/25/06 |
| Expert Discovery: | 8/11/06 | 10/1/06 |
| Summary Judgment Motion Filings: | 9/18/06 | 10/18/06 |
| Opposition to Summary Judgment: | 10/13/06 | 11/13/06 |
| Hearing on Summary Judgment: | 11/17/06 | 12/15/06 |
| Final Pretrial Conference: | 2/15/07 | 2/15/07 |
| Jury Trial: | 2/26/07 | 2/26/07 |

      4.      The proposed new schedule will not interfere with the pretrial conference, or trial dates previously set by the Court.

      **WHEREFORE**, the parties jointly move that the discovery and motion deadlines be changed as proposed above.

Respectfully Submitted,

Attorneys for the Plaintiffs

   /s/ Jacob T. Elberg
David A. Bunis (BBO No. 550570)
Jacob T. Elberg (BBO No. 657469)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 371-1000

and

Attorneys for Raytheon Defendants

   /s/ Gary W. Harvey
Peter C. Knight (BBO No. 276000)
Gary W. Harvey (BBO No. 547993)
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

and

Mary Schiavo, Esq.
J.B. Harris, Esq.
Marlon Kimpson, Esq.
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, SC 29465
(843) 216-9374

William L. Oliver
Michael G. Jones
MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, LLP
100 North Broadway, Suite 500
Wichita, Kansas 67202
(316) 265-9311

Dated:  July 11, 2006

## CERTIFICATE OF SERVICE

I, Jacob T. Elberg, hereby certify that a true and correct copy of this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 11, 2006.

/s/ Jacob T. Elberg

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I, David A. Bunis, hereby certify that on July 5, 2006, I conferred with Defendant's counsel, Michael Jones, pursuant to Local Rule 7.1(A)(2).  Defendant's counsel assents to this motion.

/s/ David A. Bunis

Date: July 11, 2006

3

# EXHIBIT "E"

TOM PEAY

Page 1

```
 1                   UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3

 4
       COLGAN AIR, INC.,                    )
 5                                          )
                                            )
 6                         Plaintiff,       )
                                            )
 7                                          )
          vs.                               )Civil Action No.:
 8                                          )1:05 CV 213
                                            )
 9     RAYTHEON AIRCRAFT COMPANY,           )
                                            )
10                                          )
                           Defendant.       )
11                                          )

12

13

14                    D E P O S I T I O N

15        The deposition of TOM PEAY taken on behalf of the

16     Plaintiff, Colgan Air, pursuant to the Federal Rules of

17     Civil Procedure before:

18                         VESTA L. YORK, CSR, CRR
                           KELLEY, YORK & ASSOCIATES, LTD.
19                         Suite 220, 200 North Broadway
                           Wichita, KS   67202
20

21     a Certified Shorthand Reporter of Kansas, at Suite 500,

22

23     100 North Broadway, Wichita, Sedgwick County, Kansas, on

24

25     the 1st day of August, 2005, at 9:12 a.m.
```

TOM PEAY

Colgan Air, Inc. v. Raytheon Aircraft Company

8/1/2005

Page 38

```
1    customers' issues, I have the ability to pull
2    up supervisory reports and look at the number
3    of calls, who they're from and the topics
4    they are.  If I see one that's of interest to
5    me, I can pull it up and look at the report
6    and see what the issue was.  Usually if it's
7    something of nonroutine importance, they will
8    come in to me and say, our customer just
9    called and this is his issue that he has, and
10   what do you -- how do you want to address it?
11 Q.  I think you mentioned supervisory reports.
12   What are those?
13 A.  It's a term we use for the computer program.
14   I can go in and I can, with this computer
15   program, enter a serial number of an aircraft
16   or enter a customer name or a company name
17   and the base that they operate out of and
18   pull up all correspondence that we have and
19   review it.
20 Q.  How long have you had that computer system?
21 A.  Oh, I would guess maybe five years.
22 Q.  So about 2000, approximately?
23 A.  Yeah.  It may have been there longer than
24   that.  We're in the process of transitioning
25   to a newer computer program that does a
```

Page 39

```
1    little more than this one does, so --
2  Q.  Okay.  The one you have now, can it -- can
3    you track -- or strike that.
4          Can you go into the computer and ask
5    it to say, show me all the reports on a
6    particular part or a particular structure?
7  A.  I believe so.  I usually ask somebody to do
8    that for me, so -- but they get it from
9    somewhere.  Yes, we can track by part numbers
10   and issues with part numbers.
11 Q.  Okay.  Is it more sophisticated than that?
12   Can it track by just issues as opposed to a
13   part number?
14 A.  I believe so.  It's just to track by issue,
15   you have to really be specific, because if
16   you use just a couple of key words, you're
17   going to get a lot of data and then you have
18   to go filter through it, so -- and its exact
19   limitations I'm not sure of.  This new
20   program we're at you can nail it down to the
21   pinpoint of an item.
22 Q.  I take it, though, since you said that other
23   people do it, is that you don't review the --
24   use the program to review for a particular --
25   to look for a particular part number or
```

Page 40

```
1    issues?
2  A.  If I -- if I want to look for a particular
3    part number, I will go to my service engineer
4    and say, "I need the data history on this
5    part."  And within a day he'll be in with
6    everything I need to know.
7  Q.  What's RAPID --
8  A.  RAPID --
9  Q.  -- all caps, R-A-P-I-D?
10 A.  Yes.  RAPID is our parts distributorship for
11   the factory.
12 Q.  Okay.  Now when you say "our," who are you
13   referring to?
14 A.  Raytheon Aircraft, RAPID is a subsidiary of
15   them, just like RAAS is a subsidiary to them.
16   And it's set up -- they focus only on parts.
17   They don't address technical issues.  They
18   don't address production improvements.  They
19   address getting the part to the customer.
20 Q.  Okay.  If a customer needs a part, they call
21   RAPID, right?
22 A.  That's correct.
23 Q.  Okay.  Does RAPID still exist?
24 A.  Yes.
25 Q.  I thought I saw something in the paperwork
```

Page 41

```
1    that they renamed it to something else at
2    some point.  But it's still called RAPID?
3  A.  Yes, it is.  I didn't read that, so you just
4    gave me a bit of news.
5  Q.  Well, I'm just looking at a piece of paper
6    that says Raytheon Aircraft Parts Inventory
7    and Distribution Company, and that RAPID
8    changed its name to that.  But as far as you
9    know, it's -- you'd call RAPID, that's --
10 A.  Before it was RAPID, it was just the parts
11   department.
12 Q.  Okay.  And what they do is if a customer
13   needs a part, they call up and ask, and they
14   ship it out to the customer, correct?
15 A.  You call RAPID.  They will tell you
16   immediately if they have the part in stock,
17   what its price is and when it should reach
18   you.
19 Q.  Okay.
20 A.  And if they don't have it in stock, they'll
21   tell you when they expect it to be in stock.
22 Q.  Are you aware of reports of trim cables
23   coming off the drums, actuator drums?
24 A.  Only the one at Colgan.
25 Q.  What about coming off the actuator drums?
```

11 (Pages 38 to 41)

Olender Reporting, Inc.
Washington, D.C.
(888) 445-3376
Baltimore, MD
WORLDWIDE
Ft. Lauderdale, FL

MICHAEL J. SCHEIDT

Colgan Air, Inc v. Raytheon Aircraft Company

8/4/2005

Page 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION


COLGAN AIR, INC.,                    )
                                     )
                                     )
                  Plaintiff,         )
                                     )
                                     )
        vs.                          )Civil Action No.:
                                     )1:05 CV 213
                                     )
RAYTHEON AIRCRAFT COMPANY,           )
                                     )
                                     )
                  Defendant.         )
                                     )




D E P O S I T I O N

        The videotape deposition of MICHAEL J. SCHEIDT taken

on behalf of the Plaintiff, Colgan Air, pursuant to the

Federal Rules of Civil Procedure before:

                VESTA L. YORK, CSR, CRR
                KELLEY, YORK & ASSOCIATES, LTD.
                Suite 220, 200 North Broadway
                Wichita, KS   67202


a Certified Shorthand Reporter of Kansas, at Suite 500,


100 North Broadway, Wichita, Sedgwick County, Kansas, on


the 4th day of August, 2005, at 3:03 p.m.

## Page 1

```
 1        IN THE STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
 2              ALEXANDRIA DIVISION

 3   - - - - - - - - - - - - - - - x
     COLGAN AIR, INC.,
 4              Plaintiff,     :
     vs.                       :  Civil Action
 5                             :  No. 1:05cv213
     RAYTHEON AIRCRAFT COMPANY, :
 6                             :
                Defendant.     :
 7   - - - - - - - - - - - - - - - x

 8
                     McLean, Virginia

 9
              Tuesday, July 12, 2005

10

11

12

13

14       Videotaped deposition of PERRY SARLUCA, a

15   witness, called for examination by counsel for

16   defendant, pursuant to notice, at the offices of

17   Dombroff & Gilmore, 1676 International Drive,

18   Penthouse, McLean, Virginia 22101, before Sandria

19   L. Cox, a notary public in and for the Commonwealth

20   of Virginia, beginning at 1:10 p.m., when were

21   present on behalf of the respective parties:

22
```

## Page 2

```
 1   APPEARANCES:

 2

 3      FOR THE PLAINTIFF:

 4      THOMAS B. ALMY, ESQ., Dombroff & Gilmore,
        1676 International Drive, Penthouse,
 5      McLean, Virginia  22101.

 6

        FOR THE DEFENDANT:
 7

 8      ROBERT T. HALL, ESQ., and HOLLY PARKHURST
        ESSING, ESQ., Hall, Sickels, Frei &
        Kattenburg, P.C., 12120 Sunset Hills
 9      Road, Suite 150, Reston, Virginia
        20190-3231.

10

11

12

13

14

15

16

17

18

19

20

21

22
```

## Page 3

```
 1                   I-N-D-E-X

 2                  EXAMINATION BY COUNSEL FOR
                  DEFENDANT,       PLAINTIFF,
 3   WITNESS        MR. HALL:        MR. ALMY:

 4

 5   Perry Sarluca      4, 123          116

 6

 7

 8

 9

10

11

12              E-X-H-I-B-I-T-S
           (Exhibit No. 46 retained by Mr. Hall.)

13

14   SARLUCA EXHIBIT

15   No. 44 (Sarluca e-mail to Jolico)       65

16   No. 45 (Excerpt of GMM)                107

17   No. 46 (GMM in Entirety)               109

18   No. 47 (Rodriguez/Sarluca Letter)      124

19   No. 48 (Employee Counseling Form)      124

20

21

22
```

## Page 4

1    P-R-O-C-E-E-D-I-N-G-S

2    VIDEO OPERATOR: May it please the Court,

3    ladies and gentlemen of the jury, my name is

4    William Sale. I'm the video have operator and

5    producer. My business address is 3444 Fairfax

6    Drive in Arlington, Virginia; area code

7    703-527-5100.

8        Today is Tuesday, July 12, 2005. The

9    time is 1:15 p.m. We're about to take the

10   deposition of Perry Sarluca, who is a witness in

11   the matter of Colgan Air, Inc., plaintiff, versus

12   Raytheon Aircraft Company, defendant, Civil Action

13   No. 1:05 cv 213 in the Federal District Court for

14   the Eastern District of Virginia, Alexandria

15   Division.

16       The deposition is being taken at 1676

17   International Drive.

18       At this time would counsel please

19   introduce themselves and their interested parties.

20       MR. HALL: May it please the Court,

21   ladies and gentlemen of the jury, my name is Robert

22   Hall, and together with Holly Essing, we're

Page 33

1  resolving that freeplay problem other than
2  replacing the actuator?
3      A. I know of no other options other than to
4  replace.
5      Q. So walk me through.  When Mr. Vallejo
6  advised you it had not passed its freeplay check
7  and ergo it needed to have its actuators replaced;
8  correct?
9      A. Correct.
10     Q. -- what was your role in getting
11 replacement parts?
12     A. My role is in making phone calls and
13 tapping whatever resources I have to make those
14 parts available.
15     Q. Prior to making those phone calls, is
16 anyone engaged in taking the failed actuators out?
17     A. At that point, no, because I needed to
18 know logistically if we had any available to begin
19 with.
20     Q. When you say logistically, are you
21 talking about having replacement actuators there at
22 Hyannis?

Page 34

1      A. Yes.
2      Q. Or elsewhere in the system?
3      A. Yes.  Correct.
4      Q. How would you determine what part
5  numbers you needed for replacement actuators?
6      A. I went to the IPC and looked them up.
7      Q. The IPC is -- well, "PC" is "parts
8  catalog."  What does the "I" stand for?
9      A. "Intermediate Parts Catalog."
10     Q. And who publishes that?
11     A. That is a Raytheon publication.
12     Q. Did you personally go check the IPC?
13     A. Yes, I did.
14     Q. All right, sir.  What did it tell you
15 were the replacement actuators by part number?
16         It's not a memory test what the numbers
17 were, but what did it tell you?  Did it give you
18 specific part numbers?
19     A. Yes, it did.
20     Q. All right, sir.  Were they the same part
21 number for the left as for the right, or different
22 part numbers?

Page 35

1      A. In this particular case for this
2  aircraft and serial number, they were the same
3  numbers for the right and the left.
4      Q. And did you walk down the hall and look
5  in the bin to see if you had those actuators?
6      A. Yes, I did.
7      Q. And did you have those actuators?
8      A. I did not.
9      Q. What did you do at that point?
10     A. At that point I called my headquarters
11 in Manassas, advised them of the situation that I
12 needed these, and they went to look.
13         Also after that I called Rapid to find
14 out if Rapid had any available in the system, and
15 if they did, if I could procure them.
16     Q. For folks looking in on this, what is
17 "Rapid"?
18     A. Rapid is a major parts organization
19 where we get all of our 1900-D parts from, and C
20 parts.
21         And that's what they deal with.  They
22 deal with all types of aircraft.

Page 36

1      Q. Just for clarity's sake, when you say
2  both the left and right actuators had the same part
3  number, did they have different ending numbers?
4      A. They both ended in the same: -3.
5      Q. -3?
6      A. Yes.
7      Q. So it was some six- or seven-digit
8  number -3?
9      A. Yes.
10     Q. Yes?
11     A. Yes.
12     Q. Where did you finally locate replacement
13 actuators?
14     A. For this particular aircraft?
15     Q. Yes, sir.
16     A. I never did.  No one had any -3's.
17     Q. What did you do next?
18     A. At that point I looked in the parts
19 catalog to see if there was anything in there that
20 would be compatible to this particular serial
21 number aircraft.
22     Q. You say the IPC, the parts catalog?

Page 57

```
1     Q. And you stayed beyond your 7 a.m. shift
2  end until 3 p.m.
3     A. That's correct.
4     Q. And then you went home and did not come
5  back to the airport until the day of the crash.
6     A. That's correct.
7     Q. All right, sir.  Help me understand what
8  date and time you took the drum out.
9     A. This was at Monday morning,
10 approximately 8:30.
11    Q. So by Monday morning --.
12       Just to make absolutely certain we're on
13 the same time track, you and I -- the 7 p.m. that
14 you came in that started our conversation about 240
15 CJ was 7 p.m. on Sunday night?
16    A. Sunday night.
17    Q. So by 8 --
18    MR. ALMY:  I'm going to object.  I think
19 this is more confusing.  You made some assumptions
20 from his earlier answers about what days we're
21 talking about and I think you got shifted.  I think
22 you have lost a day.
```

Page 58

```
1     MR. HALL:  Well, that's --.  The "we"
2  and "we."
3     BY MR. HALL:
4     Q. I need to straighten that out, because I
5  had understood you came in at 7 o'clock.  The plane
6  arrived thereafter.  Services were started on it
7  and you left at 3 p.m. the next day and at that
8  point actuators had been removed but the new
9  actuators had not been installed.
10    A. Correct.
11    Q. And that you hadn't been there between
12 that 3 p.m. and the date of the crash. Is that your
13 testimony?
14    A. Between 3 p.m. and the day of crash?
15    Q. Yes.
16    A. I had not been there.
17    Q. So when were the new actuators
18 installed?
19    A. What happened is --.
20       Do you want me to explain the whole
21 thing?
22    Q. I would appreciate it.
```

Page 59

```
1     A. What happened is on Sunday evening,
2  after exhausting logistical means, calling
3  Manassas, calling Rapid to get some actuators to
4  get this aircraft off the ground, I did a
5  configuration check and I had some actuators in
6  stock.
7        I made a phone call to Beech tech reps
8  and asked them if I could install these actuators
9     Q. And approximately when time did you
10 place that call?
11    A. It was in the early morning hours.
12    Q. One, two, three, four a.m.?
13    A. The whole thing started around 1 a.m. in
14 the morning.  12:30 - 1 a.m.
15    Q. Did you get a live person on the other
16 end of the line?
17    A  Yes, I did.
18    Q. Do you remember who you spoke to?
19    A. Mr. Joliet.
20    Q. Mr. Joliet?
21    A  Yes.
22    Q. What did he advise you?
```

Page 60

```
1     A. At that point he couldn't do anything,
2  the reason being I needed a PO.  It was after hours
3  and he had to come in and all that.
4        So I got authorization for a PO.  He did
5  come in.  I gave him the information I had.
6        I had actuator XYZ part number.  "Is it
7  possible to use these actuators on this serial
8  number aircraft?"
9     Q. And he said he would have to get back to
10 you?
11    A  Yes.  He did a lot of research on it.
12    Q. You said you needed a PO.  That's a
13 purchase order?
14    A. Purchase order.
15    Q. Purchase order for what?
16    A. So that he would get paid for coming
17 in.  It was after hours.  What we were doing is
18 like an engineer order.
19    Q. Okay.  So when you called -- you had a
20 number to call at Raytheon?
21    A. Yes.  Raytheon hotline number.
22    Q  When you called it, a human answered?
```

Colgan Air v. Raytheon                    CondenseIt™                        Perry Sarluca

---

Page 93

1  A. I don't know what a lead line is.
2  Q. Okay. All right.
3     Now, when, if ever, did you learn that
4  the -7/-6 combination of actuators were not
5  acceptable in that bird?
6  A. I had put in the request for it. I
7  really don't know. I don't know.
8  Q. All right. When you contacted Colgan
9  Manassas whether they had a replacement cable, did
10 you have any further conversations with Colgan
11 Manassas about replacement actuators?
12 A Yes, I did. In fact it was the same
13 gentleman who had been working that night before,
14 and he told me he was on the international net or
15 whatever they have and he could not locate any.
16 Q. Now, this is Mr. Jolico or somebody from
17 Colgan?
18 A. No. One of the Colgan employees in
19 parts.
20 Q. So what was the plan at the time you
21 left for getting placement actuators?
22 A. At the time I left there was no plan.

---

Page 94

1  As far as I was concerned, it was a dead issue and
2  the plane would sit until we got the proper
3  actuators or this situation was resolved.
4  Q. When did you decide that the -7/-6 were
5  not the proper actuators?
6  A. After the cable came off the drum, I
7  made a phone call back to Mr. Joliet and I
8  explained -- I said to him, We have a problem
9  here. And his reply to me was, Don't tell me the
10 cable came off the drum.
11    I said, Yes. How did you know?
12    He didn't get into all the specifics
13 about it. And I'm not going to sit here and say
14 what I think he said or anything.
15    At that point I was a little frustrated,
16 you know. Been trying to work this situation
17 here.
18    I said, Okay, what are our other
19 options?
20    And he offered to me sending out a
21 fielding kit and modifying the actuators and I told
22 him I couldn't authorize that, I wouldn't do that.

---

Page 95

1  I just don't have the repair station license to do
2  any of that and modify and overhaul equipment or
3  whatever.
4     At that point I said, I think we need to
5  elevate this higher. It's beyond me. So let me
6  talk to my DOM right now and you guys can talk
7  about it and work it out.
8     And at that point I was done with it.
9  Q. Were you of a mind that the -6/-7
10 combination had caused the cable to come off the
11 drum?
12 A. I had suspected it did.
13 Q. Do you know how it did that?
14 A. I have no idea.
15 Q. Did Mr. Jolico say anything to you that
16 suggested why the cable came off the drum?
17 A. He said something to me and I didn't pay
18 too much attention to it and I don't want to
19 misquote him or anything.
20    It was a long time ago we had this
21 conversation. But he said something to me that
22 sent up a red flag and that's when I was thinking

---

Page 96

1  "This is not a good idea."
2  Q. Mr. Jolico was not -- was he the person
3  who could tell you whether they had actuators in
4  inventory?
5  A. I really don't know if he has that
6  capacity. I believe he's just a tech rep.
7  Q. Was there another number at Raytheon
8  that you could call to determine if it had parts by
9  a particular catalog number in stock?
10 A. Rapid were the only people that I knew of
11 and I had already talked to them and they told me
12 there was none available. Nothing.
13 Q. The -7/-6 combination, do you know how
14 it was that Colgan happened to have that in stock
15 there in Hyannis?
16 A. We actually had quite a few back there.
17 And I knew some of them were C models or whatever.
18    There was two others that were just way
19 too far out of the serial number list. I
20 eliminated those.
21    And this was the best option I could
22 present to someone to help resolve the situation.

---

**Page 113**

1  A. Two years ago.
2  Q. And as part of your duties with the
3  Guard, does it involve aviation as well?
4  A Yes, it does.
5  Q. What do you do for the Guard?
6  A. I repair and operate Blackhawk
7  helicopters.
8  Q. At one point you were asked whether or
9  not the elevator was removed during the actuator
10  replacement that was done, and I think you
11  testified that you told Mr. Keenan that he didn't
12  have to remove the elevator.
13  Can you explain why you told Mr. Keenan
14  that?
15  A. Yes. As we already know, we have on it
16  on the record, I have many years of experience in
17  aviation.
18  My feeling on the whole thing was that
19  the aircraft was incorporated with access panels
20  and the ability to accomplish this job without
21  having to remove the elevator.
22  The access panels were there, everything

**Page 114**

1  was readily accessible, and I felt that there was
2  no need to remove the elevator.
3  In the process of removing the elevator,
4  we would open up a whole another focus of
5  inspection items that had already -- that really
6  didn't need to be done. It was just an excess
7  amount of work.
8  And it was my professional opinion that
9  we didn't have to take the elevator off.
10  Q. You also testified earlier in response
11  to a question, I think, that when you were talking
12  to the Raytheon representative, I think Mr. Jolico,
13  that when he responded that -- asked if the cable
14  came off the drum, that that ran up red flags for
15  you.
16  What did you mean by "red flags"?
17  A. In our conversation he said something to
18  me that raised my interest, that maybe there was a
19  possibility that this could have happened or maybe
20  there was some form of knowledge that there was a
21  possibility that this could have happened.
22  Q. Did you understand that he was referring

**Page 115**

1  to or raising a question about the actuators?
2  A. I'm sorry?
3  Q. Did you understand from what he was
4  saying to you that there might be a problem with
5  having the actuators in there?
6  A Yes, I did understand that. I was clear
7  on that, that there might be a problem.
8  Q. And that's what you meant when you were
9  referring to a "red flag"?
10  A. Exactly. When I said there was a "red
11  flag," that's exactly what I was referring to.
12  Q. Now, going back to the process, at some
13  point you realized you needed the new actuators,
14  the -3's that were in the airplane.
15  A. Uh-huh.
16  Q. At some point did you call Raytheon for
17  a parts supply?
18  A Yes, I did.
19  Q. Did you ask them if they had -3's
20  available?
21  A. Yes, I did. The people who I talked to
22  was Rapid. As I said earlier, Rapid is a major

**Page 116**

1  parts supplier for this type aircraft and other
2  aircraft.
3  They explained to me that they did have
4  -3's but they could not release them.
5  In fact, they had plenty of actuators.
6  They could not release those actuators because they
7  were being modified and will be called an up number
8  to a -27 and -28.
9  Now, the -27 and -28 is listed in the
10  parts books, and when I asked the Rapid employee
11  "Can I get a 27 and a 28?" he said no.
12  And I said, "Why not?"
13  And he said, "Because we haven't made
14  them yet."
15  And I said, "Well, what's the chances of
16  you being able to slide me two -3's?"
17  And he said, "None. They're all on hold
18  here and we will not release any actuators,
19  period. If you procure them, you will have to
20  procure them another way."
21  VIDEO OPERATOR: Excuse me, sir. I need
22  to change the tape.

Page 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

COLGAN AIR, INC.,                         )
                                          )
                                          )
                    Plaintiff,            )
                                          )
                                          )
        vs.                               )Civil Action No.:
                                          )1:05 CV 213
                                          )
RAYTHEON AIRCRAFT COMPANY,                )
                                          )
                                          )
                    Defendant.            )
                                          )


D E P O S I T I O N

     The videotape deposition of KIMBERLY N. ERNZEN taken

on behalf of the Plaintiff, Colgan Air, pursuant to the

Federal Rules of Civil Procedure before:

                    VESTA L. YORK, CSR, CRR
                    KELLEY, YORK & ASSOCIATES, LTD.
                    Suite 220, 200 North Broadway
                    Wichita, KS    67202

a Certified Shorthand Reporter of Kansas, at Suite 500,

100 North Broadway, Wichita, Sedgwick County, Kansas, on

the 4th day of August, 2005, at 10:29 a.m.

KIMBERLY N. ERNZEN

Colgan Air, Inc v. Raytheon Aircraft Company                                    8/4/2005

Page 6

1      VIDEOGRAPHER:  We're on the
2  record.
3      KIMBERLY N. ERNZEN,
4  having been first duly sworn on her oath to
5  state the truth, the whole truth, and nothing
6  but the truth, testifies as follows:
7      DIRECT EXAMINATION
8  BY MR. ALMY:
9  Q.  Ms. Ernzen, we met a moment ago.  I'm Tom
10     Almy, but I represent Colgan Air.
11 A.  Okay.
12 Q.  Okay.  Just for the record, could you give
13     your name and your business address.
14 A.  Sure.  Kimberly N. Ernzen, 9709 East Central,
15     Wichita, Kansas.
16 Q.  Okay.  And by whom were you employed?
17 A.  Raytheon Aircraft.
18 Q.  Okay.  And what's your position with Raytheon
19     Aircraft?
20 A.  Currently, I'm the Director of Technical
21     Support over in our customer support
22     division.
23 Q.  In the corporate hierarchy, where are you
24     with regard to Mr. Peay?
25 A.  Mr. Peay -- oh, Tom Peay?

Page 7

1  Q.  Yes.
2  A.  We're in different divisions.
3  Q.  Okay.
4  A.  So he works over for RAAS and I'm over in
5     customer support.
6  Q.  I see.  Okay.  For Raytheon Aircraft?
7  A.  Right.
8  Q.  Okay.  What's the -- just generally, can you
9     describe what the function of customer
10     support -- the customer support division is?
11 A.  We support all of the Raytheon Aircraft
12     products that -- besides just the 1900, we
13     support all of our propeller products, the
14     King Airs, the pistons, the Beechjet,
15     Premiers, Hawkers.  We provide technical
16     support.  And also our aftermarket sales,
17     parts, those types of things.
18 Q.  Does RAPID fall within your area?
19 A.  Within the customer support division, it
20     does.  I don't have a direct relationship
21     with that, but it is in the CSD division.
22 Q.  Okay.  CSD, Customer Support Division?
23 A.  Right.  Yes.  CSDD.
24 Q.  Okay.  And you said you were director of
25     technical support.  What -- just can you

Page 8

1      describe what that position is, what you do?
2  A.  What I do is I have responsibility over our
3      folks that man our call center that help with
4      the troubleshooting for all of the different
5      models, and then I also have responsibility
6      for our service engineers.
7  Q.  How is this call center different from the
8      technical reps that work for Mr. Peay?
9  A.  The same functionality.  They just deal
10     strictly with the 1900s.
11 Q.  Okay.
12 A.  We deal with all of the other products.
13 Q.  You don't deal with the 1900s?
14 A.  We do not deal with the 1900s.
15 Q.  And that goes back to the fact that, I
16     guess, the 1900's no longer in production, so
17     that Raytheon Aircraft has created a separate
18     entity that sort of monitors and operates the
19     1900?
20 A.  That's correct.
21 Q.  Would I be correct, if the 1900 was still in
22     production then, it would probably --
23     technical support would fall under your
24     group?
25 A.  Potentially.  They just -- they spun that off

Page 9

1      as a separate business entity.  We still do
2      handle out-of-production aircraft in our
3      world.
4  Q.  Okay.  But not the 1900s?
5  A.  But not the 1900s.
6  Q.  Okay.  Just generally, can you outline your
7      educational background after high school?
8  A.  Sure.  I have a Bachelor's in Aerospace
9      Engineering.  I have a Master's in Aerospace
10     Engineering, and I have an MBA.
11 Q.  And what years did you receive the -- those
12     degrees?
13 A.  '95 for the Bachelor's, '99 for the Master's
14     in Aero, and 2004 -- 2 thous -- hold on, I've
15     got to think when I just got the MBA.
16 Q.  That's close.  It's --
17 A.  2003 or '4.
18 Q.  Okay.
19 A.  2004, that's when it was.
20 Q.  Okay.  It's not a memory test.  That's all
21     right.  It just gives us an idea.
22 A.  Sure.
23 Q.  Now can you just, again, outline your
24     professional experience and jobs.
25 A.  Oh.  I've been in engineering, up until

3 (Pages 6 to 9)

Colgan Air, Inc v. Raytheon Aircraft Company

8/3/2005

Page 61

```
 1              UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
 2                 ALEXANDRIA DIVISION

 3

 4    COLGAN AIR, INC.,                )
                                       )
 5                                     )
                    Plaintiff,         )
 6                                     )
                                       )
 7        vs.                          )Civil Action No.:
                                       )1:05 CV 213
 8                                     )
      RAYTHEON AIRCRAFT COMPANY,       )
 9                                     )
                                       )
10                  Defendant.         )
                                       )
11

12

13

14              D E P O S I T I O N

15                 VOLUME II

16      The videotape deposition of ROBERT LANDON RAMEY

17   taken on behalf of the Plaintiff, Colgan Air, pursuant to

18   the Federal Rules of Civil Procedure before:

19                 VESTA L. YORK, CSR, CRR
                   KELLEY, YORK & ASSOCIATES, LTD.
20                 Suite 220, 200 North Broadway
                   Wichita, KS   67202
21

22   a Certified Shorthand Reporter of Kansas, at Suite 500,

23   100 North Broadway, Wichita, Sedgwick County, Kansas, on

24

25   the 3rd day of August, 2005, at 12:52 p.m.
```

Page 1

```
 1                  UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
 2                     ALEXANDRIA DIVISION

 3

 4    COLGAN AIR, INC.,                    )
                                          )
 5                                         )
                         Plaintiff,        )
 6                                         )
                                          )
 7        vs.                              )Case No. Civil Action
                                          )No.:  1:05 CV 213
 8                                         )
      RAYTHEON AIRCRAFT COMPANY,           )
 9                                         )
                                          )
10                       Defendant.        )
                                          )
11

12

13

14                  D E P O S I T I O N

15        The videotape deposition of TIM GREEN taken on

16    behalf of the Plaintiff, Colgan Air, pursuant to the

17    Federal Rules of Civil Procedure before:

18                    VESTA L. YORK, CSR, CRR
                      KELLEY, YORK & ASSOCIATES, LTD.
19                    Suite 220, 200 North Broadway
                      Wichita, KS    67202
20

21    a Certified Shorthand Reporter of Kansas, at Suite 500,

22

23    100 North Broadway, Wichita, Sedgwick County, Kansas, on

24

25    the 2nd day of August, 2005, at 2:00 p.m.
```

TIM GREEN

Colgan Air, Inc v. Raytheon Aircraft Company                                    8/2/2005

---

Page 30

1  weren't even being manufactured; they weren't
2  being distributed, correct?
3  A.  Right.
4  Q.  So, I mean, basically, looking at this, he's
5  got no choices, right?
6  A.  If RAPID, which is our parts marketing
7  organization, weren't able to provide him
8  with a 27 or a 29, then his next step is to
9  call tech support --
10  Q.  Okay.
11  A.  -- and find out what, if anything, we can do
12  to help him.
13  Q.  Okay.  And then -- well, in terms of helping
14  him then is what -- is exactly what actually
15  you did, then, eventually was you identified
16  an actuator that could be used?
17  A.  Yes.
18  Q.  Okay.  And then you advised them and they
19  could go ahead and do whatever the
20  alternative is that you've --
21  A.  Right.
22  Q.  -- authorized?
23  A.  Right.
24  Q.  Okay.  What's an RDO?  And I'm looking at
25  Exhibit 78.  He's told to go through RDO.

---

Page 31

1  A.  RDO stands for Repair Design Office.  The
2  Repair Design Office designs repairs --
3  primarily designs repairs for damage to
4  aircraft that are beyond the scope of what's
5  offered in the maintenance manual or the
6  structural repair manual.  They're a team of
7  design engineers that will design a repair
8  for a specific area of damage.  They'll
9  provide FAA-approved field repair drawings to
10  the customer to support the repair.
11  Q.  Okay.  In this particular case, we were
12  talking about the alternative trim actuators
13  that might be available for use.  Was there a
14  reason to go through RDO?
15  A.  Not that -- not that I can think.
16  Q.  Okay.  Did Mr. Jolicoeur have the drawings
17  and the historical IPC manual available to
18  him as well?
19  A.  He was handling the calls from his house
20  through the weekend.  I don't know if he came
21  out to the office to look through anything or
22  not.
23  Q.  Okay.  What's CIMAGE?  Is that what you say?
24  A.  CIMAGE.
25  Q.  CIMAGE?

---

Page 32

1  A.  That's a program, a computer program where we
2  can access engineering production drawings on
3  our computer at our desk.  We can put in a
4  drawing number and have the entire drawing
5  right at our desk.
6  Q.  Is that how you accessed the drawings --
7  A.  Yes.
8  Q.  -- that you were talking about earlier?
9  A.  Yes.
10  Q.  Okay.  I guess I don't understand from -- I
11  haven't yet talked to Mr. Jolicoeur, so I'm
12  kind of trying to find out what happened is
13  that -- why he didn't tell or authorize, I
14  guess, Mr. Sarluca to at least use the -6
15  actuator?
16  A.  There was -- to throw something else into
17  this, we had published a Mandatory Service
18  Bulletin --
19  Q.  Uh-huh.
20  A.  -- that affected all of the pitch trim
21  actuators up to the -7 and -9 actuators.  For
22  the -1 and -3 actuators, it required a
23  considerable amount of rework.  For the 5s
24  and 6s, not quite so much.  The Service
25  Bulletin also addressed the -7 and 9

---

Page 33

1  actuators, but that section of the Service
2  Bulletin was not mandatory, didn't have to be
3  done.  It was simply recommended.
4  So the -6 actuator that Colgan wanted
5  to use was covered by a Mandatory Service
6  Bulletin that says this actuator needs to be
7  upgraded, and that -6 actuator had not been
8  upgraded, which, I believe, is why
9  Mr. Jolicoeur was reluctant to tell them to
10  use it.
11  Q.  Okay.  While the -6 and 7 and -9 were all
12  covered by that Service Bulletin, I mean
13  you -- you went ahead and authorized the use
14  of the, I guess, the 6 and the 9?
15  A.  7 and the 9.
16  Q.  7 and 9.
17  A.  Uh-huh.  As I stated, the -1s, 3s, 5s and 6s
18  were covered by the mandatory portion of the
19  Service Bulletin.  It says you must upgrade
20  these.  But 7 -- -7s and 9s, the section of
21  the Service Bulletin that addressed that
22  upgrade, was not mandatory.  It was
23  recommended.
24  Q.  Okay.
25  A.  You could do it if you wanted to, but you

---

# EXHIBIT "F"

Page 1

1    Vol. 1, Pgs. 1-328                Exhibits 1-11

2              UNITED STATES DISTRICT COURT

3                DISTRICT OF MASSACHUSETTS

4    - - - - - - - - - - - - - CONSOLIDATED UNDER

5    YISEL DEAN, et al.              CASE NO. 05-10155 PBS

6                Plaintiffs

7    v.                             CA No. 05 CV 10155 PBS

8    RAYTHEON COMPANY, a Delaware

9    corporation, et al.

10                Defendants

11   - - - - - - - - - - - - - - -

12   LISA A. WEILER, et al.

13                Plaintiff

14   v.                             CA No. 05 CV 1034 PBS

15   RAYTHEON COMPANY, a Delaware

16   corporation, et al.

17                Defendants

18   - - - - - - - - - - - - - - -

19          DEPOSITION of JOHN J. GOGLIA

20      Monday, September 18, 2006 - 9:20 a.m.

21              Dwyer & Collora, LLP

22              600 Atlantic Avenue

23              Boston, Massachusets

24      Reporter:  Jill K. Ruggieri, RMR/CRR

Page 158

```
 1        opinion, was the manufacturer in this case,

 2        Raytheon, reasonable in expecting that

 3        certified maintenance mechanics would use

 4        lead lines in this case?

 5    A   I think the manufacturer was reasonable in

 6        expecting anybody to perform maintenance to

 7        follow the manual.

 8    Q   What about the use of lead lines?

 9    A   That's in the manual.

10    Q   The manual says to use lead lines?

11    A   Yes.

12    Q   And they didn't use lead lines?

13    A   That's correct.

14    Q   And as a result, they crossed the cables?

15    A   Correct.

16    Q   And as a result, the accident happened?

17    A   Correct.

18    Q   So do you fault the maintenance personnel in

19        not using lead lines in this case?

20    A   I fault a number of people, including the

21        maintenance people.

22    Q   Because certainly the maintenance people, if

23        they had used lead lines, this accident

24        wouldn't have happened?
```

```
 1        maintenance, one of -- we've already agreed

 2        there are at least two rules:  If you have

 3        any questions, stop.  Number two, follow the

 4        manual.

 5             Would the third rule be that in

 6        carrying out any maintenance or repair on

 7        flight control systems that the maintenance

 8        personnel would want to test to make sure

 9        that the system worked as it was intended?

10   A    I will answer yes, with my understanding of

11        testing in the context that you just used

12        it, which is an operational check.

13   Q    An operational check.  Okay.

14             And when an operational check with

15        the elevator trim system, if the operational

16        check is to be carried out properly, you

17        would properly have a man or woman in the

18        cockpit, as well as one at the tail; is that

19        right?

20   A    That's correct.

21   Q    And then there would be some communication

22        between the two, right?

23   A    That's correct.

24   Q    And you would -- with respect to the
```

Page 172

```
 1        maintenance personnel at the tail, they

 2        would be in a position to see whether or not

 3        the trim tab was moving up or down?

 4    A   Correct.

 5    Q   Right?

 6            And you were able to see that on a

 7        1900, right?

 8    A   Yes.

 9    Q   And the person in the cockpit would be able

10        to see which way the -- the trim wheel was

11        moving when the trim tab was moving at the

12        rear, at the tail, right?

13    A   Correct.

14    Q   And the person at the -- at the controls

15        would also be expected to operate the

16        electric trim system; is that correct?

17    A   That's correct.

18    Q   And he would operate the trim system with

19        his thumb; is that where it is?

20    A   Pickle switch, they call it.

21    Q   Pickle switch.

22            You push forward, and it's nose down.

23        Push back, nose up?

24    A   Correct.
```

1    Q    Right?

2          And the pilot in doing that would

3          certainly see how the wheel was moving,

4          right?

5    A    He would see the wheel is moving.

6    Q    You would see which direction it was moving?

7    A    Well, if he focused on it, yes, and if the

8          FOM called for -- well, I don't know what

9          the FOM says, so...

10   Q    What is the FOM?

11   A    Flight operations manual.

12   Q    Yes.

13          And the flight operations manual also

14          requires the pilot to do a preflight; isn't

15          that also true?

16   A    Yes.

17   Q    And the -- part of the preflight is to

18          operate the trim system electrically, right?

19   A    Just to see if -- I don't think it says to

20          go full travel, but just to see if it moves.

21   Q    All right.

22   A    Yes.

23   Q    And the pilot sitting there with a copilot

24          next to him and operating the trim system,

Page 174

```
 1        also part of that preflight is to have the
 2        copilot operate the trim switch in the
 3        opposite direction of the pilot and to see
 4        whether or not there was an override by the
 5        pilot; is that correct?
 6   A    I don't know that to be true, but that's
 7        generally what works, yes.
 8   Q    And in doing so, when they carry out that,
 9        they would see which direction the wheel was
10        moving, right?
11   A    Yes.
12   Q    Because the only way you would know whether
13        or not the override was working was to see
14        which way the wheel went, right?
15            You couldn't tell otherwise, right?
16   A    Right.
17   Q    So if they did the preflight as it's
18        required in operating the trim systems in
19        opposite directions, the pilots would have
20        to see which way the wheel was operating,
21        right?
22   A    I think -- you're pushing me out here where
23        I really don't have the expertise on this
24        airplane.
```

Page 175

1   Q   Really?  Okay.

2   A   But in general, the answer is that's

3       normally what happens, sort of.

4   Q   And the trim wheel operates the same

5       direction in every airplane, the manual trim

6       wheel, right?  In other words, pushing

7       forward on the wheel is down --

8   A   Yes, pulling back.

9   Q   -- back is up?

10  A   Yes.

11  Q   And so the pilot or whoever is checking the

12      operation of the trim system can readily see

13      whether or not the electric trim is

14      operating as it's intended with the wheel,

15      right?

16  A   If it's -- that's what his attention is

17      called to.

18  Q   Well, if you're doing an operations check as

19      a maintenance person, when you operate the

20      electric trim system, you're going to look

21      at the wheel and see which way it's going?

22  A   Because it's so obvious, you may not look

23      down there and focus.

24  Q   Okay.

```
 1    A    He may hit the button and sort of see that

 2         it's moving.

 3    Q    Okay.

 4              Well, if the maintenance person is

 5         doing the operations check after completing

 6         a replacement of the cables on the elevator

 7         trim and carrying out this operations check,

 8         part of it would be whether or not there was

 9         full range of movement of the trim tab,

10         right?

11    A    Right.

12    Q    And when -- you would do that from outside,

13         right?

14    A    And inside.

15    Q    With the travel board, right?

16    A    Or a protractor.

17    Q    Or a protractor, so you do it outside, and

18         you also do it inside looking at the wheel,

19         right?  Right?

20    A    I don't know if you look at the wheel.

21    Q    Well, if you're doing an operational check

22         on the trim system, do you want to see

23         whether or not it has full range of movement

24         on the manual wheel?
```

```
 1   A    Yes.

 2             So if he moved the wheel, all right,

 3        and said to the guy up on the tail I'm going

 4        to move it to the stop, you know --

 5             Here's the guy on the tail, and I

 6        walk to the cockpit and I go in there and

 7        move it all in one direction and then yell

 8        out okay and the guy checks it, he doesn't

 9        know which way I moved it.

10   Q    Right.

11   A    Okay.

12             So here's a disconnect.  Here's one

13        of the things that I look for.

14   Q    You might say something?

15   A    You might or might not.

16   Q    "I've got it full nose down" or whatever,

17        right?

18   A    Right.

19   Q    And the maintenance guy on the tail would

20        know that would mean the tab has to be up,

21        right?

22   A    Yes.

23   Q    Full up?

24   A    Right.
```

```
 1                   But if he says I just moved it, okay,

 2          and I see it up and I'll look at the

 3          protractor and say I'm looking for 15

 4          degrees, picking a number --

 5   Q      That would be an inadequate check?

 6   A      That's right.  And that's why you include

 7          those checks in the manual.

 8   Q      Now, getting back to the -- what basic

 9          maintenance practices require in an

10          operations check, you indicated full range

11          of movement; is that correct?

12   A      Yes.

13   Q      To the stops?

14   A      Right, yes, to the stops, right.

15   Q      And you would operate -- in doing an

16          operations check, you would do that with the

17          electric trim system and the manual trim

18          system, right?

19   A      Common sense says you would do it, but

20          oftentimes you would do it maybe with the

21          manual system and make sure the electric

22          trim is running.

23   Q      Okay.

24                   So if you did it with the manual
```

Page 179

```
 1          system, you would want to make certain it

 2          went to the designated stop points on the

 3          wheel, right?

 4     A    Mm-hmm.

 5     Q    Yes?

 6     A    Yes.

 7     Q    Well, the maintenance people in this case

 8          that worked on this elevator trim system

 9          could not have done that, could they?

10     A    No, they could not have done that.

11     Q    So they didn't do an operations check,

12          right?

13     A    They didn't do a full check as I -- as you

14          would find it in the maintenance manual for

15          rigging.

16     Q    They didn't do --

17     A    Maybe we ought to call it a functional

18          check.

19     Q    They didn't do a functional check to

20          determine whether or not the trim system

21          went to the full range of movement?

22     A    I understood that they did do --

23     Q    Well, they could not have checked the wheel,

24          because if they had put the trim tab full up
```

```
 1            or full down, it would not -- the wheel

 2            would not have had the marking on it that

 3            would have been appropriate for full up or

 4            full down?

 5    A       Okay.  Yes.

 6    Q       Right?

 7    A       Yes, all right.  That's different than what

 8            you asked me a minute ago.  Okay?

 9    Q       So they didn't do that check?

10    A       They did not compare full travel with the

11            markings on the wheel, assuming the markings

12            were there and --

13    Q       If they had done that, they would have known

14            there was a discrepancy?

15    A       Yes.

16    Q       And they would have stopped, hopefully?

17    A       Yes.

18    Q       Right?

19    A       Yes.

20    Q       You agree that a -- an original equipment

21            manufacturer such as Raytheon is in a

22            position to reasonably expect that

23            maintenance personnel working on its

24            aircraft for repairs to flight control
```

1          systems will carry out an operational check

2          which would include full range of movement

3          not only based on the electrical trim system

4          but also the manual trim system; is that

5          correct?

6    A     I would expect the instructions for

7          continued airworthiness -- I would expect

8          those to be complete and whatever was

9          required to be contained therein.

10   Q     And would you agree it is reasonable to

11         expect that maintenance personnel in

12         carrying out repairs on flight control

13         systems will carry out the customary

14         operational functional check to make sure

15         that the system works the way it's intended?

16              MR. BUNIS:  Objection.  You can

17         answer.

18   A     Yes, I would expect them to follow the

19         instructions.

20   Q     And the maintenance people for Colgan who

21         worked on this airplane could not have done

22         that; isn't that correct?

23   A     That's correct.

24   Q     Do you fault them for that?

Page 182

```
 1   A     Yes, in part.

 2               MR. KNIGHT:  Did you want to -- I

 3         thought I saw you looking for a lunch break.

 4               MR. BUNIS:  Off the record.

 5               (Discussion off the record.)

 6               (Mr. Bunis left the deposition.)

 7   BY MR. KNIGHT:

 8   Q     Have you told me the names of any textbooks

 9         that you think are reliable in the context

10         of aviation maintenance?  Did we already ask

11         you that and you listed two?

12   A     You sort of -- you asked it in the context

13         of what I relied upon.

14   Q     Yes.

15   A     You didn't ask in the broad sense.

16   Q     How about in the broad sense.

17               What about textbooks in the field of

18         aviation maintenance, do --

19   A     I'm not familiar with any of the latest --

20               Classroom textbooks?

21   Q     Yes.

22   A     I don't know enough to answer that.

23   Q     Having read the depositions in this case, do

24         you recall any statements by either Dwight
```

```
 1          I would do, take it the next step.

 2    Q     Well, in terms of root cause analysis, the

 3          NTSB did not offer any kind of an

 4          explanation as to why these mechanics did

 5          what they did.

 6    A     That's correct.  They let their statements

 7          stand --

 8    Q     They didn't -- they didn't attempt to

 9          explain why the pilots did what they did?

10    A     Right.

11    Q     In terms of the mechanics, they made several

12          mistakes in this case, several mistakes

13          in --

14    A     In process.

15    Q     -- working on the plane?

16    A     In process.

17              If you consider maintenance as a

18          process, from start to finish you have a

19          task and it has steps to it, and the process

20          was disconnected in steps.

21    Q     Do you have in mind all of the things that

22          they did wrong?

23    A     All?  No.  I -- in fact, it's funny you're

24          saying that, because I was thinking about
```

Page 187

```
 1          doing that as a teaching tool.

 2                 But, no, there was a number of places

 3          that others would benefit from by

 4          identifying.

 5   Q      In other words, this isn't one error that

 6          caused this accident?

 7   A      That's right.

 8                 And actually, the chain of errors has

 9          its origins before this airplane came in the

10          hangar, if you really want to, you know,

11          dissect the --

12   Q      Why do you say that?

13   A      Try to take a simple one.

14                 Why -- why did they feel comfortable

15          when they had a problem, they stopped, they

16          did some communicating, and then go back?

17          Why did that sequence of events take place?

18          And they still haven't got any paperwork to

19          tell them what to do when they come back.

20                 It's because they've been doing that

21          routinely.

22   Q      You mean on the 23rd?

23   A      Yes, right.

24   Q      The 23rd.
```

Page 201

```
 1    A    Mm-hmm.

 2    Q    The more airspeed you have, the more effect

 3         you have of an --

 4    A    Right.

 5    Q    -- inadequate or improper trim, right?

 6    A    Right.

 7              Most pilots, including myself,

 8         believe that airspeed is your friend when

 9         you get in trouble, when you're down low,

10         and in this case it was the opposite.

11    Q    Well, every pilot knows that if your trim --

12         if you're heavy on the yoke, so you're

13         holding it back as best you can, in other

14         words, trimmed nose down, much more than it

15         should be, if you put more airspeed on the

16         airplane, it's going to get worse, right?

17    A    Mm-hmm.

18    Q    And what happens when you take your gear up?

19    A    Pitch your nose down.

20    Q    Well, what happens to the airspeed?

21    A    Increases.

22    Q    And what happens when you take your flaps

23         up?

24    A    Increases.
```

Page 202

| 1 | Q | And you've seen the analysis of this thing. |
|---|---|---|
| 2 | A | Yes. |
| 3 | Q | They did nothing but increase airspeed? |
| 4 | A | Yes. |
| 5 | Q | When they already had adequate airspeed to |
| 6 | | fly the airplane, right? |
| 7 | A | Right. |
| 8 | Q | Well, what was the maneuvering speed of this |
| 9 | | airplane; do you know? |
| 10 | A | No, I don't know. |
| 11 | Q | Well, certainly brought it from 170 knots. |
| 12 | | It was climbing out to well over 200, by |
| 13 | | increasing that speed, by taking off the |
| 14 | | flaps and the landing gear? |
| 15 | A | Right, and he's calling, Pull, pull up, pull |
| 16 | | up, pull with me. |
| 17 | Q | So you don't have any thoughts or opinions |
| 18 | | about that, except that you know it's |
| 19 | | absolutely the wrong thing to do? |
| 20 | A | Especially now in hindsight.  I'm a good |
| 21 | | Monday morning quarterback. |
| 22 | Q | But you know from having flown with trim |
| 23 | | that's out of trim that the faster you go, |
| 24 | | the worse it gets? |

Page 203

```
 1   A   Yes.

 2   Q   So all you need to do is slow down, and it

 3       gets a lot easier, right?

 4   A   Right.

 5   Q   Do you have any explanation for that?

 6   A   No.

 7   Q   Well --

 8   A   Except maybe -- I can't say that.

 9           I was going to say the anxiety level

10       is going up pretty fast, so --

11   Q   Root cause analysis might look into why the

12       pilots made some incorrect decisions, right?

13   A   Yes, and that's exactly the same --

14   Q   And root cause analysis might also look into

15       why so many mechanics on this airplane made

16       so many bad decisions, right?

17   A   Correct, correct.

18   Q   Now, getting to your opinion, if we could.

19           It is Exhibit 3?

20   A   I've got it, yes.

21   Q   On the third paragraph, you're -- you state

22       that the opinion is based on reviewing the

23       attached list?

24   A   Mm-hmm.
```

1    A    Well, I'd like to -- maybe not withdraw it,

2         but frame it that I was talking about not in

3         the -- not in the flight mode, lack of a

4         better word.

5    Q    Well, certainly his preflight wasn't

6         adequate?

7    A    We've got to look at the flight operations

8         manual before I make that jump.

9              But, yes, it -- in practice, it is --

10        it was deficient because of what happened,

11        but now if we do the root cause analysis on

12        why it was, we may find out his training

13        syllabus had him do this --

14   Q    But the flight operations manual which

15        articulates the preflight that's required

16        has as part of it the preflight inspection

17        of the electric trim and the override?

18   A    Mm-hmm, to test the -- test the pickle

19        switches, right.

20   Q    If they had done that, they would have to be

21        looking at the manual trim wheel, because

22        that's the only way you would know whether

23        or not the pilot's was overriding, right?

24   A    No, it wouldn't run.

Page 220

```
 1   Q   No, it's a -- the override allows the pilot

 2       to --

 3   A   To take control.

 4   Q   -- to take control; isn't that so?

 5   A   I've forgot which way it goes.

 6   Q   I think that's the case.

 7   A   In the --

 8   Q   So if that's true, then --

 9   A   Then they didn't look at the wheel.

10   Q   Then they didn't look at the wheel?

11   A   Or they didn't look which direction it was

12       going.

13   Q   So they didn't do that part of the preflight

14       check?

15   A   If what you said is check about the

16       override, then, yes.

17   Q   So the preflight had to be inadequate, and I

18       know you don't want to get into the flight

19       very much, but the flight itself, when

20       you've got inappropriate trim, you certainly

21       don't want to add airspeed to it, right?

22   A   That's correct.

23   Q   Okay.

24           At the bottom paragraph -- let me go
```

```
 1        back to that.

 2              So having just completed our

 3        discussion about the pilot information,

 4        would it be fair to say that you're

 5        withdrawing that opinion that his

 6        experience, behavior and operation was

 7        excellent?

 8   A    I would rephrase that, yes.

 9   Q    And you say the first thing about the first

10        officer, next paragraph?

11   A    Hang on one second.

12              (Witness read document.)

13   A    Yes, yes.

14   Q    Okay.

15              Now, the last paragraph there has,

16        The quality insurance inspector received an

17        airframe powerplant certificate in 1986.

18              The Class of '86, right?

19   A    Yes.

20   Q    Who was the quality assurance inspector?

21        Who are you referring to?

22   A    I don't remember his name.  He's the guy

23        they called out.  He was an RII.  He wasn't

24        a full inspector.
```

Page 239

| | | |
|---|---|---|
| 1 | A | Well -- yes. |
| 2 | Q | The manual says to use lead lines? |
| 3 | A | Mm-hmm. |
| 4 | Q | Right? |
| 5 | A | (Witness nods.) |
| 6 | Q | So if Part 91 operation, you use the lead |
| 7 | | lines, the accident wouldn't have happened? |
| 8 | A | That's probably true, yes. |
| 9 | Q | And he might block the cables, which is a |
| 10 | | very basic maintenance principle? |
| 11 | A | Mm-hmm. |
| 12 | Q | Even in 121, it doesn't need to be set forth |
| 13 | | for the procedure? |
| 14 | A | Yes. |
| 15 | | But didn't I read somewhere in there |
| 16 | | that they talk about just taping the -- them |
| 17 | | up? They don't even talk -- the manual |
| 18 | | doesn't even talk to the potential |
| 19 | | possibility of them dropping off the |
| 20 | | cables -- off the drum or the pulleys, they |
| 21 | | just talk about taping them up so they don't |
| 22 | | fall down and be very difficult to recover. |
| 23 | Q | You don't remember the exact language? |
| 24 | A | No, but it's -- |

Page 262

1          manual has called for.

2    Q     I understand.

3                But it certainly would be good

4          practice to do it?

5    A     We've agreed on that earlier.

6    Q     Okay.

7                Further on down, you say, "A lead

8          maintenance technician and the quality

9          assurance inspector stated that following

10         the maintenance, a successful operational

11         check of the system was completed," right?

12   A     Yes.

13   Q     Well, is it your opinion that, in fact, a

14         successful operational check was not carried

15         out?

16   A     Okay.

17               Now we will go back to our discussion

18         we had earlier versus operational check,

19         rigging check.

20               Since it wasn't specified in the

21         manual what to do, I suspect that what they

22         did was just manipulate the controls and

23         check the travel with a guy in the cockpit

24         and a guy up in the tail and poor

```
 1        coordination between the two.

 2   Q    What about the guy in the cockpit, when he

 3        did that to go to full travel, travel,

 4        either way he would have seen on the manual

 5        drum trim wheel that it wasn't a full change

 6        of travel?

 7   A    He should have, I agree with you.

 8   Q    So they couldn't have done a check?

 9   A    No, I think he probably used the electric

10        trim and ran it one way and said, all right,

11        check it, yelled it out, okay?

12             The guy on the tail doesn't know

13        which way he moved it, slaps a protractor on

14        it and says, okay, I got whatever the limit;

15        I got it, and the guy in the cockpit runs it

16        the other way, and he slaps a protractor on

17        it, I got it again.  Okay.  We're good to

18        go.

19   Q    That's not an operational check?

20   A    That is an operational check.  It is not a

21        rigging check.  It is --

22   Q    They should have done a rigging check?

23   A    They should have done a rigging check.

24   Q    It is elementary for A&Ps doing this kind of
```

Page 266

```
 1          direction of travel.

 2    Q     You can't fault Raytheon for that, can you?

 3    A     For that part, no.  Not for what their

 4          piece -- no.

 5                My concern with Raytheon still rests

 6          with the manual once you've called out what

 7          they're being asked to do.

 8    Q     I know.

 9                I'm just picking up where you said

10          that a lead maintenance technician/quality

11          assurance following maintenance, a

12          successful operational check system was

13          completed.

14                I think, in fact, it wasn't

15          completed?

16    A     It certainly wasn't completed -- is it 27

17          something 06, the regular check?  Didn't I

18          just see you with it?  Anyway, they did not

19          do the complete check, it's pretty clear.

20    Q     Okay.

21                Page 7?

22    A     Paragraph?

23    Q     Yes.  Second paragraph.

24                "It's my opinion that it is indeed
```

```
1   Q   When you say "these errors were the cause of

2       this crash," perhaps you'd like to modify

3       that statement?

4           It was a factor?

5   A   I can say that it was a factor.  It was

6       probably one of the leading ones, but it was

7       a factor.  You're going to make me rewrite a

8       probable cause contributing to this?

9   Q   Well, the probable cause, actually -- it

10      stated what the probable cause was.

11          And then it said, "Factors were the

12      flight crew's failure to follow the

13      checklist procedures and the aircraft

14      manufacturer's erroneous depiction of the

15      elevated trim drum in the maintenance

16      manual," right?

17  A   Right.

18  Q   But the cause was really maintenance, what

19      the maintenance people did?

20  A   It's --

21          MR. ELBERG:  Object.

22  A   It's a collective maintenance failure.

23  Q   They didn't do the operational check, most

24      important?
```

| 1 | A | Properly, didn't do it properly. |
| 2 | Q | You could add up the number of errors made |
| 3 | | by maintenance, and you probably -- |
| 4 | A | More. |
| 5 | Q | -- five or more errors done by maintenance |
| 6 | | that really caused this crash? |
| 7 | A | (Witness nods.) |
| 8 | Q | In your -- the next sentence or two, you |
| 9 | | say, "The erroneous drawing could and did |
| 10 | | cause the mechanic to misroute the cable |
| 11 | | around the drum." |
| 12 | | But, again -- and I think I've |
| 13 | | already asked you about this -- they had to |
| 14 | | have made the next error, which was crossing |
| 15 | | the cables, in order to do this? |
| 16 | A | Right, to get it to line up. |
| 17 | Q | But you didn't mention that next error in |
| 18 | | your report, did you? |
| 19 | A | I don't believe I did. |
| 20 | Q | And they have tagged, according to what you |
| 21 | | said in the report and the deposition |
| 22 | | testimony, they tagged the cables with tape? |
| 23 | A | Mm-hmm. |
| 24 | Q | And they still misrouted them? |

Page 293

```
 1   Q    So it's fair to say that Raytheon reasonably

 2        would expect certified A&Ps to know that

 3        they need to do an operational check on the

 4        elevator trim system following the

 5        replacement of cables?

 6   A    Yes.

 7             Now, the definition of that

 8        operational check is where we're going to

 9        disagree.

10   Q    Okay.

11             You say at page 8 --

12   A    Are we in the same paragraph still?

13   Q    Yes.

14             "Most tragic is the fact that" --

15        this is the middle of that second paragraph.

16             "Most tragic is the fact that

17        Raytheon discovered after the Charlotte

18        crash and before the Hyannis crash that they

19        neglected or failed" --

20   A    Wait, wait.

21             Where are you?

22   Q    Halfway down that second full paragraph.

23   A    Oh, the big one?

24   Q    Yes.
```