UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CONSOLIDATED UNDER
CASE NO. 05-10155 PBS

| | |
|---|---|
| YISEL DEAN, Independent Administratrix of the Estate of STEVEN DEAN, deceased, and on behalf of all statutory beneficiaries, <br> Plaintiff, <br><br> v. <br><br> RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT HOLDINGS, INC. a Delaware Corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, COLGAN AIR, INC., a Virginia Corporation d/b/a US Air Express, <br> Defendants. | DOCKET NO: 05cv10155 PBS |
| LISA A. WEILER, Administratrix of the Estate of SCOTT A. KNABE, deceased, and on behalf of all statutory beneficiaries, <br> Plaintiff, <br><br> v. <br><br> RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT HOLDINGS, INC. a Delaware Corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, COLGAN AIR, INC., a Virginia Corporation d/b/a US Air Express, <br> Defendants. | DOCKET NO: 05cv10364 PBS |

**MOTION OF DEFENDANTS RAYTHEON COMPANY, RAYTHEON AIRCRAFT HOLDINGS, INC., RAYTHEON AIRCRAFT COMPANY, RAYTHEON AIRCRAFT CREDIT CORPORATION,  RAYTHEON AIRLINE AVIATION SERVICES, LLC AND RAYTHEON AIRCRAFT PARTS INVENTORY AND DISTRIBUTION COMPANY, LLC TO STRIKE TODD MICHAEL PETERSON/3PLAINS CORPORATION AS PLAINTIFFS' EXPERTS OR, IN THE ALTERNATIVE, TO COMPEL PRODUCTION OF COPIES OF ANIMATIONS AND <u>REIMBURSEMENT OF COSTS AND EXPENSES</u>**

1

NOW COME the defendants, Raytheon Company, Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services, LLC and Raytheon Aircraft Parts Inventory and Distribution Company, LLC ("Raytheon" or "defendants"), and hereby respectfully move this Court to strike plaintiffs' designated expert Todd Michael Peterson/3Plains Corporation as plaintiffs failed to comply with the expert disclosure order of the court. Absent such an order to strike, the court must, in the alternative, compel plaintiffs to produce copies of the "animations" purportedly created by Mr. Peterson/3Plains at least seven (7) days prior to the expert deposition of Mr. Peterson/3Plains. As more fully set forth below, the animations constitute expert opinion(s) and technical evidence plaintiffs otherwise intend to introduce or use at trial and plaintiffs have failed to comply with the disclosure and discovery obligations of Rule 26 and this Court's expert disclosure schedule. Defendants further request that the Court order the reimbursement of the costs and expenses incurred by defendants in having to cancel the scheduled deposition of Mr. Peterson due to plaintiffs' refusal to provide a copy of the animations as well as the attorney's fees and costs in bringing this motion. Defendants further state as follows:

## MATERIAL BACKGROUND

1.    This Court's pretrial discovery order established July 21, 2006 for the identification of plaintiffs' experts and opinions with depositions to be completed by October 1, 2006.

2.    On or about July 21, 2006, plaintiffs produced, as part of their expert disclosure obligation, the fee charges and curriculum vitae of their expert Michael Todd Peterson of 3Plains Corporation ("3Plains"). See **Exhibit A**. 3Plains is purported to be "a human performance and

safety training corporation" which provides "interactive visual solutions." Id. Mr. Peterson is understood to be an "expert" in animations.

3.     In plaintiffs' disclosure of Mr. Peterson/3Plains, plaintiffs represented as follows:

> Plaintiffs will not produce copies of animations at this time. **Upon request plaintiffs will produce copies of their animations prior to or before 3Plains' deposition**. 3Plains reserves the right to supplement or edit its animations as more information becomes available.

**Exhibit A** (emphasis added).  Neither a written expert report or the "animations" were provided. There was no disclosure or description of the content or nature of the "animations" or the field of science or expertise Mr. Peterson would be testifying to as it related to the "animations" or the underlying incident.

4.     Defendants initially noticed the deposition of Mr. Peterson/3Plains for September 20, 2006.  At the plaintiffs' request, the deposition had to be rescheduled and was set for a mutually convenient date during the first week of October, 2006 in the State of Washington where Mr. Peterson lives and works.

5.     In order to make the deposition meaningful and consistent with the expert disclosure obligation and representation by plaintiffs in the July 21, 2006 disclosure of Mr. Peterson/3Plains, defendants requested copies of the animations prior to the deposition.

6.     Plaintiffs refused to produce copies of the animations.  Instead, plaintiffs offered to allow counsel to watch the animations in South Carolina and that a copy would be provided if defendants paid half of the expert production costs of the animation or approximately $30,000. See September 1, 2006 letter from plaintiffs' counsel and September 12, 2006 letter in response from defense counsel.  **Exhibit B**.  Plaintiffs later asserted, for the first time, that  they were not obligated to produce copies of the animations as they were "demonstrative aids."

3

7.     Defendants provided copies to plaintiffs of its own trial videos requesting only reimbursement of copying charges of $49.79.

8.     As a result of plaintiffs' failure to comply with the Court's disclosure schedule and obligation, defendants were forced to cancel the deposition of Mr. Peterson and file this motion seeking to strike Mr. Peterson/3Plains as plaintiffs' expert or, in the alternative, an order for the production of the animations prior to any deposition of Mr. Peterson/3Plains. Indeed, due to plaintiffs' failure to provide a copy of the animations, defendants incurred additional costs and expenses as well as the costs and attorney's fees in filing this motion.

## ARGUMENT

### I.     Defendants Are Entitled To The Production Of Copies Of The Animations Prior To The Expert Deposition

#### a.     *The Standard*

The obligation for the pre-trial production of expert opinions and materials is well-established. Rule 26 expressly provides that expert opinions be produced prior to trial including a written report which shall "contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness informing the opinions; [and] any exhibits to be used as a summary of or support for the opinions…." Fed. R. Civ. P. 26(a)(2)(B). As the Advisory Committee Notes to the 1993 Amendments of Rule 26 explicitly state:

> The report is to disclose the data and other information considered by expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions- whether or not ultimately relied upon by the expert- are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

See also, Suskind v. Home Depot Corporation, et al., 2001 U.S. Dist. LEXIS 1349 (D. Mass. 2001). As such, Rule 26 is intended to ensure that "all parties and the court ... possess full information well in advance of trial on any proposed expert testimony or demonstrative evidence." Robinson v. Missouri Pacific Railroad, Inc., 16 F.3d 1083, 1089 n.6 (10th Cir. 1994). Indeed, the pre-trial production of expert reports, opinions and materials permits full and complete disclosure sought by the new discovery rules. See Pena-Crespo v. Puerto Rico, 408 F. 3d 10, 13 (1st Cir. 2005); see also, Poulis-Minott v. Smith, 388 F.3d 354, 358 (1st Cir. 2004). According to the First Circuit, Rule 26 expert disclosures, especially in a "setting [involving] complex factual inquiries...increases the quality of trials by better preparing attorneys for cross-examination. Id. at 13 *citing* Laplace-Bayard v. Batille, 295 F. 3d 157, 162 (1st Cir. 2002); Poulis-Minott, 388 F.3d at 358 ("the purpose of the expert disclosure is to facilitate a 'fair contest with the basic issues and facts, disclosed to the fullest practical extent'"). Furthermore, the standard production of expert or technical materials and opinions to the opposing party prior to the expert's deposition facilitates the purposes of discovery and focused trials. Id. (failure to comply with pre-trial expert disclosure "undermines opposition counsel's ability to prepare for trial"). Failure to comply with the expert disclosure obligation is grounds to strike the use of the proposed expert or expert opinion or materials. Fed. R. Civ. P. 37(c)(1); see Poulis-Minott, 388 F.3d at 358 (noting that Fed. R. Civ. P. 37(c)(1) "enforces Rule 26(a) by providing that 'a party that without substantial justification fails to disclose information required by Rule 26(a) ... is not ... permitted to use as evidence ... any witness or information not so disclosed'").

   b.  *Plaintiffs' Expert Disclosure as To Its Designated Expert*
      *Todd Peterson/3Plains Failed to Comply With Rule 26 and*
      *This Court's Expert Disclosure Order Requiring an Order*
      *to Strike*

    Plaintiffs expert disclosure identified Mr. Peterson as an "expert' for trial. <u>See</u> **Exhibit A**.
Other than indicating through the provision of a copy of Mr. Peterson's CV that he is a
Production Manager for 3Plains, a company that specializes in 3d software and animation, and
referencing that "animations" would be provided prior to any depositions, no other information
was provided.  No written report was provided nor was any information disclosed which
remotely indicated or described what the "animations" contained or were about or what field of
science Mr. Peterson will testify.  Other than a vague reference in the CV that 3Plains is "a
human performance and safety training company," there is no disclosure as to what testimony,
expertise or opinions Mr. Peterson will provide at trial.  There is no description or designation
that Mr. Peterson is slated to testify as to aeronautics, safety, engineering, human factors or other
purported field of science  While plaintiffs make cursory reference to "animations" and that
they would produce copies of animations prior to any deposition, they have not done so and
refuse to do so.  Indeed, the animations were not only identified but constitute, in essence, the
very expert opinion or expert, technical demonstrative evidence that must be disclosed under
Rule 26 and this court's pre-trial order.  Despite the disclosure obligation, plaintiffs'
representation that they would produce copies of the animations prior to any deposition, and the
mandate of the federal rules, plaintiffs have now refused to provide the defendants with copies of
the animations in advance of Mr. Peterson's deposition.

    Plaintiffs' cursory disclosure does not comply with the mandate and purpose of the expert
disclosure obligations under Rule 26 or this Court's expert disclosure order requiring that an

order issue striking and precluding Mr. Peterson/3Plains as an expert or witness at trial for plaintiffs. Fed. R. Civ. P. 37 (c)(1).

c.     *Alternatively, The Court Must Issue An Order Compelling Production of the Animations*

Absent an order striking Mr. Peterson/3Plains as an expert or witness at trial, this court must, at a minimum and in the alternative, issue an order compelling the production of the animations at least seven (7) days prior to the deposition of Mr. Peterson/3Plains. If plaintiffs are going to be allowed, despite the defective disclosure, to seek to introduce and use the animations and any associated testimony of Mr. Peterson, it is crucial that these animations be produced. Production of copies of the animations is necessary so that defendants can review, understand and consult with its own experts as to these proposed animations prior to the deposition of Mr. Peterson and so the deposition can be meaningful and focused. Issues of relevancy and reliability are directly implicated as well as the basic and fundamental obligation of pre-expert deposition and general discovery and disclosure of expert opinions and technical materials.

Plaintiffs' offer to allow counsel to watch the animations in South Carolina is woefully insufficient production and disclosure. Not only is the offer to view the animations in South Carolina extremely inconvenient but it does not remotely provide meaningful disclosure or discovery. Defendants have the absolute right to obtain copies of the animations. Due to the technical nature of the creation and content of the animations, defendants will likely need to utilize their own experts and will need to do so before the deposition of Mr. Peterson to make the deposition meaningful. A simple viewing (in South Carolina no less) does not allow defendants to properly review and study the animations or understand how they were created so as to properly test and understand their approach, data, and methods.

7

The subsequent and belated reference by plaintiffs' counsel that they have no obligation to produce the animations because they are "demonstrative aids" is also misplaced and is an unacceptable excuse for the failure to produce copies of the animations prior to Mr. Peterson's deposition. As set forth above, plaintiffs, in their own expert disclosure of Mr. Peterson, specifically referenced the animations and agreed to produce copies prior to the deposition. See Exhibit A ("**Upon request plaintiffs will produce copies of their animations prior to or before 3Plains' deposition**").

Further, and as also set forth above, the "animations" are themselves expert materials and opinions fully encompassed within the purview of the broad Rule 26 disclosure requirement. The fact that the expert opinion is in the form of visual animations does not remotely change the expert and technical nature and character of this planned expert submission or use at trial. Like all technical and expert opinion and evidence it is subject to relevance, reliability and probative versus prejudicial evaluation which can only be explored and assessed by full pre-trial disclosure to opposing counsel and prior to the deposition of the expert creator of the animations. See generally, Commercial Union Insurance Co. v. Boston Edison Co., 412 Mass. 545, 549-50 (1992)(noting that in order to ensure reliability, completeness, accuracy and admissibility of computer program, it must be "disclosed to the opposing party so that they may challenge them"). In fact, pre-trial disclosure of the animations is necessary as this Court, under Daubert v. Merrel Dow Pharmaceuticals, Inc[1], must serve as the "gatekeeper" with respect to expert evidence and opinion. This is clearly applicable to animations. See e.g., Robinson, 16 F. at 1088-89 ("as 'gatekeeper' the district court [must] carefully and meticulously make an early pretrial evaluation of issues of admissibility, particularly scientific experts opinions and films or animations illustrative of such opinions"); Racz v. R.T. Merriman Trucking Inc., 1994 U.S. Dist.

---

[1] 113 S. Ct. 2786 (1993).

Lexis 4349 (E.D. Pa. 1994)(precluding admission of animation of accident as prejudicial). Accordingly, production of copies of the animations prior to the deposition of the "purported" expert creator of the animations is absolutely necessary to properly assess and understand the animation and provide proper direction to the court as to whether they can be used at trial.

Finally, even assuming the animations are "demonstrative" aides and not expert opinions or materials, the same principles apply. Common sense and fundamental discovery and disclosure requires that copies of the animations be produced pre-trial and prior to the deposition of the animations creator. Animations by their nature are technical utilizing equations and underlying data and like all evidence are subject to not only relevancy and reliability principles but accuracy, authentication, foundation and probative/prejudice evidentiary rules as well. The pre-trial production and disclosure of the animations prior to the deposition of Mr. Peterson is necessary so that the defendants can properly assess and understand the animations and properly bring any legal issues as to relevancy, reliability and/or admissibility to the court's attention prior to or at the time of trial.

> d.    *Plaintiffs' Demand for Payment of Production Costs of The Animations is Unreasonable and Improper*

To the extent plaintiffs are conditioning any production of the animations on the payment of approximately $30,000 (see **Exhibit B**) representing half of the purported production and creation costs, it is grossly unreasonable and improper. Not only is the quoted payment request outrageous but is tantamount to having the defendants pay and finance the plaintiffs' own expert witnesses. Plaintiffs' demand is all the more unreasonable and improper when it is considered that defendants produced to plaintiffs copies of its own trial videos at nominal copying costs (i.e. $49.79). Defendants are more than willing to pay for the reasonable copying costs of the animations and an order compelling production of the copies of the animations must issue.

9

## CONCLUSION

Based on the foregoing, the defendants, Raytheon Company, Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services, LLC and Raytheon Aircraft Parts Inventory and Distribution Company, LLC, respectfully request that the Court issue an Order Striking Mr. Todd Peterson/3Plains Corporation as expert witnesses due to the failure of plaintiffs to comply with the Rule 26 disclosure obligation. In the alternative, this Court must issue an order mandating that plaintiffs produce copies of the animations at least seven (7) days prior to the deposition of Mr. Todd Peterson. Defendants further request that the Court include an order for the reimbursement of the costs and expenses suffered as a result of having to cancel and reschedule the deposition of Mr. Peterson including the flight cancellation and related expenses together with the costs and attorney's fees incurred in filing this motion.

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on **October 31, 2006**

/s/ Peter C. Knight

_____

Raytheon Defendants,
RAYTHEON COMPANY,
RAYTHEON AIRCRAFT HOLDINGS, INC.,
RAYTHEON AIRCRAFT COMPANY,
RAYTHEON AIRCRAFT CREDIT
CORPORATION,
RAYTHEON AIRLINE AVIATION SERVICES,
LLC and
RAYTHEON AIRCRAFT PARTS INVENTORY
AND DISTRIBUTION COMPANY, LLC
By Counsel,

/s/ Peter C. Knight

_____
Peter C. Knight, BBO # 276000
Tory A. Weigand, BBO #548553
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Phone: 617-439-7500

-AND-

10

1025537v1

William L. Oliver, Jr. Esquire
Michael G. Jones, Esquire
MARTIN, PRINGLE, OLIVER, WALLACE
   & BAUER, L.L.P.
100 North Broadway, Suite 500
Wichita, KS 67202
Phone: (316) 265-9311

## LOCAL RULE 7.1 CERTIFICATION

The undersigned counsel for the Defendants, hereby certifies that co-defense counsel, Michael Jones, has conferred with counsel for the Plaintiff in this matter and specifically about the production of the animations that are the subject of this motion, in a good faith attempt to resolve or narrow the issues of dispute raised in the accompanying motion, in accordance with Local Rule 7.1.

/s/ Peter C. Knight

_____

11

# EXHIBIT "A"



MICHAEL TODD PETERSON
todd.peterson@3plains.net
3Plains Corp
33600 6th Ave South
Suite 200
Federal Way, WA 98003

**Date:**        July 21, 2006

**Topic:**       Dean/Weiler v. Raytheon Company, et al.

Plaintiffs will not produce copies of animations at this time.  Upon request plaintiffs will produce copies of their animations prior to or before 3Plains' deposition. 3Plains reserves the right to supplement or edit its animations as more information becomes available.

**Fee Schedule:**

My fee for services rendered in this matter is $300.00 per hour.

**EXHIBIT 3**

My Monster:                              .    http://my.monster.com/Resume/PrintResume.aspx?ResumeID=94973455

## CONTACT INFO

Michael Peterson                                  E todd.peterson@3plains.net
35905 21st Pl S                                   P 425-891-2784
Apt D                                             URL: http://www.3plains.net
Federal Way, Washington 98003
US

## OBJECTIVE

Looking for a challenging and interesting career in 3d software and animation. I have a wide variety of skills
that may be used in a variety of ways. I am comfortable in management or artist roles.

## WORK EXPERIENCE

| Dates Employed | Job Title | Company |
|---|---|---|
| 2/2005 – Present | **Production Manager** | 3Plains Corp |
| | | Federal Way/WA |

3Plains is a human performance and safety training corporation that produced
advanced training materials via a wide variety of multimedia tools (primarily 3d
animation and visualization) geared towards multiple delivery platforms including
web/CD/DVD/ and LMS/SCORM compliant course management systems.

My position at 3Plains is best defined as Production Manager/Studio Head. I was
responsible for managing a studio in Vancouver B.C. for a short time as well as
building a new studio in the Federal Way (Seattle) area. I defined all the studio
hardware/software requirements as well as IT requirements such as
Web/Email/Security/Internet and Phone Connectivity. I hired all the artists for the
Federal Way studio (total of 6), training them, and acting as Production Manager
throughout many different projects covering animation/multimedia/interactive
3d/LMS and SCORM compliance/web development/programming/ and other tasks
as needed by the studio. In addition I defined all the artist studio standards and
general look of the work that was produced as well as managed various internal
websites to facilitate artist communication and knowledge. I also worked directly
with clients to define their project needs and then translated those needs back to
the studio for completion in a timely manner. I was also responsible for corporate
technology demos to various prospective clients or investors and acted as
technological lead for the company in all regards to 3d animation/ course
production/ multimedia/ etc. At 3plains I was able to utilize my artistic, technical,
teaching, management, and software development backgrounds to create a
streamlined studio capable of producing a wide variety of media with limited
personnel.

| | | |
|---|---|---|
| 12/1999 – 2/2005 | **Director Software Division** | Digimation |
| | | New Orleans/LA |

Director of the software division at Digimation. Currently manager all employees
within my division and am in charge of 50+ software products and plugins for 3d
animation products. Pull multiple duties including: tech support, System
administrator, multimedia content creator, author of manuals for plugins and
webmaster. I program the websites, build the installers (both multimedia and
standard) as well as train the sales staff. In addition, I also provided support and
pre-sales support to sales dept. When not carrying out my other duties, I also
create animations showing plugin capabilities, create training videos, demo
videos, and demo the plugins at major trade shows such as Siggraph and NAB.

| | | |
|---|---|---|
| 1/1995 – 12/2004 | **Owner** | MTP Grafx |
| | | Mandeville/LA |

Owner of MTP Grafx. My personal company where I create multimedia training
CD's, architectural walkthroughs, and various other types of animation. Visit my
website (www.mtpgrafx.com) to see samples.

In addition to the work done in my company, I also have written about 12 books
on 3d Studio MAX, including my most recent book: 3ds max 4 Ground Rules
published by Autodesk Press.

| 8/1993 - 6/1995 | Lecturer | University of Tennessee |
| | | Knoxville/TN |

Taught Introduction to Computer Applications in Architecture in the Bachelor of Architecture program. This was a broad based course that covered many basic computer topics from email to word processing to AutoCAD to desktop publishing. A new topic was covered each week. In addition to teaching, I also wrote the coursework manual for the course.

## EDUCATION

| Dates Attended | School | Degree | Location |
|---|---|---|---|
| 8/1987 - 5/1992 | University of Tennessee | Bachelor's Degree | Knoxville - TN - US |

## SKILLS

| Skill Name | Skill Level | Last Used/Experience |
|---|---|---|
| 3D Studio MAX | Expert | Currently used / 14 years |
| 3ds max Plugins | Expert | Currently used / 6 years |
| Artist Management (Employee Management) | Intermediate | Currently used / 6 years |
| AutoCAD | Expert | +4 years ago / 8 years |
| Autodesk Combustion | Intermediate | Currently used / 4 years |
| C++ | Beginner | Currently used / 1 years |
| CG Hair Modeling | Intermediate | +4 years ago / 8 years |
| Client/Customer Management | Intermediate | Currently used / 12 years |
| Deadline | Expert | Currently used / 2 years |
| Dynamics | Intermediate | +4 years ago / 14 years |
| Gelato | Intermediate | Currently used / 1 years |
| Global Illumination | Expert | Currently used / 5 years |
| Linux | Intermediate | Currently used / 3 years |
| Macromedia Director | Intermediate | Currently used / 7 years |
| Macromedia Dreamweaver | Intermediate | Currently used / 5 years |
| Maxscript | Intermediate | Currently used / 3 years |
| Maya | Intermediate | Currently used / 3 years |
| Mental Ray | Intermediate | Currently used / 3 years |
| Modeling | Intermediate | Currently used / 14 years |
| NXN Alienbrain | Intermediate | Currently used / 2 years |
| PhotoShop | Intermediate | Currently used / 7 years |
| PHP/Mysql | Intermediate | Currently used / 5 years |
| Production Management | Intermediate | Currently used / 4 years |
| Rendering/Lighting Setup | Expert | Currently used / 14 years |
| Softimage XSI | Intermediate | Currently used / 3 years |
| Software Development Management | Intermediate | Currently used / 5 years |
| Syntheyes | Intermediate | Currently used / 2 years |
| Teaching/Instructor | Expert | Currently used / 14 years |
| Vray | Expert | Currently used / 4 years |
| Windows System Admin | Intermediate | Currently used / 6 years |

## ADDITIONAL INFO

I authored or Co-Authored the following books on computer graphics/animation/CAD

Author Combustion Ground Rules
Author 3ds max 4 Ground Rules
Contirbuting Author 3d Studio MAX Effects Magic
Author 3d Studio MAX 3 Fundamentals (published in 5 languages)
Auhtor 3d Studio MAX 2 Fundamentals (published in 8 languages)
Author 3d Studio MAX Fundamentals (published in 12 languages)

Review by 3d Artist Magazine:
"The first 3DS Max book to arrive offers a serious one-volume presentation of the content found in Max's gorgeous but hefty three volumes. The author's style is measured and thorough, pacing tutorials with interface descriptions, unlike Max's separate tutorial, modeling, and rendering manuals. While 3D Studio Max Fundamentals's chief virtue over the excellent Max manuals is its compactness, it does offer more than that. The book starts with a good overview chapter and offers some basic guides for becoming familiar with the NT environment. Helpful references are made to working with video and the significance of TCP/IP for network rendering.. One area where 3D Studio Max Fundamentals does offer more than the Max manuals is in its friendly Acrobat files about both configuring and troubleshooting Windows NT. In total, 3D Studio Max Fundamentals presents a worthy and more compact alternative for learning the Max basics and a beginning

http://my.monster.com/Resume/PrintResume.aspx?ResumeID=94973455

practical understanding of the NT environment in which most Max users must work."

Co Author Inside AutoCAD 14
Co-Author Inside 3d Studio MAX Volume II
Co Author Inside AutoCAD 13 for Windows and Windows NT
Co Author Inside AutoCAD 13 for DOS
Co Author 3d Studio for Beginners
Author 3d Studio Level I ATC Manual
Author Windows NT for the Graphics Professional
Author AutoCAD Performance Tuning Toolkit
Co Author 3d Studio Architectural Rendering

In addition to the above books, I authored many manuals for various software products (such as Shag:Hair, Texture Lab, etc) As well as authored online help tools, product pages and support pages for many different products.

# EXHIBIT "B"



**LeAnn Lester**
Paralegal
DIRECT DIAL 843.216.9374
DIRECT FAX 843.216.9440
llester@motleyrice.com

September 1, 2006

**Via Priority Mail**
Michael G. Jones, Esq.
Martin, Pringle, Oliver, Wallace & Bauer LLP
100 North Broadway
Wichita, KS 67202

      Re:    Dean, et al. v. Raytheon, et al.
              05-CV-10155

Dear Mr. Jones:

      Enclosed please find four CD's of the CVR recording for Colgan Air Flight #9446 on August 26, 2003, along with a description of the copies. The four CD's represent the four channels of the recording. Channels one, three, and four contain voice recordings. Channel two does not contain a voice recording.

      The first twelve minutes of the CVR recording were generated when a maintenance crew was working on the aircraft. At approximately twelve minutes and forty seconds there is a stop and then a restart of the CVR and then the flight crew is being recorded by the CVR. As part of their analysis, the lab prepared a verbatim, time-indexed transcript for each of the four channels of the CVR recording and is enclosed.

      The cost our firm incurred for obtaining these recordings and analysis was $9,974.92. Therefore, we are requesting that you reimburse our firm $4515.00, or one-half of the total cost.

      Regarding the 3Plains animation, we would be glad to allow you to view the animation at our offices in South Carolina at your convenience; otherwise if you would like to obtain a digital copy, we must require that you reimburse us for one-half the cost of the animation. Our cost was $58,500.00.

      If you have any questions or concerns, please do not hesitate to call me at 843-216-9374.

www.motleyrice.com

Motley Rice LLC
Attorneys at Law

MT. PLEASANT
28 BRIDGESIDE BLVD.
P.O. BOX 1792
MT. PLEASANT, SC 29465
843-216-9000
843-216-9450 FAX

BARNWELL
1750 JACKSON ST.
P.O. BOX 365
BARNWELL, SC 29812
803-224-8800
803-259-7048 FAX

PROVIDENCE
321 SOUTH MAIN ST.
P.O. BOX 6067
PROVIDENCE, RI 02940
401-457-7700
401-457-7708 FAX

HARTFORD
ONE CORPORATE CENTER
20 CHURCH ST. 17TH FLOOR
HARTFORD, CT 06103
860-882-1681
860-882-1682 FAX

Sincerely,

LeAnn Lester
Paralegal to Mary Schiavo

Enclosures as stated



**MARTIN | PRINGLE**
ATTORNEYS AT LAW

MARTIN, PRINGLE, OLIVER, WALLACE & BAUER, L.L.P.

| Wichita | Overland Park | Kansas City, Missouri |
|---|---|---|
| 100 N. Broadway, | 6900 College Boulevard, | 4700 Belleview, |
| Suite 500 | Suite 700 | Suite 210 |
| Wichita, KS 67202 | Overland Park, KS 66211 | Kansas City, MO 64112 |
| T 316.265.9311 | T 913.491.5500 | T 816.931.1133 |
| F 316.265.2955 | F 913.491.3341 | |

www.martinpringle.com

**MICHAEL G. JONES**
**Wichita Office**
mgjones@martinpringle.com

September 12, 2006

Mary F. Schiavo
Motley Rice LLC
P.O. Box 1792
Mt. Pleasant, SC 29465

<u>**VIA E-MAIL**</u>

David A. Bunis
Jacob T. Elberg
Dwyer & Collora, LLP
600 Atlantic Ave., 12th Floor
Boston, MA 02210

        Re:    *Dean/Weiler v. RAC*
                  Our File No. 62003-48

Dear Counsel:

        I have received the CVR discs and the cover letter demanding payment from us for half the cost you incurred to obtain and study the CVR and to produce the 3Plains animation. It seems to me that what you are asking my client to do is to contribute $33,765.00 to your expert witness fees. We respectfully decline to do so.

        We have researched what it costs to obtain CVR recordings from the NTSB; our client has considerable experience doing so. While we have at times obtained copies of CVRs at no charge, there is a company in Wichita that will download a CVR and copy it to a tape or other media for a flat fee of $600. Recall, too, that it was plaintiffs, not defendants, who were insistent on getting the actual CVRs, whereas the NTSB transcripts would likely have sufficed. Once you undertook to obtain them, it behooved you under the discovery rules to produce them as with any other document or item you may wish to use in the case. In that sense, we probably have no obligation to pay any more than the cost to simply copy 4 CDs, which is nominal. Nonetheless, in the interest of compromise, we will pay $300 for the CD copies you sent me. My client will not be paying for the "analysis" of the CVR recordings which you commissioned.

        Nor will we help pay for the **production** of your expert witness' animation. When we produced the cable rigging procedure and pilots' pre-flight check videos in the Colgan case, we did not charge the plaintiffs for half of Dwight Law's fees for the creation of that video, or the time of the mechanics and pilots involved. We simply charged a portion of the videographer's bill which amounted to a little over $500 for 2 copies. I would be happy to pay for **a copy** of the animation in its native format, and absolutely must have a copy well in advance of the deposition of Todd Peterson in order to effectively examine him. That is certainly our

September 12, 2006
Page 2

right to have the material in advance of the deposition in order make for a meaningful examination. Moreover, I remind you that in your expert disclosure report for 3Plains you said that you would produce "copies of their animations prior to or before [sic] 3Plains' deposition." While the animations should perhaps have been provided on July 21 with the reports, there is no question but that copies should be provided in advance of the relevant deposition.

Additionally, I ask once again that you produce any and all materials that any of your expert witnesses reviewed which have not been previously exchanged between the parties in this case. By way of example only, at least two of your experts mention having reviewed video and photographs of a 1900D trim system. Are those the trial videos we produced, or others you or Colgan had created? If the latter, we of course need copies.

Finally, after many requests we are still waiting for available dates for the depositions of Michael Conway and Greg Feith. If we don't have them very soon, we will have no choice other than to notice up their depositions unilaterally. We will delay the scheduling of the depositions of defendants' experts until we have all of your experts' depositions scheduled.

Very truly yours,

MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.

*Michael G. Jones/dm*

By:    Michael G. Jones

MGJ/dm
c:    Peter Knight



**MARTIN | PRINGLE**
ATTORNEYS AT LAW

**MARTIN, PRINGLE, OLIVER, WALLACE & BAUER, L.L.P.**

| Wichita | Overland Park | Kansas City, Missouri |
|---|---|---|
| 100 N. Broadway, | 6900 College Boulevard, | 4700 Belleview, |
| Suite 500 | Suite 700 | Suite 210 |
| Wichita, KS 67202 | Overland Park, KS 66211 | Kansas City, MO 64112 |
| T 316.265.9311 | T 913.491.5500 | T 816.931.1133 |
| F 316.265.2955 | F 913.491.3341 | |

www.martinpringle.com

**MICHAEL G. JONES**
**Wichita Office**
mgjones@martinpringle.com

September 22, 2006

Mary F. Schiavo
Motley Rice LLC
P.O. Box 1792
Mt. Pleasant, SC 29465

**FILE COPY**

Re:    ***Dean/Weiler v. RAC***
        Our File No. 62003-48

Dear Mary:

Following up on our phone conversation today, this confirms that we have agreed to push off the Leonelli and Maddox depositions to a later date. We are disappointed in this change but are willing to concede to avoid having to waste time and resources in going to the court over it. It appears as though the only option to do them both in the same swing is to move them a week to October 3 and 4 in Charlotte, North Carolina. We will arrange for a court reporter and location if you can arrange to get them both there. We would take Leonelli on the 3rd and Maddox on the 4th.

Under Rule 26(b)(4)(C), we will expect to reimburse you for your experts' fees for the time actually spent in depositions but that you will be covering any prep time and other expenses.

We also discussed the 3 Plains animation and our need to obtain a copy of it in its native format in advance of the deposition. I now understand your main concern in that regard to be insuring that neither we nor Raytheon will be using the animation nor the software that runs it for any other case or for any other purpose. I assure you we have no such interest in doing that, and if we need to enter into a side agreement or protective order to accommodate that, we can do so. We will pay for reasonable costs of reproduction of the animation on a CD, but we of course cannot pay for any of the costs for the initial production of it. I understand you will be getting with 3 Plains to determine the logistics of accomplishing that, but since that deposition is set for October 12, we would ask to have that item in hand at least a week before. If you foresee any problem with that, let me know.

In that context, we also discussed our trial videos and mockups. I understand that you have already seen the raw footage of our video and are checking to confirm that you have a separate copy of the final trial cuts. If not, let me know and we will have another set copied and forwarded to you. Likewise, we talked about our mockup, which is currently stored in Boston. If you would like to make arrangements to view it, please let me know and we will coordinate

September 22, 2006
Page 2

with Peter.  Perhaps we can do that during a time we are up there for depositions or other matters in the case.

        We talked about the $650 bill for the support for the inspection you did with your experts.  After discussing further what that involved, I understand that you are in agreement to go ahead and pay it without the need for further detail.  Thank you for helping resolve that issue.

        Finally, we also discussed our request to have you forward to us copies of any materials that your experts had reviewed in preparation of their reports that were not already exchanged in discovery.  I believe we had sent you separate requests on that, and you indicated today that one of your assistants is going through that to produce those materials.  We will look forward to receiving those in advance of the depositions so that we can be prepared for a more efficient examination.  Thank you for your attention to these matters.

        Very truly yours,

        MARTIN, PRINGLE, OLIVER,
        WALLACE & BAUER, L.L.P.

        ORIGINAL SIGNED BY
        MICHAEL G. JONES

        By:    Michael G. Jones

MGJ/jh
c:    David A. Bunis / Jacob T. Elberg
      Peter C. Knight