UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CONSOLIDATED UNDER
CASE NO. 05-10155 PBS

| | |
|---|---|
| LISA A. WEILER, Administratrix of the Estate of SCOTT A. KNABE, deceased, and on behalf of all statutory beneficiaries, Plaintiff, | ) ) ) ) |
| v. | ) ) |
| | ) DOCKET NO: 05cv10364 PBS |
| RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, RAYTHEON AIRLINE AVIATION SERVICES, LLC,  Kansas Corporation, and RAYTHEON AIRCRAFT PARTS INVENTORY AND DISTRIBUTION, COMPANY, LLC,  a Kansas Corporation Defendants. | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| YISEL DEAN, Independent Administratrix of the Estate of STEVEN DEAN, deceased, and on behalf of all statutory beneficiaries, Plaintiff, | ) ) ) ) ) |
| v. | ) ) |
| | ) DOCKET NO: 05cv10155 PBS |
| RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, RAYTHEON AIRLINE AVIATION SERVICES, LLC,  Kansas Corporation, and RAYTHEON AIRCRAFT PARTS INVENTORY AND DISTRIBUTION, COMPANY, LLC,  a Kansas Corporation Defendants. | ) ) ) ) ) ) ) ) ) ) ) |

## ANSWER OF DEFENDANTS, RAYTHEON COMPANY, RAYTHEON AIRCRAFT COMPANY, RAYTHEON AIRCRAFT CREDIT CORPORATION, RAYTHEON AIRLINE AVIATION SERVICES, LLC  AND RAYTHEON AIRCRAFT PARTS INVENTORY AND DISTRIBUTION COMPANY, LLC TO PLAINTIFF, LISA WEILER'S SECOND AMENDED COMPLAINT[1]

---

[1] On October 11, 2006, this Court allowed plaintiffs' motion for leave to file plaintiffs' Second Amended Complaint but denied the motion to the extent the new complaints sought pre-impact damages and claims for *res ipsa loquitur*. To the extent any such claims were nonetheless included in the plaintiffs' Second Amended Complaint, the

1

Defendants, Raytheon Company, Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services, LLC and Raytheon Aircraft Parts Inventory and Distribution Company, LLC (collectively referred to herein as Raytheon Defendants unless otherwise individually designated) in response to the plaintiff, Lisa Weiler's Second Amended Complaint, state and allege as follows:

<u>FIRST DEFENSE</u>

The Raytheon Defendants state that the plaintiff has failed to state a claim upon which relief can be granted.

<u>SECOND DEFENSE</u>

The Raytheon Defendants hereby respond to the plaintiff's Second Amended Complaint, paragraph by paragraph, as follows:

**<u>PARTIES</u>**

1.     The plaintiff, Lisa A. Weiler, at all times relevant herein resides in the state of Ohio, and has been appointed by the Probate Court of Hamilton County, Ohio as Administratrix of the Estate of Scott A. Knabe who died in the crash of US Airways Express flight 9446, on August 26, 2003.

**<u>ANSWER:</u>**     The Raytheon Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 1 of Plaintiff's Second Amended Complaint and therefore deny them at this time.

2.     Plaintiff also brings this action on behalf of all beneficiaries including herself and other next of kin.

---

Raytheon Defendants reserve all rights including that the inclusion of any such claims by plaintiffs were in contravention of the Court's order.

1032139v1

**ANSWER:**    The Raytheon Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 2 of Plaintiff's Second Amended Complaint and therefore deny them at this time.

3.      Defendants are Raytheon Company, Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services LLC, and Raytheon Aircraft Parts Inventory and Distribution Company LLC. Raytheon Company is a Delaware corporation; Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services LLC, and Raytheon Aircraft Parts Inventory and Distribution Company LLC are wholly owned subsidiaries of the Raytheon Aircraft Holdings, Inc., and are Kansas corporations with their principal place of business in Wichita, Kansas.

**ANSWER:**    The Raytheon Defendants admit the allegations set forth in Paragraph 3 of the Plaintiff's Second Amended Complaint.

4.      Raytheon Company, Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services, LLC, and Raytheon Aircraft Parts Inventory and Distribution Company LLC are collectively referred to herein as "Raytheon"

**ANSWER:**    The Raytheon Defendants object to plaintiff referring to them collectively as a single entity and making common allegations against them, as they are distinct and separate corporate entities with different positions, roles, responsibilities, obligations and rights.

## JURISDICTION AND VENUE

5.      The amount in controversy exceeds $75,000 exclusive of interest and costs.

1032139v1

**ANSWER:**     The Raytheon Defendants admit the allegations of Paragraph 5 of the Plaintiffs' Second Amended Complaint.

6.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**ANSWER:**     The Raytheon Defendants admit the allegations of Paragraph 6 of the Plaintiff's Second Amended Complaint.

7.     A substantial part of the acts and omissions giving rise to the claims set forth in this complaint occurred in this judicial district. All defendants are doing business in this judicial district. Therefore, this court has venue pursuant to 28 U.S.C. §1391(a).

**ANSWER:**     The Raytheon Defendants, without admitting or denying the subjective allegations and legal conclusions of Paragraph 7 of the Plaintiff's Second Amended Complaint, state they do not contest venue before this court.

8.     The plaintiff claims damages under Massachusetts General Laws Chapter 229 §2 and §6, for the wrongful death and conscious suffering of Scott A. Knabe, for herself, and other next of kin.

**ANSWER:**     The Raytheon Defendants admit that plaintiff makes the alleged claims but deny any liability for them.

9.     Plaintiff claims damages pursuant to Massachusetts General Laws Chapter 106 §2-313 through §2-315 and §2-3] 8 for breach of express and implied warranties.

**ANSWER:**     The Raytheon Defendants admit that plaintiff makes the alleged claims but deny any liability for them.

10.     Plaintiff claims prejudgment interest pursuant to Massachusetts General Laws Chapter 229 § 11 and as otherwise allowed by law.

**ANSWER:**    The Raytheon Defendants admit that that plaintiff makes the alleged claims but
deny any liability for them.

11.    Plaintiff claims damages for unfair and deceptive acts and practices committed in
violation of Massachusetts General Laws Chapter 93A §§ 2, 9.

**ANSWER:**    The Raytheon Defendants admit that plaintiff makes the alleged claims but deny
any liability for them.

## GENERAL ALLEGATIONS AND FACTUAL BACKGROUND

12.    On August 26, 2003, Scott A. Knabe was killed while serving as the Captain of
US Airways flight 9446.  Steven Dean, the First Officer, was also killed.  The plane was a Beech
19000, registration number N240CJ, ("the aircraft") operated by Colgan Air d/b/a US Airways
Express.

**ANSWER:**    The Raytheon Defendants admit the allegations contained in Paragraph 12 of
Plaintiff's Second Amended Complaint.

13.    The aircraft crashed into the water off the coast of Yarmouth, Massachusetts
shortly after takeoff from Barnstable Municipal Airport.

**ANSWER:**    The Raytheon Defendants admit the allegations contained Paragraph 13 of
Plaintiff's Second Amended Complaint.

14.    The aircraft was manufactured by the Raytheon Aircraft Company and owned by
Raytheon Aircraft Credit Corporation, which leased it to the operator of the aircraft on a seven
(7) year lease beginning in January of 2003.

**ANSWER:**    The Raytheon Defendants admit the allegations contained in Paragraph 14 of the
Plaintiff's Second Amended Complaint.

15.    At the time of the crash, the aircraft was owned by and registered to Raytheon
Aircraft Credit Corporation.

**ANSWER:**    The Raytheon Defendants admit the allegations contained in Paragraph 15 of the Plaintiff's Second Amended Complaint insofar as the aircraft was owned by and registered by Raytheon Aircraft Credit Corporation.

16.    Raytheon Aircraft Company designed and manufactured the Beech 1900D. The model was first certificated in 1991. The aircraft at issue herein was manufactured in 1993.

**ANSWER:**    The Raytheon Defendants deny that the aircraft model was first certified in 1991 but otherwise admit the remaining allegations contained in Paragraph 16 of the Plaintiff's Second Amended Complaint.

17.    Raytheon Airline Aviation Services LLC was incorporated in 2002 and managed Raytheon's commuter aircraft business.

**ANSWER:**    The Raytheon Defendants admit the allegations in Paragraph 17 of the Plaintiff's Second Amended Complaint.

18.    Raytheon Aircraft Parts Inventory and Distribution Company LLC was incorporated in 2003 and provided aircraft parts and maintenance and repair support to operators of Beech 1900D and other Raytheon aircraft.

**ANSWER:**    The Raytheon Defendants admit only that Raytheon Aircraft Parts Inventory and Distribution Company LLC was incorporated in 2003 and its function is to maintain a parts inventory and distribute those parts to the owners and operators of the existing fleet of aircraft. The Raytheon Defendants deny the remaining allegations.

19.    Raytheon Company, and/or by and through its officers, directors, and employees, generally managed, directed, and had oversight over Raytheon Aircraft Company and Raytheon Aircraft Credit Corporation.

6

**ANSWER:**    The Raytheon Defendants deny the allegations set forth in Paragraph 19 of the Plaintiff's Second Amended Complaint.

20.    Raytheon Company made the decision in or about 2002 to put the Beech 1900D aircraft and support in a separate company called Raytheon Airline Aviation Services LLC, which was set up as a cost center, not a profit center. Assets, income and/or revenues went to Raytheon Aircraft Credit Corporation, and Raytheon Airline Aviation Services was a cost center with a goal of getting no deeper into debt.

**ANSWER:**    The Raytheon Defendants admit only that Raytheon Airline Aviation Services LLC was formed in or about 2002 and that the decision to form the company was that of Raytheon Company.  The Raytheon Defendants further admit that Raytheon Airline Aviation Services LLC was established as a cost center.  The Raytheon Defendants deny the remaining allegations.

21.    The aircraft was in service with another operator (or operators) before it was returned to Raytheon's possession and subsequently leased for operation by the operator of the fatal flight.

**ANSWER:**    The Raytheon defendants admit that the aircraft was in service with another operator or operators before it was returned to Raytheon's possession and subsequently leased for operation by Colgan, Inc.

22.    The operator of the aircraft experienced problems, including problems with the trim, on the aircraft at issue herein after receiving the aircraft from Raytheon and before August 26,2003.

**ANSWER:**  The Raytheon Defendants are without sufficient information or knowledge to admit or deny the allegations of Paragraph 22 of the Plaintiff's Second Amended Complaint and therefore deny them at this time.

23.  Raytheon provided advice and guidance on the repair of this aircraft.

**ANSWER:**  Defendant, Raytheon Aircraft Company, admits only that its customer service department generally provides technical support to mechanics repairing its aircraft including, from time to time, the 1900D that is the subject of this case. Defendants, Raytheon Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services and Raytheon Aircraft Parts Inventory and Distribution Company do not engage in such activities.

24.  In addition to designing and manufacturing this aircraft, Raytheon wrote and provided the manufacturer's Airliner Maintenance Manual (AMM) for this aircraft.

**ANSWER:**  The defendant, Raytheon Aircraft Company, admits that it designed and manufactured the 1900D aircraft and that it provides maintenance manuals for support of the aircraft.  Colgan Air, Inc., may, however, have been maintaining its aircraft in accordance with its own FAA-approved maintenance and inspection program.  Defendants, Raytheon Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services and Raytheon Aircraft Parts Inventory and Distribution Company are not engaged in such activities.

25.  On August 23-26, 2003, the accident airplane was in Hyannis, Massachusetts for maintenance, inspection and/or repair.

**ANSWER:**  The Raytheon Defendants admit the allegations contained in Paragraph 25 of Plaintiff's Second Amended Complaint.

26.    The mechanics consulted the AMM in making repairs and performing maintenance on this aircraft.

**ANSWER:**    The Raytheon Defendants are without sufficient information or knowledge to confirm whether the Colgan Air, Inc. mechanics, working on the subject aircraft in August of 2003, consulted Raytheon's particular airline maintenance manual (AMM) and therefore denies those allegations at this time.

27.    The mechanics consulted Raytheon on or about August 24 or 25, 2003, about the repair of this aircraft.

**ANSWER:**    In response to Paragraph 27 of Plaintiff's Second Amended Complaint, defendant Raytheon Aircraft Company admits only that specific inquiries were received from mechanics for Colgan Air, Inc. on August 23 and August 24, 2003, with questions about which trim actuator parts could be used together. Defendants, Raytheon Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services and Raytheon Aircraft Parts Inventory and Distribution Company LLC do not engage in such activities.

28.    Immediately prior to the fatal flight, maintenance had been performed on the airplane, which included work on the forward elevator pitch trim tab cable, elevator trim activator and trim drum.

**ANSWER:**    The Raytheon Defendants admit the allegations contained in Paragraph 28 of the Plaintiff's Second Amended Complaint.

29.    The Airliner Maintenance Manual (AMM) was erroneous, defective, misleading and omitted information, to wit:

a)    The trim drum was depicted backward;

9

b)    Relying on the erroneous drawings, a mechanic could, and did, mis-route the cable around the drum;

c)    Relying on the erroneous drawings, the trim system could be, and was, reversed;

d)    The depiction in the AMM showed the nose-up trim tab cable emanating from the aft end of the drum, rather than the forward end;

e)    The depiction in the AMM showed the nose-down cable emanating from the forward end of the drum, rather than the aft;

f)    There was no procedure for an operational check in the elevator trim tab cable-maintenance practices chapter, Chapter 27-30-04; and

g)    There was no referral in Chapter 27-30-04 to Chapter 27-30-09, "Elevator Trim-Maintenance Practices... Elevator Trim Operational Check," which did contain a procedure for an operational check of the elevator trim system.

**ANSWER:**    The Raytheon Defendants deny the collective allegations contained in Paragraph 29(a) – (g) of Plaintiff's Second Amended Complaint.

30.    Scott A. Knabe serving as the Captain, commonly referred to as the pilot or pilot in command, and Steven Dean as the First Officer, commonly referred to as co-pilot, were assigned to fly US Airways flight 9446 on August 26, 2003, after maintenance.

**ANSWER:**    The Raytheon Defendants admit only that Steven Dean and Scott Knabe flew a repositioning flight of 1900D S/N UE 40 on August 26, 2003, after maintenance was performed on it by Colgan Air, Inc.

31.    Shortly after takeoff the flight crew reported a problem with the trim.

**ANSWER:**    The Raytheon Defendants admit the allegations contained in Paragraph 31 of the Plaintiff's Second Amended Complaint.

32.    The flight crew selected a nose up trim, but instead the aircraft elevator traveled to the full nose-down position, and crashed into the water killing Scott A. Knabe and Steven Dean.

**ANSWER:**   The Raytheon Defendants admit only that the subject aircraft crashed into the water and that Steven Dean and Scott Knabe were fatally injured. The Raytheon Defendants are without sufficient information or knowledge as to specifically what the flight crew did in terms of selecting trim position at various parts of the flight or the corresponding movement of the elevator, or elevator trim tabs, if any and therefore denies those allegations at this time.

33.   As a result of the foregoing, which was a direct and proximate result of the conduct of defendants herein, and each of them, Scott A. Knabe was forced to endure severe mental anguish, fear of impending death, conscious pain and suffering, and ultimately he suffered severe physical injuries that caused his death.

**ANSWER:**   The Raytheon Defendants deny the allegations contained in Paragraph 33 of the Plaintiff's Second Amended Complaint.

34.   As a direct and proximate result of the acts and omissions of each defendant herein, there was a measurable and significant period of time from the first trauma causing injury to decedent and before the decedent's death such that decedent consciously suffered injuries and damages for a measurable period of time before decedent's death.

**ANSWER:**   The Raytheon Defendants deny the allegations contained in Paragraph 34 of the Plaintiff's Second Amended Complaint.

35.   As a direct and proximate result of the acts and omissions of each defendant, decedent's personal property was damaged, destroyed and tortiously interfered with, all to the damage of decedent and/or his estate.

**ANSWER:**   The Raytheon Defendants deny the allegations contained in Paragraph 35 of the Plaintiff's Second Amended Complaint.

36.     As a direct result and proximate result of the act and omissions of each defendant, Scott A. Knabe died and his estate, beneficiaries, heirs and survivors, including but not limited to Lisa A. Weiler, and other immediate next of kin, have been and continue to be deprived of decedent's income, services, support, help and assistance, advice and guidance, and other economic losses.

**ANSWER:**     The Raytheon Defendants deny the allegations contained in Paragraph 36 of the Plaintiff's Second Amended Complaint.

37.     As a direct and proximate result of the acts and/or omissions of defendants, and each of them, Scott A. Knabe died and his beneficiaries, heirs and survivors have suffered and continue to suffer non-economic damages including but not limited to loss of companionship, comfort, care, love, affection, assistance, presence, protection, society, confidence and guidance, as well as suffering, grief, anguish, bereavement, pain and suffering and emotional trauma.

**ANSWER:**     The Raytheon Defendants deny the allegations contained in Paragraph 37 of the Plaintiff's Second Amended Complaint.

38.     As a direct and proximate result of the acts and omissions of defendants, and each of them, Scott A. Knabe died and his estate, beneficiaries, heirs and survivors have incurred funeral, burial, travel, and related expenses.

**ANSWER:**     The Raytheon Defendants deny the allegations contained in Paragraph 38 of the Plaintiffs' Second Amended Complaint.

39.     The defendants and each of them owed a duty to plaintiff, and it was reasonably foreseeable that in breaching that duty, serious injury and death could result. The defendants, and each of them breached that duty and those breaches caused serious harm to plaintiff.

12

**ANSWER:**     The Raytheon Defendants deny the allegations contained in Paragraph 39 of the Plaintiff's Second Amended Complaint.

### COUNT I

### (Negligence Claim Against Raytheon)

40.     The Plaintiff incorporates by reference all prior allegations.

**ANSWER:**     The Raytheon Defendants incorporate by reference all prior responses.

41.     Raytheon provided to the operators of this fatal flight and aircraft with an Airliner Maintenance Manual (AMM) prescribing how repairs and maintenance to the Beech 1900D aircraft should be performed.

**ANSWER:**     The defendant, Raytheon Aircraft Credit Corporation, admits only that it leased the subject aircraft to Colgan. The defendant Raytheon Aircraft Company admits only that it published an airline maintenance manual with respect to the 1900D model that is the subject of this action. Defendants, Raytheon Company, Raytheon Airline Aviation Services, and Raytheon Aircraft Parts Inventory and Distribution Company deny involvement in such matters.

42.     The aircraft had a problem with the trim and Raytheon knew or should have known that individuals or entities performing maintenance would rely on the AMM or other Raytheon maintenance advice and illustrations to perform maintenance and repairs on the Beech 1900D aircraft it manufactured.

**ANSWER:**     The defendant Raytheon Aircraft Company admits only that it expected users of its maintenance manual to utilize them for their stated purpose, using the skill and training required by the Federal Aviation Regulations of any certified airline mechanic. Raytheon Aircraft Company is without sufficient information or knowledge with respect to specific "problem with the trim" of the subject aircraft.

13

Defendants, Raytheon Aircraft Corporation, Raytheon Company, Raytheon Airline Aviation Services and Raytheon Aircraft Parts Inventory and Distribution Company LLC deny involvement in such matters.

43.    Raytheon had a duty to provide an aircraft that was fully functional, airworthy and without defects, and Raytheon had a duty to provide accurate, reliable information in the AMM and maintenance advice, enabling the operators of this flight and other owners of its Beech 1900D aircraft or other maintenance personnel to make correct and safe repairs to the aircraft.

**ANSWER:**    The defendant, Raytheon Aircraft Credit Corporation admits only that it was obligated to and did provide an aircraft as described in its lease with Colgan Air, which is the document defining those parties' rights and obligations. Defendant Raytheon Aircraft Company admits only that it had a duty to exercise reasonable care in designing, manufacturing and providing aircraft and related manuals it produces. Defendants Raytheon Company, Raytheon Airline Aviation Services and Raytheon Aircraft Parts Inventory and Distribution Company LLC deny involvement in such matters.

44.    Raytheon was advised there was a problem with the trim on the aircraft and knew or should have known that the information in the AMM, specifically Raytheon Maintenance Manual Rev 9,27-30-04 for the Beech 19000 aircraft was defective and incorrect and that if the instructions in the manual were followed, a dangerous and fatal accident could result.

**ANSWER:**    The Raytheon Defendants deny the allegations contained in Paragraph 44 of the Plaintiff's Second Amended Complaint.

45.    Raytheon knew or should have known that the accident aircraft was defective upon, or soon after its delivery to, the operators of this fatal flight, due to the defective or

14

improperly functioning elevator pitch trim system and Raytheon knew or should have known that such defects could cause a dangerous and fatal accident.

**ANSWER:**   The Raytheon Defendants deny the allegations contained in Paragraph 45 of the Plaintiff's Second Amended Complaint.

46.   Raytheon by and through its agents, servants and employees acting in the course and scope of their employment, breached its duties and were negligent by:

a.   Providing a defective, improperly functioning and/or unairworthy aircraft to the operator of the fatal flight for use in its flight operations;

b.   Providing a defective AMM with erroneous advice and diagrams;

c.   Failing to discover and/or correct the AMM;

d.   Failing to discover and/or correct the defects or problems with the aircraft;

e.   Failing to warn of the hazards presented to persons at risk from the use of the aircraft;

f.   Failing to warn of the hazards presented to persons at risk from the erroneous AMM; and/or

g.   Providing erroneous verbal maintenance guidance.

**ANSWER:**   The Raytheon Defendants deny the allegations contained in Paragraph 46(a) – (g) of Plaintiff's Second Amended Complaint.

47.   Raytheon's negligence was the direct and proximate cause of the crash of flight 9446 and the death of Scott A. Knabe.

**ANSWER:**   The Raytheon Defendants deny the allegations contained in Paragraph 47 of Plaintiff's Second Amended Complaint.

48.    The Plaintiff seeks an award of compensatory damages under Massachusetts law for all compensatory damages allowed by law including, but not limited to, damages for: 1) loss of consortium, society, companionship, comfort, guidance, counsel, advice, instruction and for

mental anguish 2) loss of decedent's income, future pecuniary benefits, and inheritance; 3) loss of the decedent's services, protection, care, assistance, and physical, intellectual and moral training; 4) decedent's conscious pain and suffering before death; 5) decedent's mental anguish, fear, and terror before impact; and 6) funeral and burial expenses.

**ANSWER:**     The Raytheon Defendants admit that plaintiff seeks recovery of the stated damages but deny any liability for them.

**COUNT II**

**(Punitive Damages Claim Against Raytheon)**

49.     Plaintiff incorporates by reference all prior allegations.

**ANSWER:**     The Raytheon Defendants incorporate by reference all prior responses.

50.     Raytheon, acted willfully, wantonly and recklessly, with gross negligence and with a conscious disregard for the safety of Scott A. Knabe and others.

**ANSWER:**     The Raytheon Defendants deny the allegations contained in Paragraph 50 of the Plaintiff's Second Amended Complaint.

51. As a direct and proximate result of the reckless, wanton and willful conduct by Raytheon, the aircraft crashed on August 26, 2003, resulting in death and other losses and damages.

**ANSWER:**     The Raytheon Defendants deny the allegations contained in Paragraph 51 of the Plaintiff's Second Amended Complaint.

52.     The Plaintiff seeks an award of punitive damages for the wrongful death of Scott A. Knabe pursuant to Massachusetts General Laws Chapter 229 §2 and §6.

**ANSWER:**     The Raytheon Defendants admit that plaintiff seeks recovery of the stated damages but deny any liability for them.

1032139v1

## COUNT III

**(Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Purpose Against Raytheon)**

53.     Plaintiff incorporates by reference all prior allegations.

**ANSWER:**     The Raytheon Defendants incorporate by reference all prior responses.

54.     Raytheon by and through its certification process for the aircraft, its sales and leasing documents, and its advertising, expressly warranted that the aircraft and the aircraft maintenance procedures and manuals including but not limited to the AMM would be safe, accurate, fit for ordinary use, and free of defects.

**ANSWER:**     The defendant, Raytheon Aircraft Company admits only that the sole warranty provided to Colgan was an express limited warranty as stated in the January 9, 2003, side letter agreement provided in conjunction with Raytheon Aircraft Credit Corporation's lease of the aircraft to Colgan.   Defendant, Raytheon Aircraft Credit Corporation admits only that any warranties that it provided were stated in its lease documents with Colgan.   Defendant, Raytheon Company, Raytheon Airline Aviation Services, and Raytheon Aircraft Parts Inventory and Distribution Company deny involvement in such matters.

55.     Raytheon, by and through the sale of the aircraft in question, impliedly warranted to the public generally, and to Scott A. Knabe, that the accident aircraft and the aircraft procedures and manuals including but not limited to the AMM were fit for their ordinary purpose and of fair quality. Defendant had a duty to provide adequate warnings of the dangers associated with the design of the aircraft and dangers associated with the foreseeable usage and maintenance of the aircraft, of which they knew or should have known.

1032139v1

**ANSWER:**     The defendant Raytheon Aircraft Company admits only that any implied warranties were limited and disclaimed but the express limited warranty was provided by Raytheon Aircraft Company in conjunction with Raytheon Aircraft Credit Corporation's lease of the aircraft to Colgan.  Defendant Raytheon Aircraft Company denies the scope of any such implied warranties as articulated by plaintiff in the Second Amended Complaint and further specifically denies the breach of any such implied warranties.  Defendant Raytheon Aircraft Company also objects to the allegations of Paragraph 55 of Plaintiff's Second Amended Complaint to the extent they constitute a legal conclusion.  Defendants Raytheon Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services and Raytheon Aircraft Parts Inventory and Distribution Company deny involvement in such matters.

56.     Raytheon, by and through the sale of the aircraft in question, impliedly warranted to the public generally, and to Scott A Knabe, that Beech 1900D aircraft and the accident aircraft in particular and the accompanying maintenance procedures and manuals were fit for the particular purpose for which they were intended.

**ANSWER:**     The defendant Raytheon Aircraft Company admits only that any implied warranties were limited and disclaimed by the express limited warranty provided by Raytheon Aircraft Company in conjunction with Raytheon Aircraft Credit Corporation's lease of the aircraft to Colgan.  Defendant Raytheon Aircraft Company denies the scope of any implied warranties as articulated by plaintiff in the Second Amended Complaint and further specifically denies the breach of any such implied warranties.  Defendant Raytheon Aircraft Company also objects to

18

the allegations of Paragraph 56 of Plaintiff's Second Amended Complaint to the extent they constitute a legal conclusion. Defendants Raytheon Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services, and Raytheon Aircraft Parts Inventory and Distribution Company deny involvement in such matters.

57.     Contrary to these warranties, the accident aircraft and maintenance procedures and manuals were not safe and free of defects and were not fit for their ordinary, intended, particular and foreseeable uses and purposes. Instead, the aircraft and its component parts, systems, manuals, instructions, and/or warnings were defective and unreasonably dangerous by reason of defective design, manufacture, and/or marketing, the failure of defendants to give adequate and proper warnings of the dangers existing therein and the failure of Raytheon to give adequate instructions regarding the avoidance of such dangers. The unreasonably dangerous conditions and/or defects include the defective elevator pitch trim system, maintenance manuals, maintenance procedures, and/or the absence of adequate warnings and instructions regarding such conditions. The defective and unreasonably dangerous conditions exposed Scott A Knabe, and the public in general, to an unreasonable risk of harm and were the proximate cause of plaintiffs injuries and damages.

**ANSWER:**     The Raytheon Defendants deny the allegations contained in Paragraph 57 of the Plaintiff's Second Amended Complaint.

58.     Raytheon breached the express and implied warranties in the following ways:

a.     By providing a defective, improperly functioning, and unairworthy aircraft to the operator of the fatal flight for use in its flight operations;

b.     By providing a defective AMM with erroneous advice and diagrams;

19

c.  By failing to provide warnings regarding the dangers associated with the design of the aircraft and dangers associated with the foreseeable usage and maintenance of the aircraft; and/or

d.  By failing to provide proper instructions and procedures for the safe operation, repair and/or maintenance of the aircraft.

**ANSWER:**  The Raytheon Defendants deny the allegations contained in Paragraph 58(a) – (d) of the Plaintiff's Second Amended Complaint.

59.  Raytheon knew or should have known that pilots such as Scott A. Knabe would use the aircraft and be subject to an unreasonable risk of injury or death if such express and implied warranties were breached in such a manner.

**ANSWER:**  The Raytheon Defendants deny the allegations contained in Paragraph 59 of the Plaintiff's Second Amended Complaint.

60.  Scott A. Knabe relied on the express and implied warranties and made use of the aircraft as alleged herein in a reasonable and foreseeable manner and in the manner in which the aircraft was intended.

**ANSWER:**  The Raytheon Defendants deny the allegations contained in Paragraph 60 of the Plaintiff's Second Amended Complaint.

61.  The crash of the aircraft and the wrongful death of Scott A. Knabe and damage to plaintiff were proximately caused by Raytheon's breach of express warranty and implied warranties of merchantability and fitness.

**ANSWER:**  The Raytheon Defendants deny the allegations contained in Paragraph 61 of the Plaintiff's Second Amended Complaint.

62.  By reason of the foregoing, said defendant is liable to plaintiff in breach of warranty for the wrongful death, injuries and damages to decedent and decedent's personal property and for the resulting damages sustained by plaintiff.

**ANSWER:**    The Raytheon Defendants deny the allegations contained in Paragraph 62 of the

Plaintiff's Second Amended Complaint.

## COUNT IV

**(Violation of Mass. Gen. Laws c. 93A, §§2, 9 Unfair or Deceptive Acts and Practices)**

63.    Plaintiff incorporates by reference all prior allegations.

**ANSWER:**    The Raytheon Defendants incorporate by reference all prior responses.

64.    Defendant Raytheon and each of them, individually and collectively committed

unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection

Act, Mass. Gen. Laws c. 93A, §§2, 9, and particularly, but without limitation:

a.    Unfairly and deceptively drafting, editing, publishing and selling the AMM, also referred to as the Raytheon Electronic Publications Program Maintenance Library for the Beech 1900 ("REPS Manual"), together with many revisions, which revisions were also defective, which were used in and distributed to the operators and/or mechanics of the fatal flight, and used to repair the plane subsequently flown by Scott Knabe and Steven Dean;

b.    Knew or should have known that its AMM or REPS Manual was defective, erroneous and misleading in that it contained many errors;

c.    Knew or should have known that the revisions to the erroneous manual were themselves erroneous, defective, and misleading;

d.    Knew or should have known that erroneous manuals and/or erroneous revisions could lead to aviation accidents, injuries and death;

e.    Unfairly and deceptively advising operators and/or mechanics of the fatal flight use of parts which pursuant to the Beech 19000 Airline Illustrated Parts Catalogue (IPC) were not to be used in the aircraft at issue herein;

f.    Unfairly and deceptively advising the operators and/or mechanics of the fatal flight to use parts, including but not limited to actuator part numbers 19-526033-6, -7, and/or -9, which the IPC warned cannot be used in the aircraft at issue herein;

g.    Unfairly and deceptively advising the operators and/or mechanics of the fatal flight to use parts other than those approved for use in this aircraft because the actuator parts approved for use in this aircraft, to wit 129-526033-27, -29, were not yet available, and providing such advice, even though Raytheon bulletin 27-

21

3032, issued in July 2003, called for a mandatory modification of -6 actuators before installation in aircraft and recommended modification of actuators -7 and -9 before installation in aircraft, and did not indicate that unmodified actuators could be used in this aircraft; and/or

h.      Unfairly and deceptively advising use of parts requiring modification despite being advised that the operators and/or mechanics of the fatal flight had no authority to modify parts for installation in operational aircraft.

**ANSWER:**      The Raytheon Defendants deny the allegations contained in Paragraph 64(a) – (h)

of the Plaintiff's Second Amended Complaint.

65.      Defendant Raytheon's drafting, editing, publishing, selling, placing into stream of commerce, encouraging and/or requiring reliance thereon, and representing that it contained appropriate maintenance and repair instructions for the Beech 1900, when in fact it was misleading and erroneous and it had been revised many, many times, with revisions to revisions, and Raytheon's instruction to the operators and/or mechanics of the fatal flight to use parts which Raytheon's IPC advised were not to be used in this aircraft, were unfair and deceptive acts which caused injury and death, and were willful and knowing violations of §§2. Defendant Raytheon had actual knowledge its manual and/or revisions were defective, and Raytheon attempted to get by with a cobbled together, erroneous, patchwork manual, and instructions to use parts not approved for this plane because the approved parts were not available.

**ANSWER:**      The Raytheon Defendants deny the allegations contained in Paragraph 65 of the

Plaintiff's Second Amended Complaint.

66.      Defendant Raytheon knew or should have known these practices were in violation of sections 2 & 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

**ANSWER:**      The Raytheon Defendants deny the allegations contained in Paragraph 66 of the

Plaintiff's Second Amended Complaint.

67.     Defendant used and employed these acts or practices in willful or knowing violations of sections 2 & 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

**ANSWER:**     The Raytheon Defendants deny the allegations contained in Paragraph 67 of the Plaintiff's Second Amended Complaint.

68.     As a result of the unfair and deceptive conduct of defendant Raytheon, individually and collectively, Scott A. Knabe was a person injured, and killed, by Raytheon's use or employment of the above described deceptive representations, which are methods, acts and/or practices unlawful under §2 of 93 Mass. Gen. Law. Therefore, the representative of Scott A. Knabe's estate is entitled to bring this action under §9 of 93 Mass. Gen. Law.

**ANSWER:**     The Raytheon Defendants deny the allegations contained in Paragraph 68 of the Plaintiff's Second Amended Complaint.

69.     Plaintiff is entitled to compensatory damages from defendant for the economic and non-economic damages, and multiple or punitive damages including but not limited to two times the amount of actual damages for Raytheon's willful and knowing violations and/or refusal to grant relief upon demand, all other such relief as the court deems necessary and proper, and attorneys fees and costs to the extent allowed by law.

**ANSWER:**     The Raytheon Defendants deny the allegations contained in Paragraph 69 of the Plaintiff's Second Amended Complaint.

## COUNT V

### (Prejudgment Interest)

70.     Plaintiff incorporates by reference all prior allegations.

**ANSWER:**     The Raytheon Defendants incorporate by reference all prior responses.

1032139v1

71.    Plaintiff claims as an element of wrongful death and survival damages, prejudgment interest at the maximum legal rate as permitted by Massachusetts General Laws Chapter 229, § 11, or any other applicable law or statute, to provide full compensation to plaintiff and prevent the unjust enrichment of defendants and each of them.

**ANSWER:**    The Raytheon Defendants admit that plaintiff seeks pre-judgment interest but denies plaintiff's entitlement thereto.

## COUNT VI

### (Res Ipsa Loquitur)

72.    Plaintiff incorporates by reference all prior allegations herein.

**ANSWER:**    The Raytheon Defendants incorporate by reference all prior responses.

73.    Defendants, and each of them, had exclusive management and control over the manufacture of this aircraft, including exclusive management and control over the accuracy and efficacy of the Airliner Maintenance Manual (AMM) and the associated manuals that contain maintenance and repair instructions and options for the aircraft.

**ANSWER:**    The Raytheon Defendants deny the allegations contained in Paragraph 73 of the Plaintiff's Second Amended Complaint.

74.    The AMM of this aircraft contained procedures that, when followed, resulted in the aircraft elevator trim moving in the opposite direction of that commanded by the flight crew.

**ANSWER:**    The Raytheon Defendants deny the allegations contained in Paragraph 74 of the Plaintiff's Second Amended Complaint.

75.    On August 26, 2003, shortly after takeoff in this aircraft, the flight crew selected nose up elevator trim, but instead the aircraft elevator moved to the full nose down position.

**ANSWER:**    The Raytheon Defendants deny the allegations contained in Paragraph 75 of the Plaintiff's Second Amended Complaint.

24

76.    The uncommanded movement of the aircraft elevator to a full nose down position, when the flight crew selected a nose up trim is the type or kind of event that would not happen in the ordinary course of things unless there was negligence by the defendants.

**ANSWER:**    The Raytheon Defendants deny the allegations contained in Paragraph 76 of the Plaintiff's Second Amended Complaint.

77.    The uncommanded movement of the aircraft elevator to a full nose down position caused the aircraft to operate improperly, and caused it to crash, killing Scott A. Knabe and Steven Dean.

**ANSWER:**    The Raytheon Defendants deny the allegations contained in Paragraph 77 of the Plaintiff's Second Amended Complaint.

78.    The uncommanded movement of the aircraft elevator to a full nose down position when the flight crew selected a nose up trim would not have occurred if defendants, and each of them, had exercised ordinary care in the manufacture and sale or lease of the aircraft, to include insuring the accuracy and efficacy of its AMM, and associated manuals, repair instructions and guidance.

**ANSWER:**    The Raytheon Defendants deny the allegations contained in Paragraph 78 of the Plaintiff's Second Amended Complaint.

79.    Because of the defendants' exclusive control and management of the aircraft's Airliner Maintenance Manual (AMM) and associated manuals, repair instructions and guidance, defendants are possessed of superior, if not exclusive access to information concerning the precise cause of the accident and plaintiff asserts the negligence of defendants, as inferred from the general circumstances alleged herein. The fact that the aircraft was repaired with the

guidance and direction of Raytheon, and with maintenance manuals and advice which were incorrect, was not due to any action or contribution on the part of the plaintiff's decedent.

**ANSWER:**    The Raytheon Defendants deny the allegations contained in Paragraph 79 of the Plaintiff's Second Amended Complaint.

WHEREFORE, the Raytheon Defendants pray that the Second Amended Complaint against them be dismissed with prejudice, that judgment be entered in favor of the Raytheon Defendants on the claims asserted against them, and that they be awarded their costs and attorney's fees, along with any other relief to which the Court may deem them justly and equitably entitled.

### THIRD DEFENSE

The plaintiff is barred from recovery against the Raytheon Defendants because the alleged losses were proximately caused by the plaintiff's decedent's own negligence.

### FOURTH DEFENSE

The plaintiff is barred from recovery against the Raytheon Defendants because plaintiff decedent's alleged losses were caused by the intervening and superseding conduct of persons for whose conduct the Raytheon Defendants are not responsible.

### FIFTH DEFENSE

The plaintiff is barred from recovery against the Raytheon Defendants because the plaintiff's decedent's alleged damages were caused by the acts or omissions of third parties over whom the Raytheon Defendants exercised no control and for whose conduct the Raytheon Defendants bear no responsibility.

1032139v1

## SIXTH DEFENSE

The plaintiff's Complaint fails to state a claim upon which relief may be granted against one or more of the Raytheon Defendants.

## SEVENTH DEFENSE

The plaintiff is barred from recovery against the Raytheon Defendants because the plaintiff's decedent's conduct, considered alone or in conjunction with that of third parties and other defendants, was the sole proximate cause of the plaintiff's alleged damages.

## EIGHTH DEFENSE

If the plaintiff is entitled to recover against the Raytheon Defendants, any such recovery must be reduced in accordance with the comparative negligence statute, M.G.L. Chapter 231, §85, since the negligence of the plaintiff's decedent was the proximate cause of the injuries allegedly sustained.

## NINTH DEFENSE

The plaintiff's decedent was more than 50% at fault in causing the alleged injuries and therefore is barred from recovery by the comparative negligence statute, M.G.L. Chapter 231, §85.

## TENTH DEFENSE

To the extent any of plaintiff's claims sound in warranty or contract, such claims are barred or limited pursuant to the specific limitations and disclaimers accompanying the product sold or provided by defendant Raytheon Aircraft Company. In addition, any such claims fail for lack of privity. Defendants Raytheon Aircraft Credit Corporation, Raytheon Company, Raytheon Airline Aviation Services, and Raytheon Aircraft Parts Inventory and Distribution Company were never parties to any contracts from which the express or implied warranties could arise that could be the basis of plaintiff's claims.

1032139v1

## ELEVENTH DEFENSE

Plaintiff's claims are barred because the subject products conform to the state of the art of the industry at the time of their design, manufacture, and sale, and because they were in compliance with applicable federal and state regulations and statutes.

## TWELFTH DEFENSE

Plaintiff's claims are barred by the sophisticated user doctrine.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred by the learned intermediary doctrine.

## FOURTEENTH DEFENSE

The product involved in this action was changed in substance and form after it left the control of the Raytheon Defendants by the plaintiff or by one for whose conduct the Raytheon Defendants are not responsible, and such changes were the actual causes of the plaintiff's decedent's injuries.

## FIFTEENTH DEFENSE

The product involved in this action was misused after it left the control of the Raytheon Defendants, and the misuse of the product was the actual cause of the plaintiff's decedent's injuries.

## SIXTEENTH DEFENSE

Plaintiff's claims under G.L. c. 93A fail for lack of proper and timely presentment.

## SEVENTEENTH DEFENSE

The Raytheon Defendants state that if they were liable, negligent or in breach of any warranty, all of which they expressly deny, the Raytheon Defendants' liability in any or all of

those events has been terminated by the intervening acts, omissions, or negligence of others for whose conduct the Raytheon Defendants are not legally responsible.

## EIGHTEENTH DEFENSE

The Raytheon Defendants state that if the plaintiff proves that Scott Knabe was injured as alleged, said injuries were caused by the intervening and/or superseding acts of third persons for whom the Raytheon Defendants are not liable.

## NINETEENTH DEFENSE

The Raytheon Defendants state that there was no negligence, gross negligence, willful, wanton, or malicious misconduct, reckless indifference or reckless disregard of the rights of the plaintiff, or malice (actual, legal or otherwise) on the part of the Raytheon Defendants as to the plaintiff herein.

## TWENTIETH DEFENSE

The Raytheon Defendants deny that any product manufactured or sold by the Raytheon Defendants caused any injury to the plaintiff.

## TWENTY-FIRST DEFENSE

The Raytheon Defendants state that at all times and places mentioned in the Second Amended Complaint, the plaintiff and/or other persons without the Raytheon Defendants' knowledge and approval redesigned, modified, altered and used the Raytheon Defendants' products contrary to instructions and contrary to the custom and practice of the industry. This redesign, modification, alteration, and use so substantially changed the product's character that if there was a defect in the product, which the Raytheon Defendants specifically deny, such defect resulted solely from redesign, modification, alteration, or other such treatment or change and not from any act or omission by the Raytheon Defendants. Therefore, said defect, if any, was

created by the plaintiff and/or other persons, as the case may be, and was the direct and proximate cause of the injuries and damages, if any, that the plaintiff allegedly suffered.

## TWENTY-SECOND  DEFENSE

The Raytheon Defendants state that the complaint fails to state a claim upon which relief can be granted to the extent that it seeks punitive or exemplary damages, which are not recoverable under applicable law.

## TWENTY-THIRD DEFENSE

The Raytheon Defendants states that an award of punitive damages against any of the defendants in these cases would be unconstitutional and in violation of the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States and the Massachusetts Declaration of Rights.

## TWENTY-FOURTH DEFENSE

To the extent that the Complaint seeks punitive damages, any award of punitive damages against the Raytheon Defendants in this action would violate the constitutional rights of the Raytheon Defendants under the United States Constitution and the Massachusetts Constitution in at least, but not limited to, the following respects:

a.    It would violate the Raytheon Defendants' rights to procedural due process under the Fourteenth Amendment of the United States Constitution and under the corresponding sections of the Massachusetts Constitution in the ways specified in subsection d. and other ways;

b.    It would violate the Raytheon Defendants' rights to substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution and the corresponding sections of the Massachusetts Constitution in the ways specified in subsection d. and other ways;

30

c.      It would violate federal and state due process unless plaintiff is required to prove every element of her claim for punitive damages beyond a reasonable doubt;

d.      Massachusetts laws on punitive damages: (1) are unconstitutionally vague; (2) are not rationally related to any legitimate governmental interest; (3) establish no consistent, recognizable, or rational standard for submitting punitive damage issues to a jury or for appellate review; (4) do not prohibit the imposition of grossly excessive or arbitrary punishments; (5) do not provide fair notice of the severity of the penalties that may be imposed; (6) do not prohibit the imposition of punitive damages for acts and omissions that occurred outside of Massachusetts; (7) do not prohibit imposition of penalties for unrelated, dissimilar and independent acts and omissions; (8) do not prohibit multiple punitive damages awards for the same conduct; and (9) do not require that there be any reasonable ratio or relationship of punitive damages to actual damages;

e.      It would violate the Raytheon Defendants' right not to be subjected to an excessive award in violation of the Eighth Amendment to the United States Constitution and the corresponding section of the Massachusetts Constitution;

f.      It would violate the prohibitions of the United States Constitution and the Massachusetts Constitution on ex post facto laws;

g.      It would violate the right of the Raytheon Defendants to equal protection under the law as guaranteed by the United States Constitution and the Massachusetts Constitution; and

h.      Being in the nature of a penal or criminal sanction, any award of punitive damages that does not provide the Raytheon Defendants with the procedural and

31

substantive safeguards applicable to criminal proceedings would violate the United States Constitution and the Massachusetts Constitution.

## TWENTY-FIFTH DEFENSE

With respect to plaintiff's demand for punitive damages, the Raytheon Defendants specifically incorporate by reference any and all standards or limitations regarding the determination and enforceability of punitive damage awards that have been announced in decisions of the United States Supreme Court including, but not limited to, BMW of North America v. Gore, 116 S. Ct. 1589 (1996) and State Farm Mutual Automobile Insurance Company v. Campbell, 123 S. Ct. 1513 (2003).

## TWENTY-SIXTH DEFENSE

The products made by the Raytheon Defendants were "state of the art" products when first manufactured and sold, and as such they were not defective, the Raytheon Defendants were not negligent with respect to the design or manufacture of the product, and the Raytheon Defendants had no duty to warn plaintiff's decedent of any alleged hazard associated with it.

## TWENTY-SEVENTH DEFENSE

The Raytheon Defendants assert that the plaintiff's state-based claims are preempted by Federal law.

## TWENTY-EIGHTH DEFENSE

The Raytheon Defendants incorporate, as though fully set forth herein, any other affirmative defenses asserted by of any other defendant, which are applicable to the Raytheon Defendants.

1032139v1

## TWENTY-NINTH DEFENSE

The Raytheon Defendants reserve the right to assert other defenses which may be disclosed as discovery disclosures and investigation are accomplished and hereby requests leave of Court to amend the within Answer, if necessary, at a later date.

## JURY CLAIM

The defendants, Raytheon Company, Raytheon Aircraft Company, Raytheon Aircraft Credit Corporation, Raytheon Airline Aviation Services, LLC and Raytheon Aircraft Parts Inventory And Distribution Company, LLC, hereby demand a trial by jury on all issues.

Raytheon Defendants,
RAYTHEON COMPANY,
RAYTHEON AIRCRAFT COMPANY,
RAYTHEON AIRCRAFT CREDIT
CORPORATION,
RAYTHEON AIRLINE AVIATION SERVICES,
LLC and
RAYTHEON AIRCRAFT PARTS INVENTORY
AND DISTRIBUTION COMPANY, LLC
By Counsel,

/s/ Tory A. Weigand

_____
Peter C. Knight, BBO # 276000
Tory A. Weigand, BBO #548553
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Phone: 617-439-7500

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing  (NEF) and paper copies will be sent to those indicated as non registered participants on **November 20, 2006**

/s/ /Tory A. Weigand
_____

                    -AND-

William L. Oliver, Jr. Esquire
Michael G. Jones, Esquire
MARTIN, PRINGLE, OLIVER, WALLACE
   & BAUER, L.L.P.
100 North Broadway, Suite 500
Wichita, KS  67202
Phone:  (316) 265-9311

1032139v1