UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CONSOLIDATED UNDER
CASE NO. 05-10155 PBS

| | |
|---|---|
| YISEL DEAN, Independent Administratrix of the Estate of STEVEN DEAN, deceased, and on behalf of all statutory beneficiaries,<br>Plaintiff,<br><br>v.<br><br>RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, COLGAN AIR, INC., a Virginia Corporation d/b/a US Air Express,<br>Defendants. | DOCKET NO: 05cv10155 PBS |
| LISA A. WEILER, Administratrix of the Estate of SCOTT A. KNABE, deceased, and on behalf of all statutory beneficiaries,<br>Plaintiff,<br><br>v.<br><br>RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, COLGAN AIR, INC., a Virginia Corporation d/b/a US Air Express,<br>      Defendants. | DOCKET NO: 05cv10364 PBS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* EXCLUDE EVIDENCE OF THE FLIGHT CREW'S PRIOR FAILURES OF FLIGHT TESTS, PROFICIENCY CHECKS OR CHECK RIDES**

NOW COME the defendants, and hereby respectfully request that this Court deny the Plaintiffs' Motion *in Limine* to Exclude Evidence of the Flight Crew's Prior Failures of Flight Tests, Proficiency Checks or Check Rides. As grounds therefore, the defendants state as follows:

I.  **Evidence of the Pilots' Failures of Flight Tests, Proficiency Check Failures, or Unsuccessful Check Rides is Relevant Given the Plaintiffs' Claims that the Pilots are not at Fault for the Accident, and Therefore, is Admissible.**

As the plaintiffs' motion indicates, the pilots failed basic flight tests prior to the accident. Captain Scott Knabe completed a Beech 1900 initial proficiency check without demonstrating proficiency in emergency procedures relating to flight controls, unsuccessfully completed a check ride on April 2000, and received a notice of disapproval during a flight test on January 6, 2003. First Officer Steven Dean received a notice of disapproval on January 13, 1998. The plaintiffs claim that the pilots' history of failures of flight tests, proficiency check failures, or unsuccessful check rides is irrelevant because such certification events have no bearing on the pilots' conduct on the day of the subject accident. The plaintiffs further assert that the evidence is not admissible under Fed. R. Evid. 404(b), and rely on the Fifth Circuit case of Moorhead v. Mitsubishi Aircraft Intel, Inc., 828 F.2d 278, 287 (5th Cir. 1987) in making such assertion. As the plaintiffs point out, in Moorhead, the Fifth Circuit held that the district court's admission of evidence of the decedent pilot's past conduct was erroneous and would have been grounds for reversal had there been a jury trial. Id. Specifically, the court held that under Fed. R. Evid. 404, evidence of the pilot's past conduct was not admissible to prove that the pilot acted in conformity with that conduct on the date of the crash at issue. Id.

However, what the plaintiffs fail to mention is that the Fifth Circuit also held that evidence of the pilot's past conduct <u>was admissible</u> to rebut evidence of past good conduct of the

2

pilot as a pilot offered in the pilot's defense. Id. Here, the conduct of the pilots was pivotal, and the proximate cause of the accident. Specifically, had the pilots properly performed the proper and required pre-flight check, they would have discovered the misaligned trim tab position, thus preventing the accident. Additionally, the pilots failed to properly manage their airspeed during the flight, which was another cause of the accident.

### A. Pilots' Failure to Perform Proper Pre-Flight

The pilots were sophisticated users under the law as they were properly licensed, typed rated, highly trained with years of experience navigating aircraft, and who had hundreds of hours in the 1900D aircraft alone. The pilots were also heavily regulated by the FAA in connection with pilot certification, pilot pre-flight duties, pilot flight responsibilities and flight rules. Although informed of the trim cable replacement work the day before, the pilots failed to perform or to properly perform the pre-flight operational checks which would have detected any mis-rigging of the trim.

The pilots are responsible for the airworthiness of the aircraft and to conduct pre-flight operational checks as to the functioning of the aircraft before use including determining that the aircraft's trim system is operating correctly. See Jackson v. United States of America, 983 F.Supp. 273, 282 (D.Mass. 1997) (pilots had the primary responsibility and final authority over the safety over aircraft), citing, 14 C.F.R. § 91.3; Spaulding v. United States, 455 F.2d 222, 226 (9th Cir. 1972). This is especially true and required when it is the first flight of the day check and where there has been a repair of the trim the day before. See Jackson, 983 F.Supp. at 282 (pilots are in command of the aircraft and must be aware of those facts that pertain to its safe operation), citing, Davis v. United States, 824 F.2d 549, 551 (7th Cir. 1987) (further citations omitted). The pre-flight check is required by law, industry practice and commonsense and whose very purpose

is to detect any operational issue of the aircraft caused by maintenance or other cause. Had the pilots conducted a proper pre-flight operational check, which includes checking that the trim is working properly, any mis-rigging by the mechanics would have been detected and the accident would not have happened. Indeed, the defendants will present evidence at trial that the pilots' failure to perform the proper pre-flight check was a gross omission and indicative of unprofessional conduct of the flight crew.

In contrast, it is the plaintiffs' theory that the aircraft maintenance manual for the subject aircraft was defective and misleading, and that such deficiencies caused Colgan's mechanics to reverse the elevator trim system in the aircraft, resulting in the accident. Throughout the course of this litigation, the plaintiffs have denied that any acts or omissions of the pilots resulted in the accident. Specifically, the plaintiffs deny that the pilots did not perform the proper pre-flight check.

Necessarily, in response to the defendants' claims that the pilots are responsible for the accident for their failure to properly conduct a pre-flight check, the plaintiffs will likely respond by introducing evidence of past good conduct of the pilots, either in their case in chief, or in rebuttal to the defendants' case. As such, the plaintiffs will open the door to evidence of the pilots' prior bad conduct, such as their flight test failures, proficiency check failures, and unsuccessful check rides. Given the plaintiffs' claims and the defendants' defenses to such claims, it is axiomatic that evidence of the pilots' prior acts and history is relevant, and will be a central issue at trial. Accordingly, a blanket prohibition to such evidence would be improper, and therefore, the plaintiffs' motion should be denied.

1043565v1

B.  Pilots' Failure to Properly Manage Airspeed

In addition to failing to properly perform the pre-flight, once airborne, the pilots' further failures to properly control the aircraft caused and/or substantially contributed to the accident. The defendants will present expert testimony at trial that the pilots failed properly fly the aircraft by managing airspeed given the condition of the trim. Specifically, since the pilots thought that they were dealing with a runaway trim of the aircraft during the flight, the pilots should have attempted to better control the speed of the aircraft, as trim tabs have less effect with less speed. Instead, however, the pilots improperly increased the speed of the aircraft by raising the landing gear, and failing to manage power settings, resulting in their inability to manage airspeed and trim position. The defendants will present expert testimony at trial that these actions exacerbated the trim problem, resulting in the pilots' inability to manage airspeed, and causing the crash.

Because of the pilots' failure to properly fly the aircraft at the time of the accident, their prior failures on flight tests, proficiency checks and check rides, which deal with emergency procedures, directly rebuts the plaintiffs' claims that the pilots are not responsible for the accident. The prior failures of the pilots on tests which deal with emergency procedures is relevant as rebuttal evidence to show that contrary to the plaintiffs' claims, the pilots actions and inactions were the proximate cause of the accident. As such, the plaintiffs' motion should be denied.

II. **Evidence of the Pilots' Failures of Flight Tests, Proficiency Check Failures, or Unsuccessful Check Rides is More Probative than Prejudicial, and Therefore, is Admissible.**

Contrary to plaintiffs' assertions, evidence of the pilots' failures of flight tests, proficiency check failures and unsuccessful check rides is probative on the issue of the pilots' conduct as pilots. Considering the plaintiffs' claims that a purported erroneous pictograph in the

5

aircraft maintenance manual led to the accident, and the defendants' claims that the pilots' failure to properly pre-flight the aircraft and maintain airspeed during the flight was the proximate cause of the accident, the probative value of evidence of the pilots' prior conduct outweighs any prejudicial effect such evidence may have on the plaintiffs. The pilots' conduct on the date of the accident is fundamental to the case. Inevitably, evidence of their prior conduct will be relevant and probative in response to the plaintiffs' assertions that the pilots were good pilots, and did not cause the accident. Any prejudicial effect that evidence of the pilots' prior conduct will have is not substantially outweighed by any prejudicial effect, and therefore, is admissible. Fed. R. Evid. 403.

WHEREFORE, the defendants respectfully request that this Court deny the Plaintiffs' Motion *in Limine* to Exclude Evidence of the Flight Crew's Prior Failures of Flight Tests, Proficiency Checks or Check Rides.

RAYTHEON DEFENDANTS,
By Counsel,

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 30, 2007.

/s/ Peter C. Knight
_____

/s/ Peter C. Knight
_____
Peter C. Knight, BBO # 276000
Tory A. Weigand, BBO #548553
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Phone: 617-439-7500

-AND-

6

1043565v1

>William L. Oliver, Jr. Esquire
>Michael G. Jones, Esquire
>MARTIN, PRINGLE, OLIVER, WALLACE
>   & BAUER, L.L.P.
>100 North Broadway, Suite 500
>Wichita, KS  67202
>Phone:  (316) 265-9311