UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CONSOLIDATED UNDER
CASE NO. 05-10155 PBS

| | |
|---|---|
| YISEL DEAN, Independent Administratrix of the Estate of STEVEN DEAN, deceased, and on behalf of all statutory beneficiaries,<br>Plaintiff,<br><br>v.<br><br>RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, COLGAN AIR, INC., a Virginia Corporation d/b/a US Air Express,<br>Defendants. | DOCKET NO: 05cv10155 PBS |
| LISA A. WEILER, Administratrix of the Estate of SCOTT A. KNABE, deceased, and on behalf of all statutory beneficiaries,<br>Plaintiff,<br><br>v.<br><br>RAYTHEON COMPANY, a Delaware corporation, RAYTHEON AIRCRAFT COMPANY, a Kansas Corporation, RAYTHEON AIRCRAFT CREDIT CORPORATION, a Kansas Corporation, COLGAN AIR, INC., a Virginia Corporation d/b/a US Air Express,<br>Defendants. | DOCKET NO: 05cv10364 PBS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF YISEL DEAN'S SPENDING HABITS, ALLEGED PRESCRIPTION DRUG ABUSE, AND THE INTIMATE DETAILS OF HER RELATIONSHIP WITH <u>BOB DEAN</u>**

1043387v1

NOW COME the defendants, and hereby respectfully request that this Court deny the Plaintiffs' Motion *in Limine* to Exclude Evidence of Yisel Dean's Spending Habits, Alleged Prescription Drug Abuse, and the Intimate Details of her Relationship with Bob Dean. As grounds therefore, the defendants state as follows:

Plaintiffs argue that the evidence of Yisel Dean's spending habits, prescription drug abuse, and intimate details of her relationship with Bob Dean are irrelevant. Plaintiffs further argue that evidence of Yisel Dean's prescription drug abuse and her relationship with Bob Dean would also amount to harassment, undue embarrassment, and that this evidence lacks any probative value and is unfairly prejudicial.

The Plaintiffs' contention that evidence regarding Yisel Dean's spending habits is irrelevant is baseless. It is expected Plaintiffs will produce evidence at trial asserting that because Yisel Dean was of limited means, she could not afford adequate mental health care and/or counselling to treat her depression and emotional distress after the death of her husband. Over the course of discovery, Defendants have learned that Yisel Dean spent $100,000.00 after her husband's death on new furniture and other outstanding debt not related to funeral or burial expenses. This information is clearly relevant to counter the Plaintiffs' contention that she was too poor to afford mental health care and/or counselling for her depression allegedly caused by her husband's death. Therefore, Defendants should be allowed to introduce evidence of Yisel Dean's spending habits.

Plaintiffs assertion that evidence of Yisel Dean's prescription drug abuse and her relationship with Bob Dean would also amount to harassment, undue embarrassment, and lacks any probative value and is unfairly prejudicial lacks merit.

2

Prescription Drug Abuse

Through discovery, Defendants have learned that prior to Steven Dean's death, Yisel Dean abused prescription drugs. More specifically, testimony was elicited that Yisel Dean had a long history of using anti-depressants and anti-anxiety medication including Albuterol, Neurontin, and Trazodone. In 2003, Yisel Dean had overdosed on barbiturates including Soma, Vicodin, and Fiorinal. In fact, only two weeks before her husband's death, Yisel Dean was arrested for driving under the influence of drugs. This evidence is not harassing, embarrassing, or unfairly prejudicial as it clearly puts into question whether Yisel Dean's alleged psychological injuries were actually caused by her husband's death or whether they were pre-existing. Therefore, Defendants should be allowed to introduce this evidence at trial.

Yisel Dean's Relationship with Bob Dean

Defendants have also discovered that a short time after the death of her husband, Yisel Dean began to have an intimate relationship with her husband's brother, Bob Dean. This evidence is relevant and probative due to the fact it is evidence which may mitigate Yisel Dean's claim for loss of consortium of her husband. In other words, the jury should be able to consider whether Yisel Dean's alleged loss of care, comfort and society of her deceased husband has been lessened by the care, comfort and society of Bob Dean. Defendants should be able to introduce this evidence as it directly mitigates Yisel Dean's claim for loss of consortium.

The wrongful death statute allows recovery for "the fair monetary value of the decedent to the persons entitled to receive the damages recovered, as provided in section one, including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered." See M.G.L. c. 229, § 2. Here,

1043387v1

however, loss of reasonably expected net income, care, assistance, companionship, etc., have been replaced to some extent due to Yisel Dean's relationship with Bob Dean. None of the income replacement or society and companionship provided by Bob Dean to Yisel Dean is subject to a collateral source rule. The Defendants should be permitted to introduce evidence of Yisel Dean's relationship with Bob Dean, as it bears directly on the value of her alleged damages. Additionally, evidence of the relationship is also relevant and admissible for impeachment purposes to the extent that Yisel Dean denies an intimate relationship with Bob Dean.

WHEREFORE, the Defendants respectfully request that this Court deny the Plaintiffs' Motion *in Limine* to Exclude Evidence of Yisel Dean's Spending Habits, Alleged Prescription Drug Abuse, and the Intimate Details of her Relationship with Bob Dean.

RAYTHEON DEFENDANTS,
By Counsel,

I hereby certify that this document(s) filed through
the ECF system will be sent electronically to
the registered participants as identified on the
Notice of Electronic Filing  (NEF) and paper
copies will be sent to those indicated as
non registered participants on January 30, 2007.

/s/ Peter C. Knight

/s/ Peter C. Knight

_____

Peter C. Knight, BBO # 276000
Tory A. Weigand, BBO #548553
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Phone: 617-439-7500

-AND-

William L. Oliver, Jr. Esquire
Michael G. Jones, Esquire
MARTIN, PRINGLE, OLIVER, WALLACE
   & BAUER, L.L.P.
100 North Broadway, Suite 500
Wichita, KS  67202
Phone:  (316) 265-9311

4

1043387v1